# CRUMILLER P.C.

December 17, 2020

**VIA ECF**
Honorable Judge Andrew L. Carter, Jr.
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

      RE:    *Doe v. City of New York, et al.* 1:20-cv-08429-ALC

Dear Judge Carter:

      We represent the Plaintiff, Jane Doe, in the above captioned case. We write in opposition to Defendant City of New York's ("City") December 14, 2020 Letter-Motion seeking an extension of its time to respond to the complaint, and a pre-motion conference regarding various planned motions (the "City's Letter"). *See* Dkt. No. 15. As a threshold matter, we note that the City has failed to comply with the Court's Individual Rules regarding its extension request.[1]

      Plaintiff is a former District Attorney in the Bronx District Attorney's Office ("Bronx DA") who was sexually assaulted by a New York City Police Department ("NYPD") Officer in the course of her employment, in 2016. Bronx DA and NYPD failed and refused to take any remedial actions whatsoever; Bronx DA even forced her to continue working with her assailant, and required her to seek out a male escort to bring to her scheduled meetings with her assailant. In 2019, a Bronx DA colleague raped Plaintiff at an after-work party. She immediately reported the assault, and came to learn, for the first time, that Bronx DA had failed and refused to even report the 2016 assault to the Internal Affairs Bureau ("IAB"). Those facts form the basis of this case, which includes various claims against the City, including both Bronx DA and NYPD, and both individual perpetrators. The City now seeks leave to file a motion to dismiss various claims on various grounds, all of which are either inaccurate, moot, or premature.

### A. Plaintiff's Title VII[2] Cause of Action Is Not Barred Because She Did Exhaust Administrative Remedies

      On August 3, 2019, Plaintiff became aware of the City's failure and refusal to ever investigate the 2016 Crespo assault. Further, in 2019, the City negligently failed and refused to adequately investigate the 2019 Pelaez assault. Both perpetrators remained employed by the City at the time this action was filed. As stated in the Complaint, on May 29, 2020 (*i.e.*, within 300 days of the August 2019 discovery, and within 300 days of the second assault and aftermath

---

[1] Individual Rule 1(D) requires any party seeking an extension to include in its request (1) the original due date, (2) the number of previous requests, (3) whether those previous requests were granted or denied, and (4) whether the adversary consents, and, if not, the reasons given by the adversary for refusing to consent. The City did not contact us regarding any such request, which we would have stipulated to, as we have already done with Defendant Pelaez, without the need for Court involvement.

[2] For the convenience of the Court, we use the City's defined terms for the various relevant statutes.

thereof), Plaintiff filed a Charge with the EEOC. Compl. ¶ 6. On October 6, 2020, Plaintiff received a Notice of Right to Sue (Compl. ¶ 7) and commenced this litigation shortly thereafter.

The City's focus on the events which occurred prior to August 2019 indicates that its purported "failure to exhaust administrative remedies" argument is really a Statute of Limitations argument. The City's argument here fails. The City attempts to conflate the issues by focusing on the date of the Crespo assault, and the date on which Plaintiff's cases with Crespo were reassigned to another Assistant District Attorney (September 25, 2017). However, the City's discrimination and negligence towards Plaintiff sadly did not end on September 25, 2017. Compl. ¶ 23. Indeed, the City continued to discriminate against Plaintiff by subjecting her to a hostile work environment wherein the City's agents blatantly ignored and/or refused to investigate her claims of sexual assault for almost three years. This discriminatory conduct continued to take place up to and including on August 15, 2019, when Detective Trotter finally made an IAB report: almost two years after Plaintiff met with Officer Harris, and almost three years after the date of the incident. Such continuous, uninterrupted conduct amounts to a continuing violation under the law.[3]

Plaintiff claims that the City and its agents engaged in an ongoing policy and practice of ignoring her complaints and subjected her to a hostile work environment where she lived in fear of running into her assailant for almost four years. Compl. ¶ 30. It is undisputed that the date upon which Detective Trotter finally made an IAB report – August 15, 2019 – is within the 300 days prior to Plaintiff's filing of a charge with the EEOC on May 29, 2020. As such, Plaintiff's Title VII claims – as they relate to the City's mishandling of the Crespo assault and the hostile work environment Plaintiff was subjected to – survive. Nor can it be somehow disputed that the prior factual events are not relevant to the City's actions.

### B. For the Same Reasons, the NYSHRL, NYCHRL, and *Monell* Claims Are Timely

The NYSHRL, NYCHRL, and *Monell* claims, are all subject to three-year statutes of limitations. Moreover, the continuing violation doctrine also applies to the NYCHRL and the NYSHRL. *See Taylor v. City of N.Y.,* 207 F. Supp. 3d 293, 302-03 (S.D.N.Y. 2016) ("The doctrine under the NYCHRL considers [o]therwise time-barred discrete acts . . . timely where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.") (internal citations and quotations omitted). Thus, these claims are clearly timely for the reasons stated above.

### C. Plaintiff Has Stated a Cause of Action For Her *Monell* § 1983 Claim

The City contends that Plaintiff has failed to allege that her harms occurred based on a municipal policy or custom, falsely claiming that Plaintiff is seeking to hold the City liable on a *respondeat superior* theory. Here, the City is simply misrepresenting Plaintiff's claims.

---

[3] Where a defendant employs a discriminatory practice or policy, it is well-established that the "continuing violation doctrine" provides that the accrual time for the statute of limitations may be delayed until the last act in furtherance of the policy. *See Harris v. City of New York,* 186 F.3d 243, 248 (2d Cir. 1998). To invoke the doctrine, "a plaintiff must demonstrate either (1) a specific ongoing discriminatory policy or practice, or (2) specific and related instances of discrimination that are permitted to continue unremedied for so long as to amount to a discriminatory policy or practice." *Velez v. Reynolds*, 325 F. Supp. 2d 293, 312 (S.D.N.Y. 2004) (internal citations omitted). If the plaintiff can make out "the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy," acts outside of the limitations period may be considered as part of the claim. *Id.*

Plaintiff alleges that the City forced her to continue working with Crespo, even after she complained through multiple avenues and to various levels of supervisors; that she was required, in a hostile, discriminatory, and humiliating manner to secure a male escort for meetings with her assailant; that the City not only failed to investigate her complaints, but allowed Crespo to remain employed; and that the City failed and refused to even report the assault to IAB while claiming it was doing so.[4] Plaintiff was then subjected to the same campaign of willful negligence and disregard by the City when she reported her rape by Pelaez. *See generally* Compl. ¶¶ 48-55.[5] The "direct causal link between [the] municipal policy or custom, and the alleged constitutional depravation" is *precisely* the cause of the ongoing harm. *City of Canton v. Harris,* 439 U.S. 378, 385 (U.S. 1989). In 2019, when Plaintiff reported her rape by a BXDA employee, she was effectively ignored, as she had been when she reported the Crespo assault three years prior, because of the City's policies and customs. Thus Plaintiff's §1983 claim as to the City's horrific policy and practice of ignoring sexual assault complaints is eminently viable, and will presumably be further revealed in the course of discovery.

### D. Plaintiff's GMVPA Claims Are Only Alleged Against the Individual Defendants

The City's argument that Plaintiff's GMVPA claims must be dismissed as against it is erroneous. Plaintiff's GMVPA claims were only ever asserted as against the individual defendants. Compl. ¶¶ 73-81.

### E. The City's Request to Dismiss Plaintiff's Tort Claims is Premature

The City submits that Plaintiff's tort claims must be dismissed because Plaintiff has failed to secure a notice of claim. This request is premature. *See* Compl. ¶ 8. Currently, Plaintiff's motion for leave to file a late Notice of claim is scheduled for oral argument, after briefing, on January 5, 2021. Presumably, a decision will be issued shortly thereafter, at which time this issue may be appropriately addressed.

### F. This Court Has Already Ordered This Case Proceed Anonymously

On November 17, 2020, this Court granted Plaintiff's motion to proceed anonymously and ordered the Clerk to enter the caption of this action as "*Jane Doe v. City of New York, et al.*" *See* Dkt. No. 6. The Court has made an independent determination, and the City has identified no reason to revisit that decision.

Plaintiff respectfully requests that the City's application be denied in its entirety.

Respectfully Submitted,

*Julia Elmaleh-Sachs*
Julia Elmaleh-Sachs
Susan K. Crumiller

---

[4] The continuing violation doctrine has been applied to §1983 claims and is applicable here, thus capturing any portion of the BXDA's botched investigation and practice of disregard that falls outside of the 3-year statute of limitations. *See Lucente v. Cty. of Suffolk,* 980 F.3d 284 (2d Cir. 2020) (overturning the District Court and holding that "the continuing violation doctrine can apply as to all of the §1983 claims"); *Washington v. Rockland,* 373 F. 3d 310 (2d. Cir. 2004) (applying the continuing violation doctrine to a racial discrimination claim under §1983).

[5] This series of reprehensible conduct included: on August 22, 2019, all potential witnesses were disclosed to one another on an email chain; Plaintiff has not yet received response to her Workplace Violence Accident Report; two months went by without an update while Plaintiff continued going to work every day not knowing when Pelaez would return; no one responded to Plaintiff's repeated inquiries regarding her complaints until December 11, 2020.