UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE, | Case No: **20-CV-8429** |
| *Plaintiff,* | |
| -against- | **NOTICE OF MOTION** |
| CITY OF NEW YORK, GINO PELAEZ and EDWIN CRESPO | |
| *Defendants.* | |

PLEASE TAKE NOTICE that upon the Affirmation of Julia Elmaleh-Sachs., affirmed July 29, 2020, the Affidavit of Plaintiff Jane Doe, sworn to on July 21, 2020, submitted herein in redacted form, Plaintiff's memorandum of law in support hereof, and all other papers and proceedings herein, Plaintiff Jane Doe, will move before this Court at 500 Pearl Street, New York, New York for an Order:

(i) Authorizing plaintiff to proceed anonymously;

(ii) Ordering that the Clerk enter the caption of this action at Index No. 20-CV-8429 in the court's official docket as *"Jane Doe v City of New York, et al."*; and

(iii) Such other and further relief as the Court deems just and proper.

Dated: Brooklyn, New York
October 9, 2020

         CRUMILLER P.C.

         By: Julia Elmaleh-Sachs
         Susan K. Crumiller
         16 Court St, Ste 2500
         Brooklyn, New York 11241
         (212) 390-8480

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JANE DOE,** | |
| *Plaintiff,* | **Case No: 20-CV-8429** |
| -against- | **PROPOSED ORDER TO PROCEED ANONYMOUSLY** |
| **CITY OF NEW YORK, GINO PELAEZ and EDWIN CRESPO** | |
| *Defendants.* | |

**[PROPOSED] ORDER TO PROCEED ANONYMOUSLY**

Upon the October 9, 2020, Motion by Plaintiff Jane Doe to Proceed Anonymously in this action, and upon the July 29, 2020 Affirmation in Support by Julia Elmaleh-Sachs, and the Affidavit in Support by Jane Doe, sworn to on July 21, 2020 and the Memorandum of Law:

It is hereby ORDERED and ADJUDGED that,

(i)     the Motion is granted authorizing Plaintiff to proceed anonymously; and

(ii)    Ordering that the Clerk enter the caption of this action at Index No. 20-CV-8429 in the Court's official docket as "*Jane Doe v. City of New York, et al.*"

Dated: _____, 2020

_____
United States District Court Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JANE DOE**, <br><br> *Plaintiff,* <br> -against- <br><br> **CITY OF NEW YORK, GINO PELAEZ and EDWIN CRESPO** <br><br> *Defendants*. | **Case No: 20-CV-8429** |

**MEMORANDUM OF LAW**

**In Support of Plaintiff's**
**Motion to Proceed Anonymously**

Julia Elmaleh-Sachs
Crumiller P.C.
16 Court St, Ste 2500
Brooklyn, NY 11241
(212) 390-8480
jes@crumiller.com
Attorneys for Plaintiff

## STATEMENT OF FACTS

The facts relevant to the instant relief are set forth more fully in the accompanying affirmation of Julia Elmaleh-Sachs, affirmed on July 29, 2020 ("Elmaleh-Sachs Aff."), as well as the affidavit of Jane Doe ("Doe Aff.")[1] and the underlying Verified Petition.

Plaintiff was an Assistant District Attorney ("ADA") for several years at the Bronx District Attorney's Office ("Bronx DA"). (Elmaleh-Sachs Aff. ¶ 4). She often met with police officers, detectives and/or investigators to gather various information on her cases. *Id.* ¶ 5. In November 2016, she was groped and sexually assaulted by New York Police Department ("NYPD") Officer Edwin Crespo at the workplace and in the course of performing her job duties, in full view of at least one witness (another police officer). *Id.* ¶¶ 6-8. Plaintiff immediately informed her supervisors of the assault. *Id.* ¶¶ 9-10. To Plaintiff's surprise and chagrin, Bronx DA not only instructed her to continue attending meetings with her assailant, but required her to seek out a male colleague to be present with her during these meetings, a humiliating requirement that undermined her authority while subjecting her to continuing interactions with her assailant. *Id.* ¶¶ 12-13. For about a year, Plaintiff was expected to continue working with Crespo in this fashion. *Id.* ¶¶ 15-16.

On September 25, 2017, Plaintiff learned that Crespo had been suspended from active duty after his involvement in a domestic violence incident, and begged her supervisor, Chief Zelenka, to re-assign the multiple defendant case she had with her assailant. *Id.* ¶ 16. Thus, Plaintiff's cases involving Crespo were finally reassigned to ADA Aaron Van Nostrand, who was Plaintiff's officemate. *Id.* As a result, she feared she had to engage with Officer Crespo from

---

[1] Plaintiff's name is currently redacted from her affidavit but upon assignment of this action to a particular judge, Plaintiff can file an unredacted affidavit under seal or with chambers, pursuant to that judge's individual rules.

time to time, often unexpectedly, and so each day was marred by the possibility of having to re-live her trauma. *Id.*

In November 2017, Plaintiff met with then-EEO Officer Cicely Harris to report both the assault by Crespo and the Bronx DA's requirement that she continue working with her assailant, with a male escort. *Id.* ¶ 17. Ms. Harris told Plaintiff she would notify NYPD Internal Affairs Bureau ("IAB") of the incident, and she would assign someone from the Public Integrity Bureau to investigate Bronx DA's failure to take appropriate actions in regards to Plaintiff's safety. *Id*. That day, Plaintiff requested a transfer to the Tax and Organizational Fraud Unit ("TOFU") of the Economic Crimes Bureau as she no longer wanted to work under Chief Zelenka. *Id.*

More than six months later, Plaintiff still had not received any response to her inquiry. *Id.* ¶ 18. On June 12, 2018, met with the Executive Chief of the Investigations Division, Jean Walsh, who told Plaintiff that she had no prior knowledge of the assault, and was shocked to learn of the Bronx DA's inaction. *Id.* ¶¶ 18-20.

Upon information and belief, NYPD failed to conduct any investigation whatsoever regarding the assault, let alone take any remedial action against Officer Crespo, neither after the domestic violence incident he was involved in in September of 2017 nor after he was arrested for Operating a Motor Vehicle While Under the Influence of Alcohol. *Id.* ¶¶ 19, 22. Indeed, to this day, Officer Crespo remains employed by NYPD. *Id.* ¶ 22. Still an ADA, though now in Manhattan, Plaintiff constantly fears running into Officer Crespo in her professional capacity. Doe Aff. ¶ 3.

On August 3, 2019, Plaintiff attended a work party at a colleague's apartment. Elmaleh-Sachs Aff. ¶ 23. The party was attended by numerous colleagues at the DA's Office, including TOFU Senior Accountant Investigator, Gino Pelaez. *Id.* When Plaintiff left the party in a taxi,

Pelaez followed Plaintiff into the taxi without her consent. *Id.* He then became vulgar and aggressive and tried to place his hands on Plaintiff's face and kiss her. *Id.* Plaintiff attempted to fend him off but Pelaez insisted, stating, "it's ok. You want it." *Id.*

Plaintiff continued to beg Pelaez to stop but he nonetheless put his hand between Plaintiff's legs and penetrated her vagina with his fingers. *Id.* ¶ 24. When the taxi arrived at Plaintiff's home, Pelaez followed Plaintiff out of the cab, grabbed her keys from her hand and forced his way into the apartment. *Id.* ¶ 25.

In the morning, Plaintiff woke up in her apartment and knew she had been raped. *Id.* Her body was bruised and her vaginal area was injured to the point where she was unable to sit down comfortably or urinate for weeks. *Id.*

A few days after this incident, Plaintiff recorded a conversation in which she confronted Pelaez about the incident and Pelaez apologized repeatedly for his conduct. *Id.* ¶ 26. Within two weeks of the assault, on August 15, 2019, Plaintiff reported the incident to Chief Halpern, ADA Sonya Tennell and ADA Joseph Muroff, Chief of the Special Victims Division. *Id.* ¶ 27-28. Chief Muroff advised Plaintiff to go to the NYPD Special Victims Unit ("SVU")/ the Manhattan DA's office to make a police report. *Id.* Plaintiff then spoke with SVU Detective Timothy Trotter to make this report, and also informed him of the Officer Crespo botched investigation by IAB. *Id.*

The next day, on August 16, 2019, Plaintiff received a call from IAB Lieutenant Phillip Sena who informed her that he had *just* received an IAB report regarding the 2016 Crespo assault, almost three full years after she had reported it. *Id.* ¶ 29. Plaintiff gave a statement to IAB regarding the 2016 assault. *Id.* ¶ 32. IAB Sergeant King had been assigned to the

investigation of the 2016 Crespo assault. *Id.* It remains unclear to date whether any investigatory actions whatsoever have been taken. *Id.*

In regards to the Pelaez matter, Plaintiff was informed that the Bronx DA's Chief of Staff ADA Odalys Alonso would be the contact person for the investigation of the incident. *Id.* ¶ 31. Detective Trotter and ADA Mimi C. Mairs were assigned to the Pelaez investigation. *Id.* ¶ 34. On August 19, 2019, Plaintiff sent ADA Alonso a video containing her confrontation with Pelaez by means of a Google drive file. *Id.* ¶ 35. On August 22, 2019, Plaintiff met with ADA Alonso to request EEO and Workplace Violence forms so that she could report the attack. *Id.* ¶ 38. During the meeting, Plaintiff was told that Pelaez had been placed on paid administrative leave. *Id.*

Thereafter, the Bronx DA's office continued to mishandle the investigation by, including but not limited to: (1) emailing all of the potential witnesses in the investigation on the same email chain instead of blind-copying them, (2) serving and forwarding to witnesses a Grand Jury Subpoena demanding therapy notes related to Plaintiff's disclosure of her sexual assault by Pelaez, (3) ignoring Plaintiff's Workplace Violence Accident Report which she submitted on August 27, 2019, (4) failing to take action while the Manhattan DA's Office decided whether or not they would be pressing charges against Pelaez during the months of September and October 2019, and (5) failing to take action or even respond to Plaintiff's inquiries regarding the investigation during the months of November and through December 10, 2019. *Id.* ¶¶ 39-45.

Finally, on December 11, 2019, Plaintiff met with ADA Alonso and SVU Chief Muroff in response to her repeated inquiries and was told that Pelaez's paid administrative leave was extended during the pendency of the EEO and the Workplace Violence investigations. *Id.* ¶ 46. ADA Alonso stated that ADA James Brennan, Deputy Division Chief, Trial Division, had been newly assigned to lead the EEO investigation. *Id.* Nobody was assigned as of that date as to the

Workplace Violence investigation. *Id.*

On December 17, 2019, ADA James Brennan asked Plaintiff to re-send a copy of the video of the post-assault confrontation with Pelaez. *Id.* ¶ 47. He told her that nobody had attempted to access the file in time, and thus the link had expired. *Id.* Plaintiff met with ADA Brennan on December 30, 2019, and told ADA Brennan what had happened to her and that she was seeing a therapist and a psychiatrist for anxiety, and was going to start EMDR therapy for her PTSD. *Id.* ¶ 48.

Following that conversation, Plaintiff never heard from ADA Brennan or ADA Alonso about the investigation. *Id.* ¶ 49.

On January 24, 2020, the undersigned counsel contacted the Bronx DA's Office on Plaintiff's behalf, informing the office that counsel had been retained in connection with the incidents described herein. *Id.* ¶ 50. Upon information and belief, just days later, Bronx DA finally and belatedly began interviewing witnesses. *Id.* ¶ 51.

Four months after counsel's appearance, on May 26, 2020, Plaintiff was informed via letter from EEO Officer Ricardo R. Granderson that the EEO investigation had been completed. *Id.* Plaintiff's claim was substantiated. *Id.*

In the meantime, during the summer and fall of 2019, Plaintiff – desperate to get out of TOFU where she lived in constant fear of encountering Crespo and Pelaez – applied to work at the Manhattan DA's office. Doe Aff. ¶¶ 1-2. On February 18, 2020, Plaintiff received an offer for employment from the Manhattan District Attorney's Office, which she accepted. *Id.* She resigned from the Bronx DA's Office effective April 10, 2020. *Id.* ¶ 2.

Though she now works in Manhattan, Plaintiff constantly fears that she may run into

Crespo and/or Pelaez in her professional capacity as an ADA. *Id.* ¶ 3. Understandably, the

uncertainty Plaintiff has experienced as a result of the many botched investigations – along with

her ongoing recovery from both assaults – has caused her tremendous anxiety. *Id.* ¶ 4. She is

currently being treated by a therapist on a weekly basis and a psychiatrist on a monthly basis. *Id.*

Plaintiff is currently prescribed Prozac to treat anxiety, and was also seeing an Eye Movement

Desensitization and Reprocessing specialist regularly for PTSD. *Id.* ¶¶ 5-6.

Like any other new employee, Plaintiff hopes to form connections with her new

coworkers based on her work ethic and professional standing. *Id.* ¶ 7. She does not wish to be

viewed as a "rape victim" or "problem employee." *Id.* Plaintiff believes she will sustain

additional and irreparable harm if her colleagues, many of whom are lawyers, can easily discover

her name in a court filing. *Id.* ¶ 8. Plaintiff is also concerned that filing the instant proceedings

will cause her to relive her assault each time someone searches her name on the internet. *Id.* ¶ 9.

Understandably, Plaintiff worries and even loses sleep over the fact she will be humiliated or

possibly harassed and ridiculed if her identity is revealed in these proceedings. *Id.* ¶ 10.

## **LEGAL ARGUMENT**

### ***Standard for Anonymity***

"When determining whether a plaintiff may be allowed to maintain an action under a

pseudonym, the plaintiff's interest in anonymity must be balanced against both the public interest

in disclosure and any prejudice to the defendant." *Anonymous v. Simon*, 2014 U.S. Dist. LEXIS

27563, at *3 (S.D.N.Y. Feb. 25, 2014) (citing *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185,

189 (2d Cir. 2008)). In determining whether a plaintiff may proceed anonymously, there are ten

factors to consider: "(1) whether the litigation involves matters that are highly sensitive and [of

a] personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm

to the . . . party [seeking to proceed anonymously] or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure . . . particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d at 189-90. Importantly, "[A] district court is not required to list each of the factors or use any particular formulation as long as it is clear that the court balanced the interests at stake in reaching its conclusion." *Id.* at 191 n. 4.

As to allegations of sexual assault in particular, this Court has held that such claims "are generally inherently sensitive and private in nature." *Doe v. Vassar Coll.*, No. 19 Civ. 09601(NSR), 2019 U.S. Dist. LEXIS 196933, at *4 (S.D.N.Y. Nov. 13, 2019) (citing *Doe v. Gong Xi Fa Cai, Inc.*, No. 19 Civ. 2678 (RA), 2019 WL 3034793, at *2 (S.D.N.Y. July 10, 2019). Indeed, "[p]ublic exposure of the incident for both the victim and the accused, at this stage, may be personally damaging. Public disclosure of victim's identity could result in psychological trauma. Courts have recognized the important public interest in protecting the

identities of sexual assault victims to ensure that other victims would not be deterred from reporting similar crimes." *Id.*; *see also Lucidore v. N.Y. State Div. of Parole,* 209 F.3d 107, 109 n.4 (2d Cir. 2000) ("In light of New York Civil Rights Law § 50-b, which provides that the identities of the victims of sex offenses be kept confidential by the State, we refer to the victim of Lucidore's crime as 'MT.'")

As discussed herein, Plaintiff will suffer irreparable harm if she is not permitted by this Court to proceed anonymously. Evidently, this litigation involves matters that are highly sensitive and of a personal nature to Plaintiff, and allowing Plaintiff's name to appear in court filings will unduly prejudice her in the press and in her personal life moving forward.

### *Factor #1: Plaintiff Should Be Permitted To Proceed Anonymously Because This Litigation Involves Matters That Are Highly Sensitive And Of A Personal Nature*

Plaintiff should be permitted to proceed anonymously because this case involves two separate counts of sexual assault – one of which was a violent rape – by Plaintiff's colleagues.

In *Doe v. Vassar Coll.,* this Court permitted the use of pseudonyms in a similar case that involved allegations of sexual assault and a private educational institution's handling of an alleged sexual assault. The Court reasoned that "by permitting the Plaintiff to proceed by use of a pseudonym and such use would not only protect the confidentiality of the Plaintiff, but, *more importantly, also protect the confidentiality of the victim." Id.* at *5 (emphasis added).

Similarly, in *Doe v. City of N.Y.*, No. 18 Civ. 670 (ARR) (JO), 2020 U.S. Dist. LEXIS 4655, at *10 (E.D.N.Y. Jan. 9, 2020), this Court found in a case with rape allegations by city employees that the plaintiff's interest in anonymity outweighed the public interest in disclosure and any prejudice to the defendants. This Court explained that "[t]he instant litigation surely involves matters that are highly sensitive and of a personal nature; the plaintiff claims that two

police officers handcuffed her, took her into custody in their police van, and repeatedly raped her as they drove around Brooklyn". *Id.* at *11.

In the matter at hand, Plaintiff will sustain irreparable harm if this Court does not grant her the right to proceed anonymously. Doe Aff. ¶¶ 8-10. If not allowed to proceed anonymously, Plaintiff faces the possibility of press reports that include her name and she would be forced to relive the graphic details of her assault, not only in the context of this litigation, but every time somebody searches her name on the internet. Elmaleh-Sachs Aff. ¶ 63; Doe Aff. ¶ 9.

Furthermore, "[m]any courts have held that, in lawsuits centering around sexual activity and behavior, a plaintiff is entitled to proceed under a pseudonym where revealing the plaintiff's name subjects him or her to the risk of public disapproval, harassment, or bodily harm." *EW v. NY Blood Ctr.,* 213 F.R.D. 108, 111 (E.D.N.Y. 2003).

Revealing Plaintiff's name would plainly subject her to harassment, humiliation and even possibly ridicule. Elmaleh-Sachs Aff. ¶ 63; Doe Aff. ¶ 10. Plaintiff has already been through enough – suffering from the aftermath of multiple assaults and experiencing PTSD and anxiety – and should not have to relive her rape every time someone searches her name on the internet. Elmaleh-Sachs Aff. ¶ 63; Doe Aff. ¶¶9-10.

### *Factors #2 and #3: Plaintiff Should Be Permitted To Proceed Anonymously Because Identification Poses A Risk Of Retaliatory Physical Or Mental Harm To Plaintiff And Because Identification Presents Other Harms*

As discussed *supra*, identification poses a risk of retaliatory mental harm to Plaintiff as well as other harms. Already, she has had to leave her position at the Bronx DA's Office and has recently started a new job at the Manhattan DA's office; she resigned from her position in the Bronx due to the PTSD she suffered as a result of the rape that is the underlying basis for these proceedings. *Id.* ¶¶ 1-6. If she is not granted anonymity, the press could easily use Plaintiff's

name, and her identity as a rape survivor would be quickly discoverable by her new colleagues, friends and family in a google search. Elmaleh-Sachs Aff. ¶ 63. Such transparent access to her identity would hamper her ability to foster relationships with her new coworkers, who, as attorneys, would clearly and effortlessly have access to court documents. Doe Aff. ¶¶ 7-8.

***Factor #5: Plaintiff Should Be Permitted To Proceed Anonymously Because This Litigation Is Challenging The Actions Of The Government And Its Employees***

In *Doe v. City of N.Y.*, 2020 U.S. Dist. LEXIS 4655 (E.D.N.Y. Jan. 9, 2020), this Court held that further weighing in favor of anonymity was the fact that defendants in that case were "the City and City actors, rather than private parties." *Id.; see also EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108,111 (E.D.N.Y. 2003) (stating that "Defendant is not an ordinary private party, with interests relating solely to its personal life and business reputation--rather, NYBC is organized solely to perform an important, public service. Thus, this case is analogous to one involving a government defendant, where personal anonymity is more readily granted because of the existence of a public interest in the action and a lesser interest in personal reputation.").

Here too, Plaintiff's claims are against the City of New York and its agents. The fact that Defendant City of New York is a public institution and/or a servant of a public institution makes Plaintiff's request for anonymity even more compelling. Harm to the reputation of the Bronx District Attorney's Office and its employees and managers do not tip the scales in favor of Defendants. Such entities are viewed as having a less significant interest in protecting their reputations from damaging allegations than the ordinary individual defendant. The magnitude of the public interest in maintaining confidentiality of a victim of rape however could not be greater. As such, this factor too weighs in favor of granting Plaintiff anonymity.

***Factors #6, #7 and #8: Plaintiff Should Be Permitted To Proceed Anonymously Because The Defendants Are Not Prejudiced By Allowing Plaintiff To Press Her Claims Anonymously, Plaintiff's Identity Has Thus Far Been Kept Confidential And The Public's Interest In The Litigation Is Not Furthered By Requiring Plaintiff To Disclose Her Identity***

Plaintiff's identity thus far has been kept confidential from the public and the press. Further, permitting Plaintiff to proceed anonymously will not be detrimental to Defendants or to the public interest. To the contrary, the public interest is better served by an adjudication that reveals that even our District Attorneys' offices – which are meant to prosecute and punish crime – fail to protect victims of sexual violence than by revealing to the public the name of the victim. As this Court stated in *Doe v. City of N.Y.*, "it is anonymizing the plaintiff that furthers the public interest, as '[c]ourts have recognized the important public interest in protecting the identities of sexual assault victims to ensure that other victims would not be deterred from reporting similar crimes.'" 2020 U.S. Dist. LEXIS 4655, at *12 (E.D.N.Y. Jan. 9, 2020) (citing *Doe v. Vassar Coll.*, 2019 U.S. Dist. LEXIS 196933, at *2). Denying Plaintiff this relief would deter this vulnerable population from seeking redress from our courts altogether.

Nor will Plaintiff's anonymity have an adverse effect on Defendants' ability to litigate this case, as Defendants are already aware of Plaintiff's actual identity due to prior and simultaneous interactions with Plaintiff's counsel and a pending investigation within the Bronx District Attorney's office. Elmaleh-Sachs Aff. ¶¶46-51. Indeed, it is only from the general public that Plaintiff seeks anonymity.

## CONCLUSION

Here, the balance between Plaintiff's interest in anonymity and both the public interest in disclosure and any prejudice to the defendant decisively favors allowing Plaintiff to proceed anonymously. Plaintiff seeks this relief not to avoid annoyance and criticism, but to preserve

privacy in a matter of the most sensitive and highly personal nature: her sexual assault and rape by a former colleague. One would be challenged to find an ulterior motive for her desire to not be named in public court papers on an issue related to her sexual privacy.

Further, Plaintiff's identification poses a risk of harm to her mental health, harassment, ridicule and personal embarrassment. Doe Aff. ¶¶ 7-10. This risk is particularly heightened as Plaintiff is new to her job in the Manhattan DA's Office and does not want to relive the pain of her rape by a colleague every time her name is searched on the internet by a new coworker or otherwise. *Id.* Already, Plaintiff has suffered tremendously as she felt forced to resign from the Bronx DA's Office due to the PTSD she was suffering from the assault. Doe Aff. ¶ 2. The balance of equities is clearly in her favor.

For the foregoing reasons and for the reasons set forth in the moving papers, Plaintiff respectfully requests that the Court grant the relief sought and such other and further relief as to the Court may seem just and proper.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————————

**JANE DOE,**

                    *Plaintiff,*                                        **Case No. 20-CV-8429**

**- against -**

**CITY OF NEW YORK, GINO PELAEZ *and***                    <u>**AFFIDAVIT IN SUPPORT**</u>
**EDWIN CRESPO,**

                    *Defendants.*

———————————————————————————

STATE OF NEW YORK                    )
                                     ) SS:
COUNTY OF NEW YORK                   )

██████████, being duly sworn, deposes and says:

1.      On February 18, 2020, I received an offer for employment from the Manhattan District

Attorney's Office.

2.      I accepted the position at the Manhattan DA's Office and subsequently resigned from the

Bronx DA's Office effective April 10, 2020. I felt forced to resign due to the Post-Traumatic

Stress Disorder ("PTSD") I was suffering from as a result of the assaults by Crespo and Pelaez.

3.      Though I now work in Manhattan, I constantly fear that I may run into Crespo and/or

Pelaez in my professional capacity as an ADA.

4.      Indeed, the uncertainty I have experienced as a result of the botched investigations, in

conjunction with my ongoing recovery from both assaults, has caused me tremendous anxiety. I

now see a therapist weekly and a psychiatrist monthly.

5.      I am currently prescribed Prozac to treat anxiety.

6.      I also was seeing an Eye Movement Desensitization and Reprocessing ("EMDR")

specialist regularly for Post-Traumatic Stress Disorder until the office closed in mid-March due to the COVID-19 pandemic.

7.    Like any other new employee, I hope to form connections with my new colleagues and supervisors based on my work ethic and professional standing. I do not want to be viewed as a "rape victim" or "problem employee."

8.    I am already suffering from PTSD and anxiety and I believe I will sustain irreparable and additional harm if my colleagues – many of whom are obviously attorneys – can easily come across my name in a court filing.

9.    I also worry that filing the instant proceedings will cause me to relive the graphic details of my assault every time someone searches my name on the internet.

10.    I continue to be concerned and lose sleep over the fact that I might be harassed, humiliated or even ridiculed if my identity is revealed through the instant proceedings.

Sworn to before me
this **21** day of July, 2020

_Veronica Landet_
Notary Public

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JANE DOE,** | **Case No: 20-CV-8429** |
| *Plaintiff,* | |
| -against- | |
| **CITY OF NEW YORK, GINO PELAEZ and EDWIN CRESPO** | **AFFIRMATION IN SUPPORT** |
| *Defendants.* | |

Julia Elmaleh-Sachs, an attorney licensed to practice in the State of New York, affirms the truth of the following under penalties of perjury:

1.      I am an associate at Crumiller P.C., attorneys for Plaintiff. I am fully familiar with the facts and circumstances herein.

2.      I submit this Affirmation in support of the Motion to Proceed Anonymously for the Clerk of Court to issue a case number with Plaintiff's name as "Anonymous" or "Jane Doe" and restraining the Clerk of Court from entering Plaintiff's real name into the public record court documents.

3.      This affirmation is respectfully offered in support of Plaintiff's Motion to Proceed Anonymously, which seeks an Order (1) authorizing Plaintiff to proceed anonymously in the underlying action; and (2) that the Clerk of Court enter the caption of the instant action in the current minute books and indices of actions and proceedings maintained in this office under the title of "*JANE DOE V. CITY OF NEW YORK, ET AL.*".

**<u>Factual History</u>**

4.      Plaintiff was an Assistant District Attorney ("ADA") at the Bronx District Attorney's Office ("Bronx DA's Office") for several years.

5.      In her capacity as an ADA, Plaintiff often met with New York Police Department ("NYPD") officers, detectives and/or investigators within the Bronx DA's Office to gather information about her cases and any witnesses or victims.

**The 2016-2017 Crespo Incident**

6.      On or about November 15, 2016, Plaintiff met with NYPD Officer Edwin Crespo ("Officer Crespo"), the arresting officer on a case being handled by Plaintiff, in her cubicle at the Bronx DA's Office.

7.      During the meeting, Officer Crespo placed his hand on Plaintiff's inner thigh and slid his hand up and down her thigh.

8.      A police officer witnessed the assault and informed Plaintiff's colleague, ADA Justin Thompson, that he suspected Plaintiff may be in distress. ADA Thompson came over to ensure Plaintiff's safety, but by the time he arrived, Officer Crespo had removed his hand from Plaintiff's leg. ADA Thompson remained with Plaintiff, who had blacked out during the assault and was in shock, until Officer Crespo was asked to leave.

9.      Within minutes of the incident, Plaintiff told ADA Thompson exactly what had happened, and also told her colleague, ADA Jennifer Seeba, Criminal Enterprise Bureau, that Officer Crespo had just assaulted her.

10.     Plaintiff also simultaneously notified ADA Brian Connor, Public Integrity Bureau, that Officer Crespo had just assaulted her.

11.     Within an hour, she went to her supervisor ADA Jessica Lupo's office to report the assault, in accordance with the DA's Office's sexual harassment protocols. ADA Lupo encouraged Plaintiff to report the assault to her own supervisor, Economic Crimes Bureau Chief William Zelenka. ADA Lupo accompanied Plaintiff to Chief Zelenka's office, where Plaintiff

told him, still in a state of shock, that Officer Crespo had assaulted her.

12.     Plaintiff was understandably concerned about several upcoming meetings with Officer Crespo that she had scheduled in the coming days, in connection with an upcoming trial. She expected that the DA's Office would ensure her health and safety by making some sort of alternative arrangements. However, it made no effort to do so.

13.     Instead, Chief Zelenka instructed Plaintiff to attend the meetings with the humiliating requirement that she seek out a male ADA to escort her to the meetings.

14.     Upon information and belief, Officer Crespo suffered no consequences for committing the assault.

15.     Under these circumstances, Plaintiff met with Officer Crespo on two additional occasions. During one of the trial preparation sessions, ADA Justin Thompson was present; during the other, ADA Joshua Satter was present.

16.     On September 25, 2017, Plaintiff received information from the Bronx Grand Larceny Squad that Officer Crespo had been suspended from active duty after his involvement in a domestic violence incident. Learning that Officer Crespo had continued to commit further violent acts made Plaintiff even more uncomfortable and fearful. She finally worked up the courage to inform Chief Zelenka that she could not work directly with her assailant anymore. Only at that point – almost ten months after the assault had occurred – did the DA's Office finally reassign Plaintiff's cases involving Officer Crespo. However, the cases were assigned to ADA Aaron VanNostrand, Plaintiff's officemate, and thus did little to alleviate Plaintiff's fear, anxiety, and discomfort in her working environment.

17.     On or about November 8, 2017, Plaintiff met with the DA's Office's then-EEO Officer Cicely R. Harris[1] to report both the assault by Officer Crespo and the DA's Office's horrific mishandling of the aftermath. EEO Officer Harris told Plaintiff that she would notify NYPD Internal Affairs Bureau ("IAB") of the incident, and that she would assign someone from the Public Integrity Bureau to investigate Chief Zelenka's failure to take appropriate actions to safeguard Plaintiff. That day, Plaintiff told Harris that she feared that Chief Zelenka would retaliate against her for complaining about the assault and being forced to work with her perpetrator. She requested a transfer to the Tax and Organizational Fraud Unit ("TOFU") of the Economic Crimes Bureau.

18.     Plaintiff never received any sort of response in connection with her inquiry.  She continued to feel extremely uncomfortable working in the position where she had been forced to work with her assailant, and then to demean herself further by having to solicit male colleagues to oversee what should have been the regular performance of her professional responsibilities. Thus, on June 12, 2018, she requested to meet with the Executive Chief of the Investigations Division, Jean Walsh, to follow up on her request to transfer out of her bureau and into TOFU.[2]

19.     Coincidentally, that same day, Officer Crespo was arrested for Operating a Motor Vehicle While Under the Influence of Alcohol. He was also identified as the previously unknown perpetrator of a separate incident from June 11, 2018, when he had driven his car into a marked New York City Police Department Traffic Enforcement Patrol Car and then fled the scene of an accident (Arrest # B19620009, Docket # 2019BX012992). Officer Crespo was charged with P.L. 145.00(1) Criminal Mischief in the 4th Degree, P.L. 120.15 Menacing, V.T.L.

---

[1] Cicely Harris resigned from the Office of the Bronx District Attorney on December 6, 2019. Special Victims Division Chief Joe Muroff was named interim EEO Officer/Career Counselor. As of May 25, 2020, the date of Complainant's EEO determination, Ricardo R. Granderson had been named EEO Officer.

[2] Jean Walsh is no longer with the DA's Office.

1212 Reckless Driving, and V.T.L. 600(1)(a).

20.     As this news came to light, Plaintiff informed Division Chief Walsh that the officer who had gotten arrested was the same officer who had assaulted her in 2016. Walsh had no prior knowledge of the assault and was shocked to learn of the DA's Office's actions.

21.     On June 14, 2018, Walsh approved the transfer. Plaintiff was transferred to TOFU where she was directly supervised by TOFU Chief W. Dyer Halpern ("Chief Halpern"), but still worked under the general supervision of William Zelenka, as well as Richard Kearney and Michelle Milanes. Thus, this transfer failed to give Plaintiff the true separation from Chief Zelenka to which she was entitled.

22.     Upon information and belief, NYPD failed to conduct any investigation whatsoever regarding the assault, let alone take any remedial action. Indeed, to this day, Officer Crespo remains employed by NYPD. Though he is currently assigned to the Property Clerk's Office, Plaintiff's fear that she may come into contact with him in the course of future dealings remains wholly unabated.

**The Pelaez Rape**

23.     On the evening of August 3, 2019, Plaintiff attended a work party hosted by Chief Halpern.  The party was attended by numerous colleagues at the DA's Office, including TOFU Senior Accountant Investigator, Gino Pelaez ("Pelaez"). When a taxi arrived to take Plaintiff home from the party, Pelaez followed Plaintiff into the car, without her consent. During the ride, Pelaez became vulgar and aggressive.  Pelaez attempted to place his hands on Plaintiff's face and to kiss her. Plaintiff attempted to protest and fend him off, but he insisted, "It's ok. You want it."

24.     Despite her pleas for him to stop, Pelaez put his hands between Plaintiff's legs and penetrated her vagina with his fingers.

25.     When the cab arrived at Plaintiff's home, Pelaez followed Plaintiff out of the cab and told Plaintiff he needed to walk her inside. Plaintiff said no and told Pelaez to remain in the cab, paid the cab fare, and got out of the cab. Pelaez followed Plaintiff to her house. Petrified, Plaintiff tried to run away from Pelaez, but he caught up to her, grabbed her keys from her hand and forced his way into the apartment. In the morning, Plaintiff woke up in her apartment, knowing she had been raped. Her body was "black and blue" and her vaginal area was injured to the point where she could not sit down comfortably or urinate for weeks.

26.     A few days after the incident, Plaintiff recorded a conversation in which she confronted Pelaez about the incident. Pelaez apologized repeatedly for his behavior.

**The Botched Investigations**

27.     Plaintiff recalled the DA's Office's response when she had reported the Crespo assault, and was therefore extremely reticent to report the rape. Nevertheless, within two weeks, on August 15, 2019, Plaintiff summoned the courage to report it to Chief Halpern, and immediately thereafter to ADA Sonya Tennell.

28.     That same day, Plaintiff was brought to a clinical therapist, Nicole Allen, at the DA's Office, and she further met with ADA Joseph Muroff, Chief of the Special Victims Division. Chief Muroff advised Plaintiff to go to the NYPD Special Victims Unit ("SVU")/ Manhattan DA's Office to make a police report.  Plaintiff spoke with SVU Detective Timothy Trotter to make this report. Detective Trotter asked Plaintiff why she had waited to report the incident and Plaintiff explained to the detective that it was because of how the office had responded after the incident with Officer Crespo. Plaintiff told Detective Trotter that she had complained to EEO Officer Harris about Officer Crespo, but that Plaintiff had never been contacted by IAB after that, nor had any actions been taking in response to her complaints.

29.     The very next day, on August 16, 2019, Plaintiff received a phone call from IAB

Lieutenant Phillip Sena. Sena informed her that he had *just* received an IAB report regarding the

2016 Crespo assault, almost three full years after she had reported it. Plaintiff was informed that

Detective Trotter had made this report.

30.     Detective Trotter was also assigned to investigate the Pelaez matter.

31.     Plaintiff was instructed, against her will, to take several days off as administrative leave.

She was informed that the Bronx DA's Chief of Staff ADA Odalys Alonso would be the contact

person for the investigation of the incident.

32.     That same day, Plaintiff gave a statement to IAB regarding the 2016 assault. IAB

Sergeant King had been assigned to the investigation of the 2016 Crespo assault. It remains

unclear to date whether any investigatory actions whatsoever have been taken.

33.     Vanessa Puzio, Supervising Attorney for the Sex Crimes Unit, Special Victims Bureau,

and the Attorney-in-Charge of Work-Related Sexual Violence Initiatives, was assigned from the

Manhattan District Attorney's Office to interview Plaintiff. However, Ms. Puzio later informed

Plaintiff that, during the extraordinary years-long delays caused by the DA's Office's negligent

failure and refusal to take the appropriate reporting steps about the assault, the statute of

limitations to bring charges against Crespo had expired and as a result, criminal charges could

not be filed.

34.     Meanwhile, Detective Trotter and ADA Mimi C. Mairs were assigned to the Pelaez

investigation.

35.     On August 19, 2019, Plaintiff sent ADA Alonso a video containing her confrontation

with Pelaez by means of a Google drive file.

36.     On August 20, 2019, ADA Alonso told Plaintiff that the DA's Office had not yet decided to take any action against Pelaez.

37.     The next day, on August 21, 2019, Plaintiff asked ADA Alonso to be notified if Pelaez would be at work the following day, so that she could steel herself to return to work yet again with her assailant, this time one who had brutally raped her.  She received no response.

38.     However, on August 22, 2019, the same day that Plaintiff returned to work, she met with ADA Alonso to request EEO and Workplace Violence forms so that she could report the attack. During the meeting, Plaintiff was told that Pelaez had been placed on paid administrative leave.

39.     On August 22, 2019, ADA Mairs told ADA Alonso and ADA Muroff that she planned to interview several DA's Office employees about the Pelaez rape. The following day, an email was sent to all of the potential witnesses on the same email chain, instead of them being blind-copying. In doing so, the names of the witnesses were disclosed to the entire group, despite instructions from ADA Mairs to consider the matter sensitive and to "use the utmost discretion." Additionally, ADA Mairs had served upon the Bronx DA's Office a Grand Jury Subpoena demanding, among other items, therapy notes related to Doe's disclosure of her sexual assault by Gino Pelaez. A copy of this confidential subpoena was also improperly forwarded to at least some of the witnesses.

40.     On August 27, 2019, Plaintiff submitted a Workplace Violence Accident Report to the DA's Office, per ADA Alonso's recommendation during the August 22, 2019, meeting. To date, no one has investigated or responded to this claim, despite Plaintiff's repeated inquiries to ADA Alonso. This seems to be an avenue of redress touted by the Bronx DA's Office but with no legitimate purpose.

41.     On August 29, 2019, she submitted an EEO complaint.

42.     Two months went by without an update while Plaintiff continued going to work every day not knowing if and when Pelaez would be returning.

43.     On October 29, 2019, ADA Mairs told Plaintiff that the Manhattan DA's Office would not be pressing charges against Pelaez. Due to a notorious loophole in the New York Penal Code, a voluntarily intoxicated individual is not considered mentally incapacitated. Therefore, prosecutors cannot bring sex crime charges in cases where the victim became voluntarily intoxicated and was unable to consent, even if a reasonable person would have understood that victim was incapacitated.

44.     The following day, October 30, 2019, Plaintiff relayed this information to ADA Alonso, and asked for an update about status of the internal EEO and workplace violence investigations. Despite the fact that over two months had passed since the incident, ADA Alonso told Plaintiff that the EEO and workplace violence investigations "will proceed *now* and again we would need to gather what DANY has done in this investigation" (emphasis added).

45.     Plaintiff followed up on November 4, November 6, November 18, November 25, and December 10, 2019, fruitlessly trying to find out what was going on with the investigation. Each time, either she was ignored, was told no one had been assigned to investigate yet, and/or was told that Pelaez remained on paid administrative leave without any indication as to when he was expected to return.

46.     On December 11, 2019, Plaintiff finally met with ADA Alonso and Chief Muroff of the Special Victims Division in response to her repeated inquiries regarding the status of the investigation. Alonso told Plaintiff that Pelaez's paid administrative leave was extended during the pendency of the EEO and the Workplace Violence investigations. She stated that ADA James Brennan, Deputy Division Chief, Trial Division, had been newly assigned to lead the EEO

investigation. Nobody was assigned as of that date as to the Workplace Violence investigation, nor did Plaintiff understand the purpose of the Workplace Violence investigation except that she seemed to be receiving a bureaucratic runaround.

47.     On December 17, 2019, ADA James Brennan asked Plaintiff to re-send copy of the video of the post-assault confrontation with Pelaez. He told her that nobody had attempted to access the file in time, and thus the link had expired.

48.     Plaintiff met with ADA Brennan on December 30, 2019, and told ADA Brennan what had happened to her and that she was seeing a therapist and a psychiatrist for anxiety, and was going to start EMDR therapy for her PTSD.  Additionally, Plaintiff provided witness names, as requested, to ADA Brennan. Plaintiff told ADA Brennan that while she felt comfortable continuing to do her job, under no circumstances would she feel comfortable working in the same building for the same employer as her rapist.

49.     Following that conversation, Plaintiff never heard from ADA Brennan or ADA Alonso about the investigation.

50.     On January 24, 2020, the undersigned counsel contacted the Bronx DA's Office on Plaintiff's behalf, informing the office that counsel had been retained in connection with the incidents described herein.

51.     Four months after counsel's appearance, on May 26, 2020, Plaintiff was informed via letter from EEO Officer Ricardo R. Granderson that the EEO investigation had been completed. Plaintiff's claim was substantiated.

**Discriminatory Failure and Refusal to Hire**

52.     On July 9, 2019, Plaintiff emailed ADA Tarek Rahman, who was then the Chief of the Special Investigations Bureau ("SIB") and is now the Deputy Chief of the Investigations

Division, expressing interest in transferring to SIB.

53.     On October 4, 2019, after Plaintiff's rape by Pelaez, formal applications for the SIB
position became available on the BXDA intranet. Desperate to get out of TOFU where she lived
with the constant fear of showing up to work to see Pelaez back in the office, Plaintiff submitted
an application and informed EEO Officer Harris of her submission per office protocol. EEO
Officer Harris acknowledged receipt on October 8, 2019, and Plaintiff interviewed for the
position on October 30, 2019. During the interview, Plaintiff met with ADA Jean T. Walsh,
Chief of the Investigations Division; ADA Rahman, and ADA Diego Hernandez, Chief of SIB.
ADA Walsh was aware of Plaintiff's police report to SVU and the pending investigation against
Pelaez.

54.     On November 4, 2019, Plaintiff emailed ADA Walsh to express interest in applying to
the Violent Criminal Enterprise Bureau ("VCEB"). Though she preferred to transfer to SIB, in
her desperation to get out of TOFU, she felt it was wise to cast as wide a net as possible. As
such, she explicitly stated that she remained interested in SIB. Plaintiff was informed that
interviews were not being conducted until the office designated a Unit Chief. ADA Walsh
confirmed that she understood Plaintiff remained interested in SIB as well.

55.     In or around December 2019, Plaintiff learned that her colleague Nick Garcia had been
given the SIB position. ADA Garcia and Plaintiff both started in the Economic Crimes Bureau in
September 2016, and have largely the same experience except that Plaintiff has experience with
wire investigations and ADA Garcia does not.

56.     SIB is entirely dedicated to wire taps and is largely considered one of the most
prestigious bureaus within the Investigations Division. Thus, Plaintiff's wiretap experience is
crucial and highly valuable for the position, and typically, individuals who do not have wiretap

experience are not interviewed for, let alone offered, positions in SIB.

57.     On January 29, 2020, per instructions from the office, Plaintiff emailed ADA Rahman, to express her continued interest in the VCEB position.

58.     On February 11, 2020, Plaintiff interviewed with ADA Rahman, ADA Denise Kojo and ADA Julia Gordon.

59.     On February 18, 2020, Plaintiff received an offer for employment from the Manhattan District Attorney's Office.

60.     Plaintiff was informed unofficially that she had impressed at least one of the interviewers at her February interview, was genuinely considered for the VCEB position and was likely to get an offer there. However, despite her qualifications and persistence in expressing interest, she received no feedback regarding her SIB application.

61.     Plaintiff accepted the position at the Manhattan DA's Office and subsequently resigned from the Bronx DA's Office effective April 10, 2020.

**Need for Anonymity in the Instant Proceedings**

62.     The only purpose that disclosure of Plaintiff's name could have in the instant proceedings would be to further discomfit her and deter her from litigating the matter.

63.     If Plaintiff is not granted anonymity, the press could easily use her name, and her identity as a rape survivor would be quickly discoverable by her new colleagues, friends and family in a google search.

64.     The public has no legitimate interest in knowing Plaintiff's identity, but does have an interest in making the courts an available resource to victims of sexual assault.

65.     Defendants will not be prejudiced if this Court grants Plaintiff's request to so proceed.

66.     WHEREFORE, it is respectfully requested that this Court issue an order granting

Plaintiff's Motion to Proceed Anonymously in its entirety.


Dated: Brooklyn, New York
July 29, 2020


_Julia Elmaleh-Sachs_
Julia Elmaleh-Sachs