UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JANE DOE,

           **Plaintiff,**

      - against -

CITY OF NEW YORK, EDWIN CRESPO,
and GINO PELAEZ,

           **Defendants.**

Case No. 20-CV-8429

AMENDED COMPLAINT

**Jury Trial Demanded**

---

Plaintiff, by her attorneys Crumiller P.C., as and for her complaint against Defendants, alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff, an Assistant District Attorney in the Bronx ("ADA") was sexually assaulted by a New York Police Department ("NYPD") officer in 2016 while at work. After complaining about the incident repeatedly and to multiple supervisors, and following up regarding any repercussions over the course of a year, Plaintiff lost hope that her employer would take any remedial action against the officer. To this day, the officer remains employed by NYPD even though he has additionally been arrested for Operating a Motor Vehicle While Under the Influence of Alcohol in the interim.

2. On August 3, 2019, Plaintiff went to a party with coworkers and was later raped by a colleague – an investigator employed by the Bronx District Attorney's Office ("BXDA") – at her home in Manhattan. Recalling the BXDA's inaction when she had reported the earlier assault, Plaintiff was reluctant to report this incident. Nonetheless, within two weeks of the assault, Plaintiff reported the rape to the chief of her unit as well as the Special Victims Unit. Once more,

1

due to the BXDA's negligence and its failure to take action or even respond to Plaintiff's inquiries regarding its investigation for many months, Plaintiff continued to report to work while living in constant fear of encountering her assaulters.

3.    Plaintiff claims violations of Title VII of the Civil Rights Act of 1964, as amended, 42 USC § 2000e et seq., the New York State Human Rights Law, NY Exec Law § 296(1), and the New York City Human Rights Law, NYC Admin Code § 8-107(1)(a); violation of the New York City Victims of Gender-Motivated Violence Protection Act, NYC Admin. Code §§ 8-901 to 8-907; a violation of 42 USC § 1983 (a claim made pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978)); negligent infliction of emotional distress; intentional infliction of emotional distress; false imprisonment; assault and battery.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1343, as Plaintiff has asserted claims that arise under federal laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state and city law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to federal claims in this action such that they form part of the same case or controversy.

5.    Venue is proper in the Southern District of New York pursuant to 29 U.S.C. § 1391(b)(2), because the events giving rise to Plaintiff's claims occurred within the Southern District of New York.

## EXHAUSTION OF ADMINSTRATIVE REMEDIES

6.    On May 29, 2020, Plaintiff filed a timely Charge of Discrimination with the U.S. Equal Employment Opportunities Commission ("EEOC") as to her Title VII claims only.

7. On September 8, 2020, Plaintiff requested that the EEOC issue her a Notice of Right to Sue. Plaintiff received the Notice of Right to Sue on October 6, 2020.

8. On August 3, 2020, Plaintiff filed a notice of claim, which on June 2, 2021, the New York State Supreme Court deemed timely filed and served.

## PARTIES

9. Plaintiff Jane Doe is a 29-year-old woman who resides in the State of New York, County of New York. After the trauma of the sexual assaults and their aftermath, she left the Bronx DA's Office and is now a prosecutor in another prosecutor's office.

10. Defendant City of New York is a municipal corporation duly incorporated and authorized under the laws of the State of New York. The City of New York is authorized under the laws of the state of New York to maintain a police department and a District Attorney's office, which act as its agents in the area of law enforcement and prosecution, respectively, and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and law enforcement, and the employment of police officers and District Attorney employees.

11. Defendant Edwin Crespo is an individual employed by the New York City Police Department. Upon information and belief, he resides in the State of New York, County of New York.

12. Defendant Gino Pelaez is an individual currently employed by the Bronx DA's Office. Upon information and belief, he resides in the State of New York, County of Westchester.

## STATEMENT OF FACTS

### The 2016-2017 Crespo Incident

13. On or about November 15, 2016, Plaintiff met with NYPD Officer Edwin Crespo, the arresting officer on a case being handled by Plaintiff, in her cubicle at the Bronx DA's Office.

14. During the meeting, Plaintiff was sitting in her chair in her cubicle, while Officer Crespo was sitting in another chair right next to her. Over the course of the meeting, Officer Crespo moved his chair closer and closer to Plaintiff. Plaintiff was wearing a dress. After moving his chair so close to Plaintiff's so that their chairs were basically touching, Officer Crespo placed his hand on Plaintiff's right inner thigh and slid his hand up and down her thigh. His hand reached about one or two inches away from her vagina.

15. A police officer witnessed the assault and informed Plaintiff's colleague, ADA Justin Thompson, that he suspected Plaintiff may be in distress. ADA Thompson came over to ensure Plaintiff's safety, but by the time he arrived, Officer Crespo had removed his hand from Plaintiff's leg. ADA Thompson remained with Plaintiff until Officer Crespo was asked to leave. During that time, Plaintiff was in complete shock and paralyzed by the sheer audacity of the assault.

16. Within minutes of the incident, Plaintiff told ADA Thompson exactly what had happened, and also told her colleague, ADA Jennifer Seeba, Criminal Enterprise Bureau, that Officer Crespo had just assaulted her.

17. Plaintiff also simultaneously notified ADA Brian Connor, Public Integrity Bureau, that Officer Crespo had just assaulted her.

18. Within an hour, she went to her supervisor ADA Jessica Lupo's office to report the assault, in accordance with the BXDA's sexual harassment protocols. ADA Lupo encouraged Plaintiff to report the assault to her own supervisor, Economic Crimes Bureau Chief William Zelenka. ADA Lupo accompanied Plaintiff to Chief Zelenka's office, where Plaintiff told him, still in a state of shock, that Officer Crespo had assaulted her.

19.     Plaintiff was understandably concerned about several upcoming meetings with Officer Crespo that she had scheduled in the coming days, in connection with an upcoming trial. She expected that BXDA would ensure her health and safety by making some sort of alternative arrangements. However, it made no effort to do so.

20.     Instead, Chief Zelenka instructed Plaintiff to attend the meetings and that she seek out a male ADA to escort her to the meetings. Plaintiff felt Chief Zelenka's response to her assault was humiliating, demeaning, and did not take her allegations seriously.

21.     Upon information and belief, Officer Crespo suffered no consequences for committing the assault, and BXDA's management took no steps to address Plaintiff's complaint.

22.     Under these circumstances, Plaintiff met with Officer Crespo on two additional occasions. During one of the trial preparation sessions, ADA Justin Thompson was present; during the other, ADA Joshua Satter was present.

23.     On September 25, 2017, Plaintiff received information from the Bronx Grand Larceny Squad that Officer Crespo had been suspended from active duty after his involvement in a domestic violence incident.[1] Learning that Officer Crespo had continued to commit further violent acts made Plaintiff even more uncomfortable and fearful. She finally worked up the courage to inform Chief Zelenka that she could not work directly with her assailant anymore. Only at that point – almost ten months after the assault had occurred – did the DA's Office finally reassign Plaintiff's cases involving Officer Crespo. However, the cases were assigned to ADA Aaron VanNostrand, Plaintiff's officemate, and thus did little to alleviate Plaintiff's fear, anxiety, and discomfort in her working environment.

---

[1] Plaintiff also told two additional officers in the Grand Larceny Squad about Crespo's assault.

24.     On or about November 8, 2017, Plaintiff met with the BXDA's then-EEO Officer Cicely R. Harris[2] to report both the assault by Officer Crespo and the BXDA's horrific mishandling of the aftermath. EEO Officer Harris told Plaintiff that she would notify NYPD Internal Affairs Bureau ("IAB") of the incident, and that she would assign someone from the Public Integrity Bureau to investigate Chief Zelenka's failure to take appropriate actions to safeguard Plaintiff. That day, Plaintiff told Harris that she feared that Chief Zelenka would retaliate against her for complaining about the assault and being forced to work with her perpetrator. She requested a transfer to the Tax and Organizational Fraud Unit ("TOFU") of the Economic Crimes Bureau.

25.     Plaintiff never received a response in connection with her inquiry.  She continued to feel extremely uncomfortable working in the position where she had been forced to work with her assailant, and then to demean herself further by having to solicit male colleagues to oversee what should have been the regular performance of her professional responsibilities.  Thus, on June 12, 2018, she requested to meet with the Executive Chief of the Investigations Division, Jean Walsh, to follow up on her request to transfer out of her bureau and into TOFU.[3]

26.     Coincidentally, that same day, Officer Crespo was arrested for Operating a Motor Vehicle While Under the Influence of Alcohol. He was also identified as the previously unknown perpetrator of a separate incident from June 11, 2018, when he had driven his car into a marked New York City Police Department Traffic Enforcement Patrol Car and then fled the scene of an accident (Arrest # B19620009, Docket # 2019BX012992). Officer Crespo was charged with PL 145.00(1) Criminal Mischief in the 4th Degree, P.L. 120.15 Menacing, VTL

---

[2] Cicely Harris resigned from the Office of the Bronx District Attorney on December 6, 2019. Special Victims Division Chief Joe Muroff was named interim EEO Officer/Career Counselor. As of May 25, 2020, the date of Complainant's EEO determination, Ricardo R. Granderson had been named EEO Officer.
[3] Jean Walsh is no longer with the DA's Office.

6

1212 Reckless Driving, and VTL 600(1)(a).

27. As this news came to light, Plaintiff informed Division Chief Walsh that the officer who had gotten arrested was the same officer who had assaulted her in 2016. Walsh had no prior knowledge of the assault and was shocked to learn of the BXDA's actions.

28. To make matters worse, upon hearing that Officer Crespo had been arrested, other NYPD officers from the Grand Larceny Squad nonchalantly commented to Plaintiff that they "were not surprised" as Crespo was known to be a "bad cop."

29. On June 14, 2018, Walsh approved the transfer. Plaintiff was transferred to TOFU where she was directly supervised by TOFU Chief W. Dyer Halpern ("Chief Halpern"), but still worked under the general supervision of William Zelenka, as well as two others. Thus, this transfer failed to give Plaintiff the true separation from Chief Zelenka to which she was entitled.

30. Upon information and belief, NYPD failed to conduct any investigation whatsoever regarding the assault, let alone take any remedial action. Indeed, to this day, Officer Crespo remains employed by NYPD. Though he is currently assigned to the Property Clerk's Office, Plaintiff fears that she may come into contact with him in the course of future dealings remains wholly unabated.

## The Pelaez Rape

31. On the evening of August 3, 2019, Plaintiff attended a work party hosted by Chief Halpern. The party was attended by numerous colleagues at the DA's Office, including TOFU Senior Accountant Investigator, Gino Pelaez ("Pelaez"). When a taxi arrived to take Plaintiff home from the party, Pelaez followed Plaintiff into the car, without her consent. During the ride, Pelaez became vulgar and aggressive.  Pelaez attempted to place his hands on Plaintiff's face and to kiss her. Plaintiff tried to protest and fend him off, but he insisted, "It's ok. You want it."

32. Despite her pleas for him to stop, Pelaez put his hands between Plaintiff's legs and penetrated her vagina with his fingers.

33. When the cab arrived at Plaintiff's home, Pelaez followed Plaintiff out of the cab and told Plaintiff he needed to walk her inside. Plaintiff said no and told Pelaez to remain in the cab. She then paid the cab fare with her credit card and got out of the cab. Pelaez followed Plaintiff to her house. Petrified, Plaintiff tried to run away from Pelaez, but he caught up to her, grabbed her keys from her hand and forced his way into her apartment.

34. In the morning, Plaintiff woke up in her apartment, knowing she had been raped. Her body was "black and blue" and her vaginal area was injured to the point where she could not sit down or urinate comfortably for weeks.

35. A few days after the incident, Plaintiff recorded a conversation in which she confronted Pelaez about the incident. Pelaez apologized repeatedly for his behavior.

## The Botched Investigations

36. Plaintiff recalled the BXDA's response when she had reported the Crespo assault, and was therefore extremely reticent to report the rape. Nevertheless, within two weeks, on August 15, 2019, Plaintiff summoned the courage to report it to Chief Halpern, and immediately thereafter to ADA Sonya Tennell.

37. That same day, Plaintiff was brought to a clinical therapist, Nicole Allen, at the DA's Office, and she further met with ADA Joseph Muroff, Chief of the Special Victims Division. Chief Muroff advised Plaintiff to go to the NYPD Special Victims Unit ("SVU")/ Manhattan DA's Office to make a police report. Plaintiff spoke with SVU Detective Timothy Trotter to make this report. Detective Trotter asked Plaintiff why she had waited to report the incident and Plaintiff explained to the detective that it was because of how the office had responded after the

8

incident with Officer Crespo. Plaintiff told Detective Trotter that she had complained to EEO Officer Harris about Officer Crespo, but that Plaintiff had never been contacted by IAB after that, nor had any actions been taken in response to her complaints.

38. The very next day, on August 16, 2019, Plaintiff received a phone call from IAB Lieutenant Phillip Sena. Sena informed her that he had *just* received an IAB report regarding the 2016 Crespo assault, almost three full years after she had reported it. Plaintiff was informed that Detective Trotter had made this report.

39. Detective Trotter was the detective assigned to investigate the Pelaez matter.

40. Plaintiff was instructed, against her will, to take several days off as administrative leave. She was informed that the BXDA's Chief of Staff ADA Odalys C. Alonso would be the contact person for the investigation of the incident.

41. That same day, Plaintiff gave a statement to IAB regarding the 2016 assault. IAB Sergeant King has been assigned to the investigation of the 2016 Crespo assault. It remains unclear to date whether any investigatory actions whatsoever have been taken.

42. Vanessa Puzio, Supervising Attorney for the Sex Crimes Unit, Special Victims Bureau, and the Attorney-in-Charge of Work-Related Sexual Violence Initiatives, was assigned from the Manhattan District Attorney's Office to interview Plaintiff. However, Ms. Puzio later informed Plaintiff that, during the extraordinary years-long delays caused by the BXDA's negligent failure and refusal to take the appropriate reporting steps about the assault, the statute of limitations to bring charges against Crespo had expired and as a result, criminal charges could not be filed.

43. Meanwhile, Detective Trotter and Assistant District Attorney Mimi C. Mairs were assigned to the Pelaez investigation.

44. On August 19, 2019, Plaintiff sent ADA Alonso a video containing her confrontation with Pelaez by means of a Google drive file.

45. On August 20, 2019, ADA Alonso told Plaintiff that the DA's Office had not yet decided to take any action against Pelaez.

46. The next day, on August 21, 2019, Plaintiff asked ADA Alonso to be notified if Pelaez would be at work the following day, so that she could steel herself to return to work yet again with her assailant, this time one who had brutally raped her. She received no response.

47. However, on August 22, 2019, the same day that Plaintiff returned to work, she met with ADA Alonso to request EEO and Workplace Violence forms so that she could report the attack. During the meeting, Plaintiff was told that Pelaez had been placed on paid administrative leave.

48. On August 22, 2019, ADA Mairs told ADA Alonso and ADA Muroff that she planned to interview several DA's Office employees about the Pelaez rape. The following day, an email was sent to all of the potential witnesses on the same email chain, instead of them being blind-copying. In doing so, the names of the witnesses were disclosed to the entire group, despite instructions from ADA Mairs to consider the matter sensitive and to "use the utmost discretion." Additionally, ADA Mairs had served upon the Bronx DA's Office a Grand Jury Subpoena demanding, among other items, therapy notes related to Plaintiff's disclosure of her sexual assault by Gino Pelaez. A copy of this confidential subpoena was also improperly forwarded to at least some of the witnesses.

49. On August 27, 2019, Plaintiff submitted a Workplace Violence Accident Report to the DA's Office, per ADA Alonso's recommendation during the August 22, 2019, meeting. To date, no one has investigated or responded to this claim, despite Plaintiff's repeated inquiries to ADA

Alonso. This seems to be an avenue of redress touted by the Bronx DA's Office but with no legitimate purpose.

50. On August 29, 2019, she submitted an EEO complaint.

51. Two months went by without an update while Plaintiff continued going to work every day not knowing if and when Pelaez would be returning.

52. On October 29, 2019, ADA Mairs told Plaintiff that the Manhattan DA's Office would not be pressing charges against Pelaez. Due to a notorious loophole in the New York Penal Code, a voluntarily intoxicated individual is not considered mentally incapacitated. Therefore, prosecutors are unlikely to bring sex crime charges in cases where the victim became voluntarily intoxicated and was unable to consent, even if a reasonable person would have understood that the victim was incapacitated.

53. The following day, October 30, 2019, Plaintiff relayed this information to ADA Alonso, and asked for an update about status of the internal EEO and workplace violence investigations. Despite the fact that over two months had passed since the incident, ADA Alonso told Plaintiff that the EEO and workplace violence investigations "will proceed *now* and again we would need to gather what DANY has done in this investigation" (emphasis added).

54. Plaintiff followed up on November 4, November 6, November 18, November 25, and December 10, 2019, fruitlessly trying to find out what was going on with the investigation. Each time, either she was ignored, was told no one had been assigned to investigate yet, and/or was told that Pelaez remained on paid administrative leave without any indication as to when he was expected to return.

55. On December 11, 2019, Plaintiff finally met with ADA Alonso and Chief Muroff of the Special Victims Division in response to her repeated inquiries regarding the status of the

investigation. Alonso told Plaintiff that Pelaez's paid administrative leave was extended during the pendency of the EEO and the Workplace Violence investigations. She stated that ADA James Brennan, Deputy Division Chief, Trial Division, had been newly assigned to lead the EEO investigation. Nobody was assigned as of that date as to the Workplace Violence investigation, nor did Plaintiff understand the purpose of the Workplace Violence investigation except that she seemed to be receiving a bureaucratic runaround.

56. On December 17, 2019, ADA James Brennan asked Plaintiff to re-send copy of the video of the post-assault confrontation with Pelaez. He told her that nobody had attempted to access the file in time, and thus the link had expired.

57. On December 30, 2019, Plaintiff met with ADA Brennan and told her what had happened to her. Plaintiff told ADA Brennan that she was seeing a therapist and a psychiatrist for anxiety, and was going to start EMDR therapy for her PTSD. Additionally, Plaintiff provided witness names, as requested, to ADA Brennan. Plaintiff told ADA Brennan that while she felt comfortable continuing to do her job, under no circumstances would she feel comfortable working in the same building for the same employer as her rapist.

58. Following that conversation, Plaintiff never heard from ADA Brennan or ADA Alonso about the investigation.

59. On January 24, 2020, the undersigned counsel contacted the Bronx DA's Office on Plaintiff's behalf, informing the office that counsel had been retained in connection with the incidents described herein. Upon information and belief, Bronx DA immediately thereafter began contacting the witnesses they had failed to contact for the previous four months.

60.     Four months after counsel's appearance, on May 26, 2020, Plaintiff was informed via letter from EEO Officer Ricardo R. Granderson that the EEO investigation had been completed. Plaintiff's claim was substantiated.

**FIRST CAUSE OF ACTION:**
**Gender Discrimination in Violation of Title VII**
*Against Defendant City of New York (BXDA)*

61.     Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as it fully set forth herein.

62.     In violation of Title VII, BXDA discriminated against Plaintiff in the terms and conditions of her employment, on the basis of her gender, and created a hostile work environment, by taking no action against the Officer Crespo, by forcing her to continue working with the man who sexually assaulted her, by forcing her to obtain a male escort to her meetings with him and by knowingly allowing Officer Crespo, who had a history of serious infractions and poor behavior, have regular contact with Plaintiff.

63.     The hostile work environment to which Plaintiff was subjected was severe and pervasive and unreasonably interfered with her work performance.

64.     BXDA's unlawful discrimination caused Plaintiff to suffer emotional suffering and distress, mental anguish, loss of enjoyment of life, humiliation and embarrassment.

**SECOND CAUSE OF ACTION:**
**Gender Discrimination in Violation of the NYCHRL**
*Against Defendant City of New York (BXDA)*

65.     Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as it fully set forth herein.

66.     In violation of the NYCHRL, BXDA discriminated against Plaintiff in the terms and conditions of her employment, on the basis of her gender, and created a hostile work environment,

by forcing her to continue working with the man who sexually assaulted her and by forcing her to obtain a male escort to her meetings with him.

67. The hostile environment to which Plaintiff was subjected was severe and pervasive, unreasonably interfered with her work performance.

68. BXDA's unlawful discrimination caused Plaintiff to suffer emotional suffering and distress, mental anguish, loss of enjoyment of life, humiliation and embarrassment.

## THIRD CAUSE OF ACTION:
### Gender Discrimination in Violation of the NYSHRL
*Against Defendant City of New York (BXDA)*

69. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as it fully set forth herein.

70. In violation of the NYSHRL, BXDA discriminated against Plaintiff in the terms and conditions of her employment, on the basis of her gender, and created a hostile work environment, by forcing her to continue working with the man who sexually assaulted her and by forcing her to obtain a male escort to her meetings with him.

71. The hostile environment to which Plaintiff was subjected was severe and pervasive, and unreasonably interfered with her work performance.

72. BXDA's unlawful discrimination caused Plaintiff to suffer emotional suffering and distress, mental anguish, loss of enjoyment of life, humiliation and embarrassment.

## FOURTH CAUSE OF ACTION:
### Crime of Violence Motivated by Gender -
### New York City Victims of Gender-Motivated Violence Protection Act
### NYC Admin. Code §§ 8-901 *et seq.*
*Against Defendants Crespo and Pelaez*

73. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

74. Defendant Crespo's acts described above violate Section 8-904 of the New York City Administrative Code.

75. By forcibly placing his hand on Plaintiff's inner thigh and sliding his hand up and down her thigh, Defendant Crespo has engaged in crimes of violence as defined in the New York City Administrative Code Section 8-903. Placing his hand on Plaintiff's inner thigh and sliding it up and down her leg constitutes forcible touching, a class A misdemeanor and a violation of N.Y. Penal Law § 130.52.

76. Defendant Crespo's crimes of violence were motivated by Plaintiff's gender as defined in the New York City Administrative Code § 8-903, as evidence by the facts set forth above, Defendant's forceful way in which he treated Plaintiff.

77. Defendant Pelaez's acts described above violate Section 8-904 of the New York City Administrative Code.

78. By raping Plaintiff and by forcibly inserting his fingers into Plaintiff's vagina, Defendant Pelaez has engaged in crimes of violence as defined in the New York City Administrative Code § 8-903. Forcing Plaintiff to have sexual intercourse against her will constitute rape in the first degree, a class B felony and a violation of N.Y. Penal Law § 130-35. Forcibly inserting his finger into Plaintiff' vagina constitutes aggravated sexual abuse in the first degree, another class B felony and a violation of N.Y. Penal Law § 130.70.

79. Defendant Pelaez's crimes of violence were motivated by Plaintiff's gender as defined in the New York City Administrative Code § 8-903, as evidence by the facts set forth above, Defendant's forceful and cruel ways in which he treated Plaintiff.

80.     As a result of Defendant Pelaez's crimes of violence motivated by gender against Plaintiff, Plaintiff has been damaged and is entitled to compensatory damages in an amount to be determined at trial and to attorneys' fees and costs.

81.     Defendant Pelaez's actions in violation of the New York City Victims of Gender-Motivated Violence Protection Act were intentional, done with malice, and/or showed deliberate, willful, wanton, and reckless indifference to Plaintiff's rights, for which she is entitled to an award of punitive damages.

### FIFTH CAUSE OF ACTION:
**(*Monell* Claim under 42 U.S. § 1983)**
*Against Defendant City of New York (BXDA and NYPD)*

82.     Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

83.     That by virtue of the Office of The Bronx District Attorney, District Attorney Darcel D. Clark and Executive Assistant District Attorney Odalys C. Alonso's failure and refusal to adequately investigate Crespo and Pelaez's actions against Plaintiff, acquiescence in Crespo's conduct, failure to take any remedial action against Crespo, allowing Crespo to remain employed as an officer with the NYPD, gross negligence in their supervision of Crespo, and deliberate indifference to the rights of others by failing to act on information that Plaintiff's constitutional rights had been violated by Crespo and Pelaez, the City of New York, which employed these policymakers during the relevant time period, exhibited a de facto custom, policy, or usage of unconstitutional conduct sufficient for the imposition of municipal liability under *Monell v. Dept. of Social Services,* 436 U.S. 658 (1978).

## SIXTH CAUSE OF ACTION:
### Sexual Assault & Battery, Rape, Criminal Sexual Act, Aggravated Sexual Abuse
### CPLR 213-c
### *Against Defendant Pelaez*

84. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

85. Defendant Pelaez's assault and battery above constitutes rape in the first degree as defined in N.Y. Penal Law § 130.35, a criminal sexual act in the first degree as defined in N.Y. Penal Law § 130.50, and aggravated sexual abuse in the first degree as defined in N.Y. Penal Law § 130.70.

86. As a result of Defendant Pelaez's acts, Plaintiff has been damaged and brings these civil claims for the physical and psychological injuries she suffered.

87. Defendant Pelaez's acts were intentional, done with malice, and /or show a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights, for which she is entitled to an award of punitive damages.

## SEVENTH CAUSE OF ACTION:
### Intentional Infliction of Emotional Distress
### *Against Defendant Pelaez*

88. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

89. Defendants engaged in extreme and outrageous conduct, beyond the bounds of decency tolerated in a civilized society.

90. Defendants intended to cause, or disregarded a substantial probability of causing, severe emotional distress to Plaintiff.

91. As a result of said conduct, Plaintiff suffered from severe emotional distress, and continues to do so.

### EIGHTH CAUSE OF ACTION:
**False Imprisonment**
*Against Defendant Pelaez*

92. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

93. Defendant Pelaez intentionally, unlawfully and falsely imprisoned Plaintiff in her apartment when he sexually assaulted and battered her.

94. Plaintiff did not consent to this confinement, which was not otherwise privileged.

95. In addition to being intentional and deliberate, Defendant's unlawful imprisonment of Plaintiff has the character of outrage associated with crime, thereby entitling Plaintiff to an award of punitive damages.

96. Therefore, Defendant is liable to Plaintiff for emotional distress and other compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, costs and disbursements.

### NINTH CAUSE OF ACTION:
**Negligent Infliction of Emotional Distress**
*Against Defendant City of New York (BXDA)*

97. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

98. Defendant BXDA breached a duty owed directly to Plaintiff that endangered her physical safety, caused her to fear for her own safety, and failed to provide her with a safe work environment.

99. As a result of said conduct, Plaintiff experienced emotional suffering and distress, mental anguish, loss of enjoyment of life, humiliation, embarrassment, and economic damages.

### **TENTH CAUSE OF ACTION:**
**Negligence**
*As it Relates to the Allegations Against Pelaez*
*Against Defendant City of New York (BXDA)*

100.    Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

101.    Defendant BXDA breached a duty owed directly to Plaintiff by the above actions and failure to take actions, thereby endangering her physical safety, causing her to fear for her own safety, and failing to provide her with a safe work environment.

102.    Defendant BXDA could have foreseen that this breach would cause Plaintiff harm as she alerted Defendant BXDA immediately of Defendant Pelaez's assaults towards Plaintiff.

103.    As a result of said conduct, Plaintiff experienced emotional suffering and distress, mental anguish, loss of enjoyment of life, humiliation, embarrassment, and economic damages.

**WHEREFORE**, Plaintiff respectfully requests that the Court grant her the relief requested as follows:

1. An award of damages to be determined at trial to compensate Plaintiff for all non-monetary and compensatory harm, including, but not limited to, compensation for her physical injuries, pain and suffering, PTSD, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering;

2. An award of punitive damages, in an amount to be determined at trial, sufficient to deter Defendants from engaging in future illegal and/or wrongful conduct;

3. An award of costs that Plaintiff incurred in this action, as well as her reasonable attorneys' fees, to the fullest extent permitted by law; and

4. Such other and further relief as the Court may deem just and proper.

Dated: Brooklyn, New York
June 30, 2021

                                                  Respectfully submitted,

/s/ Julia Elmaleh-Sachs
Julia Elmaleh-Sachs
Susan K. Crumiller
Crumiller P.C.
16 Court St, Ste 2500
Brooklyn, NY 11241
(212) 390-8480
jes@crumiller.com
susan@crumiller.com
*Attorneys for Plaintiff*

20