# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| PRESENT: | HON. DAKOTA D. RAMSEUR | PART | IAS MOTION 5 |
|---|---|---|---|
| | *Justice* | | |

| | | |
|---|---|---|
| DOE, JANE, | INDEX NO. | 100601/2020 |
| Petitioner, | MOTION DATE | 11/10/10 |
| - v - | MOTION SEQ. NO. | 001 |
| CITY OF NEW YORK, | **DECISION + ORDER ON MOTION** | |
| Respondent. | | |

The following papers, numbered 1 to 3, were read on this application for Leave to file a late notice of claim

| | | |
|---|---|---|
| Notice of Motion/ Petition/ OSC - Affidavits - Exhibits | No(s) | 1 |
| Answering Affidavits - Exhibits | No(s) | 2 |
| Replying Affidavits | No(s) | 3 |
| Respondent's authorized surreply (1) | No(s) | 4 |
| Petitioner's authorized surreply (1) | No(s) | 5 |
| Respondent's authorized surreply (2) | No(s) | 6 |
| Petitioner's authorized surreply (2) | No(s) | 7 |

Petitioner, Jane Doe (petitioner), moves by order to show cause, first, pursuant to CPLR 6301 for leave to proceed anonymously, and second, pursuant to General Municipal Law (GML) § 50-e, to file a late notice of claim alleging: (1) state personal injury and tort claims including negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, false imprisonment, assault and battery; and (2) claims pertaining to the violation of Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law (NYSHRL), the New York City Human Rights Law (NYCHRL), the New York City Victims of Gender-Motivated Violence Protection Act, and 42 USC § 1983. Respondent City of New York (the City) opposes. For the reasons below, the petition is granted to the extent detailed below.

## BACKGROUND[1]

### I.  The Crespo allegations

Petitioner was an Assistant District Attorney (ADA) at the Bronx District Attorney's Office (Bronx DA) for several years, where petitioner often met with NYPD employees to gather information to prosecute cases (petitioner aff at ¶¶ 4-5). On November 15, 2016, petitioner met with NYPD Officer Crespo (Crespo), the arresting officer on one of petitioner's cases, in

---

[1] Petitioner's allegations are presumed true for the purposes of this decision.

petitioner's cubicle, where Crespo placed his hand on Petitioner's inner thigh and slid his hand up and down (petition at ¶ 4). Another officer witnessed Crespo's actions and informed petitioner's colleague; by the time the colleague arrived, Crespo had removed his hand (*id.* at ¶ 5). Petitioner "blacked out … and was in shock, until … Crespo was asked to leave" (*id.*). Within minutes, petitioner informed numerous colleagues, including an ADA in the Public Integrity Bureau and petitioner's supervisor, who encouraged petitioner to report the assault to the Economic Crimes Bureau Chief, which petitioner did (*id.* at ¶¶ 6-8).

Petitioner was concerned about several upcoming meetings scheduled with Officer Crespo in the following days in connection with an upcoming trial (*id.* at ¶ 9). Instead of making alternative arrangements as petitioner had hoped, the Bureau Chief instead instructed petitioner to attend the meetings subject to the "humiliating requirement that she seek out a male ADA to escort her to the meetings" (*id.* at ¶ 10). Petitioner met with Crespo on two additional occasions; a different male ADA was present at each (*id.* at ¶ 12). About ten months after the initial incident, on September 25, 2017, petitioner learned that Crespo had been suspended from active duty after his involvement in a domestic violent incident (*id.* at ¶ 13). Only at that point, after petitioner requested reassignment from any cases with Crespo, did the Bureau Chief comply—though the cases were reassigned to petitioner's officemate (*id.*).

On November 8, 2017, petitioner met with the DA Office's EEO Officer to report the assault and aftermath, who told petitioner that the NYPD Internal Affairs Bureau (IAB) and Public Integrity Bureau would be notified (*id.* at ¶ 14). Petitioner expressed a fear of retaliation and requested reassignment to the Tax and Organizational Fraud Unit (TOFU) of the Economic Crimes Bureau (*id.*). Petitioner never received a response and, on June 12, 2018, requested to meet with the Executive Chief of the Investigations Division to follow up on petitioner's transfer request (*id.* at ¶ 15). The Executive Chief "had no prior knowledge of the assault," and two days later approved the transfer, although even at TOFU petitioner was still under the general supervision of the same Economic Crimes Bureau Chief who had directed petitioner to continue to work with Crespo under the supervision of a male colleague (*id.* at ¶ 15).

## II. *The Pelaez allegations*

On August 3, 2019, petitioner attended a work party attended by numerous colleagues, including TOFU Senior Accountant Investigator Pelaez (Pelaez). Pelaez followed petitioner into a taxi without her consent, where he attempted to kiss petitioner (*id.* at ¶ 20). When petitioner protested, he insisted, "it's OK. You want it" (*id.*). Despite petitioner's pleas to stop, Pelaez penetrated petitioner's vagina with his fingers (*id.* at ¶ 21). When the cab arrived at petitioner's home, Pelaez followed petitioner into her home despite petitioner's refusal, grabbed her keys, and forced his way into the apartment (*id.* at ¶ 22). In the morning, petitioner awoke knowing that she had been raped; her body was black and blue and her vaginal area injured to the point of not being able to sit or urinate comfortably for weeks (*id.*). Petitioner later recorded a conversation with Pelaez in which he apologized for his behavior (*id.* at ¶ 23).

Within two weeks, on August 15, 2019, petitioner reported the incident to multiple DA employees (*id.* at ¶ 24). The same day, petitioner saw a clinical therapist at the DA's office, and met with the Chief of the Special Victims Division, who advised petitioner to go to the NYPD

...

Special Victims Unit (SVU) in the Manhattan DA's Office to file a police report (*id.* at ¶ 25). Petitioner spoke with an SVU Detective; when asked about the delay in filing the police report, petitioner responded that the DA's office's handling of the Crespo incident had never resulted in any action being taken (*id.*). The next day, IAB called petitioner, informing her that, three years after the Crespo incident, they had just received an IAB report about it from the SVU Detective petitioner had just spoken with (*id.* at ¶ 26).

Petitioner was instructed, against her will, to take several days off as administrative leave (*id.* at ¶ 28). The same day, petitioner gave a statement to IAB regarding the Crespo incident (*id.* at ¶ 29). Petitioner was later informed that SVU could not prosecute Crespo because the statute of limitations had since expired; it remains unclear whether any administrative action was taken against Crespo (*id.* at ¶ 30).

On August 19, 2019, petitioner sent a video of her confrontation with Pelaez to the ADA assigned to the investigation (*id.* at ¶ 32). On August 20, 2019, the ADA told petitioner that the DA's Office had not yet decided to take any action against Pelaez (*id.* at ¶ 33). On August 21, 2019, petitioner asked the ADA to be notified if Pelaez would be at work the next day when petitioner returned but received no response (*id.* at ¶ 34). When petitioner returned to work on August 22, 2019, petitioner requested EEO and Workplace Violence forms to report Pelaez, and was told that he had been placed on administrative leave (*id.* at ¶ 35). The same day, an ADA emailed all potential witnesses directly instead of blind-copying them, thus disclosing the names to the entire group together with a Grand Jury Subpoena demanding therapy notes related to petitioner's disclosure of the Pelaez incident (*id.* at ¶ 36).

On August 27, 2019, petitioner submitted a Workplace Violence Accident Report to the DA's office (*id.* at ¶ 37). As of the date of this petition, no one responded to the claim (*id.*). On August 29, 2019, petitioner submitted an EEO complaint (*id.* at ¶ 38). On October 29, 2019, before which petitioner continued to work without knowing whether Pelaez was returning, petitioner was informed that the Manhattan DA's Office would not be pressing charges against Pelaez due to a "notorious loophole in the New York Penal Code" precluding prosecutors from bringing sex crime charges "in cases where the victim became voluntarily intoxicated and unable to consent, even if a reasonable person would have understood the victim was incapacitated" (*id.* at ¶ 40).

After petitioner relayed this information and requested an updated about the EEO and workplace violence investigations, petitioner was told that only then—that is, two months after the allegations had been made—would the investigations proceed (*id.* at ¶ 41). Petitioner followed up on November 4, 6, 18, and 25 and December 20, 2019, but did not receive a substantive response until December 11, 2019, when petitioner was informed that a new ADA was assigned to the EEO investigation and no one was assigned to the workplace violence investigation (*id.* at ¶¶ 42-43). On December 17, 2019, the ADA assigned to the EEO investigation asked for a new link to the Pelaez conversation video, because the previous link had expired after no one had accessed the previous file in time (*id.* at ¶ 44). After another meeting on December 30, 2019, with that ADA, petitioner heard nothing further about the investigation (*id.* at ¶ 46).

On January 24, 2020, petitioner's current counsel contacted the Bronx DA's office (*id.* at ¶ 47). Four months later, on May 26, 2020, petitioner learned that her EEO complaint had been substantiated (*id.* at ¶ 48). Petitioner has been working at a new position with another DA's office since February 18, 2020 (petitioner aff at ¶ 2). Petitioner filed this petition on August 3, 2020.

## DISCUSSION

### I.  *Application to proceed anonymously*

A party will be permitted to proceed anonymously where a party alleges a matter "implicating a privacy right so substantial as to outweigh the customary and constitutionally embedded presumption of openness in judicial proceedings" (*"J. Doe No. 1" v CBS Broadcasting Inc.*, 24 AD3d 215, 215 [1st Dept 2005]). A plaintiff's privacy right was codified in Civil Rights Law § 50-b, which provides that "the identity of any victim of a sex offense…shall be confidential..." (*L.K. v Trustees of Columbia Univ. in the City of NY*, 2014 NY Slip Op 34019[U], *2 [Sup Ct, NY County 2014]). Though courts have been loath to seal files entirely on First Amendment grounds, they have permitted sexual assault victims to proceed anonymously (*Doe v NY Univ.,* 6 Misc 3d 866, 878-879 [Sup Ct, NY County 2004] [quoting then-Governor Mario Cuomo's signing statement that "sexual assault victims have unfortunately had to endure a terrible invasion of their physical privacy. They have a right to expect that this violation will not be compounded by a further invasion of their privacy."]).

Here, petitioner alleges more than the possibility of embarrassment. Petitioner alleges ongoing trauma and treatment stemming from two assaults, the potential for stigmatization as a "rape victim" or "problem employee" at her new place of employment, and press coverage which could result in petitioner's online identity defined by these allegations. The City's reliance to *Anonymous v Lerner* (124 AD3d 487 [1st Dept 2015]) is unhelpful because the plaintiff in that case, who alleged negligent transmission of genital herpes, undermined privacy concerns by "reporting her story to the media before serving defendant with process" (*Lerner*, 124 AD3d at 487-88). To the extent that the City argues that petitioner has contacted a former coworker to identify herself as the plaintiff in a related federal action (also filed anonymously) and subject of a newspaper article concerning that filing, and to ask the colleague to consult with petitioner's attorney, the decision to tell one individual who could have an impact on the prosecution of this claim does not constitute "[p]etitioner's willingness to set aside her [confidentiality] concerns when it behooves her" (City opp at ¶ 13). Accordingly, petitioner may proceed anonymously.

### II.  *Leave to file a late notice of claim*

Petitioner argues that the Court should exercise its discretion to permit an untimely notice of claim because: (1) a reasonable excuse exists for the failure to timely file a notice of claim; (2) the City had actual notice of the events underlying petitioner's claims; and (3) the City is not prejudiced by a late filing. Petitioner also highlights the role of the Covid-19 pandemic in the delays in filing this petition.

As an initial matter, this opinion focuses only on the common law state tort claims asserted by petitioner, as those are the only claims subject to the notice of claim requirement and

deadlines (*Summers v County of Monroe*, 147 AD2d 949, 950 [4th Dept 1989] ["State notice of claim requirements cannot defeat a substantive Federal right"]; *Margerum v City of Buffalo*, 24 NY3d 721, 727 [2015] ["(a) notice of claim need not be filed for a Human Rights Law claim against a municipality."]; *Sebastian v NY City Health & Hosps. Corp.*, 221 AD2d 294, 294 [1st Dept 1995] ["Discrimination claimants … are not required to file notices of claim pursuant to the General Municipal Law."]).

General Municipal Law (GML) § 50-e(5) provides that a court may extend the 90-day notice of claim filling deadline up to the expiration of the 1-year and 90-day statute of limitations for claims against the City (*Plaza v NY Health & Hosps. Corp. (Jacobi Med. Ctr.),* 97 AD3d 466, 467 [1st Dept 2012] [The failure to seek a court order excusing an untimely notice of claim within one year and 90 days after accrual of the claim requires dismissal of the action]). Here, it is undisputed that petitioner has not filed any notice of claim until attaching one to this petition.

The City does not dispute that a notice of claim as to the Palaez allegations would still be within the 1 year, 90-day statute of limitations, and thus, in the absence of any opposition, that portion of the petition is granted. The City does, however, argue in opposition that the time to file a notice of claim as to the Crespo allegations has expired because the incident occurred on November 15, 2016, and petitioner has known since at least the end of November 2017, when she spoke to an EEO officer and received no response, that her claim was not being investigated. Thus, according to the City, the 1 year, 90-day statute of limitations would have run, at the latest, on February 28, 2019.

The Court agrees. Indeed, the same holds true even if the accrual date was June 12, 2018, when petitioner requested to meet with the Executive Chief of the Investigations Division, who informed petitioner that she had not heard anything about the Crespo allegations. To the extent that petitioner argues that petitioner's claims "involve the *subsequent* failures and refusals of Bronx DA and NYPD" which petitioner did not learn of until 2019 (petitioner's reply at ¶¶ 8-9 [emphasis in original]), there is, as the City argues, no claim in New York for negligent investigation (*Medina v City of NY*, 102 AD3d 101, 108 [1st Dept 2012]), and petitioner's timeframe is undermined by the petition's invocation of earlier delays in 2017 and 2018. To the extent that petitioner also argues in reply that the "negligent investigation" claims are, in fact, gender discrimination/hostile work environment claims, those claims do not, as discussed above, require a notice of claim.

**CONCLUSION**

Accordingly, it is hereby

ORDERED that the branch of petitioner's motion for leave to proceed anonymously is granted, and all papers filed in a lawsuit arising from this notice of claim shall refer to petitioner only as "Jane Doe," "plaintiff," "she," or "her," and all exhibits or other documents submitted to the court shall be redacted so as to exclude any identifying information that could reasonably lead to plaintiff's name; and it is further

ORDERED and ADJUDGED that the petition for leave to serve a late notice of claim is granted to the extent that the Notice of Claim attached to the petition is deemed timely filed and served solely with respect to the allegations and claims against Palaez, and stricken with respect to the allegations and claims against Crespo; and it is further

ORDERED that Petitioner shall commence an action and purchase a new index number in the event a lawsuit arising from this notice of claim is filed; and it is further

ORDERED that respondent shall serve a copy of this decision and order upon all parties within ten (10) days of entry.

This constitutes the decision and order of the Court.

| 6/2/2021 | | | | |
|---|---|---|---|---|
| **DATE** | | | **DAKOTA D. RAMSEUR, J.S.C.** | |
| **CHECK ONE:** | X  CASE DISPOSED | | ☐  NON-FINAL DISPOSITION | |
| | ☐  GRANTED | ☐  DENIED | X  GRANTED IN PART | ☐  OTHER |
| **APPLICATION:** | ☐  SETTLE ORDER | | ☐  SUBMIT ORDER | |
| **CHECK IF APPROPRIATE:** | ☐  INCLUDES TRANSFER/REASSIGN | | ☐  FIDUCIARY APPOINTMENT | ☐  REFERENCE |