Case No. 20-CV-08429 (ALC)(OTW)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE,

Plaintiff,

-against-

CITY OF NEW YORK, GINO PELAEZ, and EDWIN
CRESPO,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANT'S MOTION TO DISMISS THE COMPLAINT.

### GEORGIA PESTANA

*Corporation Counsel of the City of New York*
Attorney for Defendant City of New York
100 Church Street, Room 2-172
New York, New York 10007-2601

*Of Counsel:* William A. Grey

*Tel.*: (212) 356-1181

# TABLE OF CONTENTS

**Page**

Preliminary Statement……………………………………………………………1

Statement of Facts……………………………………………………………….3

Summary………………………………………………………………………….3

The Crespo Allegations………………………………………………………….4

The Pelaez Allegations…………………………………………………………..5

Plaintiff's Disclsoures Of Her Identity……………………………………………6

Argument…………………………………………………………………………7

Point I…………………………………………………………………………...7

PLAINTIFF'S FEDERAL CLAIMS PURSUANT TO TITLE VII ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS……………………………………..7

Point II…………………………………………………………………………..10

PLAINTIFF'S SHRL AND CHRL CAUSES OF ACTION IS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS………………………………………………………10

Point III………………………………………………………………………….12

PLAINTIFF'S § 1983 CLAIMS FAIL AS A MATTER OF LAW AND ARE PARTIALLY BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS…………………………...12

Point IV………………………………………………………………………….17

PLAINTIFF'S NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AND NEGLIGENCE CLAIMS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED AND ARE IN PART BARRED BY THE STATE COURT'S DECISION AND ORDER………………………………………………………………………...17

Point V……………………………………………………………………….....26

PLAINTIFF'S MOTION TO PROCEED ANONYMOUSLY MUST BE DENIED…………...26

Conclusion……………………………………………………………….………28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Abreu v. City of N.Y.,
   657 F. Supp. 2d 357 (E.D.N.Y. 2009) .......................................................................... 13

Almasmary v. City of New York,
   2009 U.S. Dist. LEXIS 27435 (EDNY 2009) ............................................................... 8

Anonymous v. Lerner,
   124 A.D.3d 487 (1st Dept. 2015) ................................................................................ 22

Ash v. City of New York,
   2020 U.S. Dist. LEXIS 2340 (SDNY 2020) ................................................................ 14

Ashcroft v. Iqbal,
   556 U.S. 662 (2009) ............................................................................................... 12, 13

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007) ............................................................................................... 12, 13

Estate of Branch v. NYC Health & Hosps. Corp.,
   2018 NY Slip Op 32966[U] (Sup. Ct. NY County 2018) ........................................... 18

Bright v. Coca Cola Refreshments USA, Inc.,
   2014 U.S. Dist. LEXIS 155565 (EDNY 2014) ..................................................... 10, 11

Carter v. City of New York,
   2015 U.S. Dist. LEXIS 174124 (EDNY 2015) ......................................... 7, 8, 15, 16

Chin v. N.Y. City Hous. Auth.,
   575 F. Supp. 2d 554 (SDNY 2008) ............................................................................. 14

Corazzini v. Litton Loan Servicing LLP,
   2010 U.S.Dist. LEXIS 27398 (NDNY 2010) ........................................................ 19, 20

Day v. City of New York,
   2015 U.S. Dist. LEXIS 161206 (SDNY 2015) ................................................... 9, 10, 11

Dillon v. City of New York,
   261 A.D.2d 34 (1st Dept., 1999) ................................................................................. 19

Doe v. City of New York,
   20 cv 8429 (SDNY) ..................................................................................................... 25

Doe v. Shakur,
   164 F.R.D. 359 (SDNY 1996)........................................................................21, 23, 26

Doe v. Skyline Autos. Inc.,
   375 F. Supp. 3d 401 (SDNY 2019) .........................................................24, 26, 27, 28

Doe v. Solera Capital LLC,
   2019 U.S. Dist. LEXIS 55860 (SDNY 2019) ...................................................................24

Doe v. Weinstein,
   2020 U.S. Dist. LEXIS 161479 (SDNY 2020) ............................................24, 27, 28

Farsetta v. VA,
   2017 U.S. Dist. LEXIS 136184 (SDNY 2017) ............................................................8

Fincher v. Depository Trust & Clearing Corp.,
   604 F.3d 712 (2d Cir., 2010) .................................................................................9, 11

McCaffrey v. City of New York,
   2013 U.S. Dist. LEXIS 18815 (SDNY 2013) ...............................................................14

Missel v. Cnty. of Monroe,
   351 F. App'x 543 (2d Cir. 2009)...............................................................................13

Monell v. N.Y. Dep't of Soc. Servs.,
   436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) .................................12, 13, 15

Murdaugh v. City of New York,
   2011 U.S. Dist. LEXIS 23333 (SDNY 2011) ...............................................................10

Newton v. City of New York,
   566 F. Supp. 2d 256 (SDNY 2008) .........................................................................14

Pembaur v. City of Cincinnati,
   475 U.S. 469 (1986) .............................................................................................13, 14

Quiles v. City of New York,
   2003 U.S. Dist. LEXIS 14238 ...................................................................................15

Rapp v Fowler,
   2021 U.S. Dist. LEXIS 84214 (SDNY 2021) ...............................................23, 24, 25

Simpson v. Uniondale Union Free Sch. Dist.,
   702 F.Supp. 2d 122 (EDNY 2010)............................................................................18

Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe,
   599 F.2d 707 (5th Cir. 1979)....................................................................................26

Tolbert v. Smith,
    790 F.3d 427 (2d Cir. 2015) ........................................................................ 8

Valdez v. City of New York,
    18 N.Y.3d 69 (N.Y. 2011) .......................................................................... 19

Walker v City of NY,
    2013 US Dist LEXIS 35816 (EDNY 2013) ............................................... 13

**Statutes**

42 U.S.C. §1983 ............................................................................................. 1

42 U.S.C. §§ 2000 et seq. .............................................................................. 1

1983 ........................................................................................................ passim

ADA ..................................................................................................... 16, 17

ADEA ............................................................................................................ 8

CHRL ........................................................................................... 2, 10, 11, 12

Civil Rights Act of 1964 Title VII ............................................................... 1

Code §§ 8-101 et seq. .................................................................................... 1

Gender-Motivated Violence Protection Act .............................................. 1, 2

N.Y. Executive Law §§ 290 .......................................................................... 1

New York City Human Rights Law, N.Y ..................................................... 1

Title VII .................................................................................... 2, 7, 8, 10

**Other Authorities**

EW, at 110 ................................................................................................... 26

Fed. R. Civ. P. 12(b)(6) .............................................................................. 12

Federal Rules of Civil Procedure Rule 10(a) .............................................. 21

,
    https://www.pacermonitor.com/public/case/36615917/Doe_v_City_of_New_Yor
    k_et_al ........................................................................................................ 6

NYC Admin. Code §§ 8-901 to 8-907 ............................................................................1

Order to Show Cause in the Supreme Court of the State of New York under Index
   No. 100601/2020 .......................................................................................................1

Sealed Plaintiff, at 190 ...........................................................................................23


N.Y. Executive Law §§ 290 et seq. .............................................................................1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

JANE DOE,

                                        Plaintiff,

                                                        20-CV-08429 (ALC)(OTW)

            -against-

CITY OF NEW YORK, GINO PELAEZ, and
EDWIN CRESPO,

                                        Defendants.
------------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

### PRELIMINARY STATEMENT

Plaintiff, a former Bronx County District Attorney's Office ("BXDA") Assistant District Attorney initially brought this action on October 8, 2020 alleging claims of purported hostile work environment due to her gender ("female") under Title VII of the Civil Rights Act of 1964 ("Title VII"), codified at 42 U.S.C. §§ 2000 et seq.., the New York State Human Rights Law("SHRL"), N.Y. Executive Law §§ 290 et seq., and the New York City Human Rights Law ("CHRL"), N.Y. City Admin. Code §§ 8-101 et seq., as well as claims pursuant to the New York City Victims of Gender-Motivated Violence Protection Act, NYC Admin. Code §§ 8-901 to 8-907, 42 U.S.C. §1983 ("1983"), negligent infliction of emotional distress, intentional infliction of emotional distress, false imprisonment, assault, and battery. See, Dkt. No. 1.

Prior to filing the Complaint, and on August 3, 2020, the Plaintiff filed an Order to Show Cause in the Supreme Court of the State of New York under Index No. 100601/2020. See, a copy of the Decision and Order On Motion annexed to the Declaration of William A. Grey as

1

Exhibit "C.[1]"  The Plaintiff requested that she be allowed "to file a late notice of claim alleging: (1) state personal injury and tort claims including negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, false imprisonment, assault and battery;" and claims concerning Plaintiff's Title VII, NYSHRL, NYCHRL, the New York City Victims of Gender-Motivated Violence Protection Act.   Exhibit "C," at pg. 1.   The Judge granted the Plaintiff's petition to file her State Court paperwork anonymously.  Id. at pg. 4.  The Judge limited the ruling to only Plaintiff's common law state claims asserted by Plaintiff because state notice of claim requirements cannot defeat a substantive Federal right and the SHRL and CHRL claims do not require notices of claim pursuant to the General Municipal Law.  Id. at pgs. 4-5.  The Court denied Plaintiff's request to file a late notice of claim for all of the state law tort claims concerning the allegations that arose concerning the incidents with Mr. Crespo.  Id. at pg. 5-6.  The Court allowed Plaintiff to file a late notice of claim concerning the state law tort claims concerning Mr. Pelaez.  Id. at pgs. 4-5.

Following this decision, and on June 30, 2021, the Plaintiff filed an Amended Complaint.  See, Dkt. No. 32.  In the Amended Complaint, the Plaintiff alleges, against the City of New York, claims of purported hostile work environment due to her gender based under Title VII, CHRL, SHRL as well as claims pursuant to 1983, negligent infliction of emotional distress, and negligence. See, id.

The Defendant City of New York now moves to dismiss Plaintiff's Complaint in its entirety as against the City of New York.  Plaintiff's Title VII, SHRL, and CHRL claims are

---

[1] All exhibits referenced herein refer to the exhibits annexed to the Declaration of William A. Grey dated August, 16, 2021, unless otherwise identified.

barred entirely by the statute of limitations.  Plaintiff's 1983 action is barred in part by the applicable statute of limitations.  Plaintiff's remaining 1983 claims not barred by the statute of limitations, negligent infliction of emotional distress claims, and negligence claim must also be dismissed for a failure to state a claim upon which relief may be granted.

Additionally, Plaintiff's motion for an order to proceed anonymously must be denied.  The Plaintiff has forfeited her anonymity by identifying herself as the Jane Doe plaintiff and by publicly naming the alleged individual Defendants.  Plaintiff also does not meet the federal standard for anonymity.

Accordingly, Plaintiff's Complaint must be dismissed in its entirety as against the City of New York.

## STATEMENT OF FACTS[2]

A.    **Summary**

Plaintiff is a former BXDA Assistant District Attorney.  See, Dkt. No 32 at ¶9.  Plaintiff claims that she suffered two assaults while employed at BXDA.  Id. at ¶¶1,2.  The Plaintiff alleges that on November 15, 2016, New York City Police Department ("NYPD") Officer Edwin Crespo moved close to her during a meeting in her cubicle and ran his hand up and down her thigh.  Id. at ¶¶13-15.  The Plaintiff also alleges that on August 3, 2019, after a holiday party she took a cab ride to her home with a BXDA colleague, Senior Accountant Investigator Gino Pelaez.  Id. at ¶31.  The Plaintiff alleges that she was assaulted by Mr. Pelaez during the cab ride

---

[2] Unless otherwise identified, this statement of facts is derived from the allegations in Plaintiff's Amended Complaint herein (ECF Dkt. No. 32) and the material allegations set forth therein are assumed to be true for purposes of this motion to dismiss only.

and again in her apartment that evening.  Id. at ¶¶31-34.  The Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commision ("EEOC") on May 29, 2020. Id. at ¶6.

## B.      THE CRESPO ALLEGATIONS

The Plaintiff alleges that she was meeting with Officer Crespo in her cubicle at the BXDA on November 15, 2016.  Id. at ¶13.  The Plaintiff alleges that during this meeting officer Crespo pulled his chair close to hers and placed his hand on her thigh rubbing in an up and down manner.  Id. at ¶14.  The Plaintiff alleges that an unidentified police officer witnessed this incident and informed a colleague, Assistant District Attorney Justin Thompson.  Id. at ¶ 15.  Mr. Thompson came over to Plaintiff, but Officer Crespo had removed his had prior to Mr. Thompson's arrival.  Id.

After this meeting, the Plaintiff informed several of her colleagues that she felt that she had just been assaulted.  Id. at ¶¶16-18.  Plaintiff eventually went to her own supervisor, Economic Crimes Bureau Chief William Zalenka to report the alleged assault.  Id. at ¶18.  The Plaintiff claims that Chief Zalenka merely informed Plaintiff to seek out a male escort when having meetings with Officer Crespo in the future.  Id. at ¶20.

The Plaintiff did have two additional meetings with Officer Crespo which were attended by male assistant district attorneys.  Id. at ¶22.  The Plaintiff does not allege that any assaults occurred during these meetings.  The Plaintiff further alleges that ten months after the alleged assault she was informed that any cases involving this officer would be reassigned from her.  Id. at ¶23.

4

C.    **THE PELAEZ ALLEGATIONS**

The Plaintiff attended a holiday party hosted by a BXDA employee, on August 3, 2019.  Id. at ¶31.  The Plaintiff attended the party along with many of her colleagues.  Id. at ¶ 31. The Plaintiff left the party and was intending to take a taxi home.  Id. at ¶ 31.  The Plaintiff alleges that Mr. Pelaez got into the taxi as well.  Id. at ¶ 31.  The Plaintiff alleges that she was assaulted by Mr. Pelaez during the taxi ride home.  Id. at ¶ 31.  The Plaintiff also alleges that Mr. Pelaez forced himself into her apartment where he allegedly assaulted her again.  Id. at ¶ 33-34.

The Plaintiff chose to make a report of this incident on August 15, 2019.  Id. at ¶36. The same day that she reported the incident, the BXDA brought her to see a clinical therapist and set up a meeting with the Chief of the Special Victims Division.  Id. at ¶37.  The Chief of the Special Victims Division advised Plaintiff to make a report with the New York City Police Department's Special Victims Unit and the Manhattan District Attorney's Office.  Id. at ¶37.  The New York City Police Department assigned Detective Trotter to investigate the Pelaez allegations. Id. at ¶39.  The Manhattan District Attorney assigned Mimi C. Mairs to investigate the Pelaez allegations.  Id. at 43.

The Plaintiff was put on paid administrative leave after this incident.  Id. at 40. When Plaintiff returned to work on August 22, 2019, she was told that Pelaez would not be there because he was put out on administrative leave.  Id. at 47.  On August 27, 2019, the Plaintiff filed a workplace violence accident report and on August 29, 2019 she submitted a complaint to the Equal Opportunity Office.  Id. at ¶¶49-50.

On October 29, 2019, Manhattan Assistant District Attorney Mairs informed Plaintiff that they would not be bringing charges against Pelaez for the alleged assaults. Id. at ¶52. The next day, October 30, 2019, the Plaintiff was informed by the BXDA Equal Employment Opportunity Officer that since the criminal charges had come to a conclusion they would begin their investigation. Id. The Plaintiff was informed on December 11, 2019, that Mr. Pelaez would remain on paid administrative leave during the pendency of the Equal Employment Opportunity investigation and the Workplace Violence investigation. Id. at 55. The BXDA's office informed Plaintiff on May 26, 2020 that her EEO complaint was substantiated by the agency. Id. at 60.

D.     **PLAINTIFF'S DISCLOSURES OF HER IDENTITY**

The Plaintiff and her attorneys have identified the Plaintiff as Jane Doe despite seeking anonymity from this Court. First, when Plaintiff's attorneys filed the Complaint, they left Plaintiff's name as the title in the metadata. See, Dkt. No. 23. The Plaintiff's attorneys were forced to seek to have their Complaint sealed in order to try and place the horse back in the barn. See, id. However, public websites had already offered Plaintiff's complaint for purchase. See, https://www.pacermonitor.com/public/case/36615917/Doe_v_City_of_New_York_et_al last visited Tuesday February 23, 2021 at 4:34 pm.

The Plaintiff also identified herself to coworkers. See, Exhibits "A" and "B" annexed to the Declaration of William A. Grey. On October 21, 2020, Plaintiff sent a text message to her former co-worker at BXDA, Jennifer Shaw. See, id. The Plaintiff identified herself as the Plaintiff in the "lawsuit as Jane Doe." See, id. The Plaintiff requested that Ms. Shaw contact the Plaintiff's attorney in order to discuss any experiences she may have had filing EEO complaints

at the BXDA.  <u>See</u>, id.  The Plaintiff indicated in the text message that Ms. Shaw was not the only

person contacted by the Plaintiff.  <u>See</u>, id.


<u>**ARGUMENT**</u>

<u>POINT I</u>

**PLAINTIFF'S FEDERAL CLAIMS PURSUANT TO TITLE VII ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS**

A.    **Plaintiff's Title VII Time Barred Claims.**

Plaintiff's claims pursuant to Title VII must be dismissed as untimely.  The Plaintiff's

Amended Complaint only identifies the alleged Crespo Incident as a basis for her Title VII claim.

<u>See</u>, Dkt. No 32 at ¶¶61-64.  Plaintiff pleads that Officer Crespo allegedly touched her leg on

November 15, 2016.  <u>Id</u>. at ¶13.  The Plaintiff claims that on the same day that she made her

complaint to Chief Zalenka, he informed Plaintiff to seek out a male escort when having meetings

with Officer Crespo in the future.  <u>Id</u>. at ¶20.  Plaintiff's Title VII claims accrued on November

15, 2016.  She complained to her supervisor and she was allegedly told that the solution was to

bring a male escort with her to the next two meetings.  The Plaintiff does not plead that any

harassment or unwanted touchings occurred during these subsequent meetings.  <u>See</u>, Dkt. No 32

at ¶22.  Plaintiff filed a complaint with the EEOC on May 29, 2020.  300 days after November 15,

2016, is Monday, September 11, 2017.

"The timeliness of a discrimination claim is to be measured from the date the claimant

had notice of the alleged discriminatory action."  <u>Carter v. City of New York</u>, 2015 U.S. Dist.

LEXIS 174124, at 25 (EDNY 2015).  Hostile work environment claims are "not time-barred if an

7

act contributing to the claim occurs within the filing period."  <u>Almasmary v. City of New York</u>, 2009 U.S. Dist. LEXIS 27435, at 13 (EDNY 2009) (cleaned up).  "As a statutory precondition to initiating a Title VII action, a plaintiff must first file an administrative complaint with the EEOC; in a state, like New York, with a fair employment agency, the administrative complaint must be filed with the EEOC within 300 days after the alleged unlawful employment practice occurred."  <u>Carter</u>., at 25 (cleaned up).

"The analysis of the hostile working environment theory of discrimination is the same under the ADEA as it is under Title VII.  In order to establish a hostile work environment claim under Title VII, a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  <u>Farsetta v. VA</u>, 2017 U.S. Dist. LEXIS 136184, at 18 (SDNY 2017) (cleaned up).  "It is axiomatic that the plaintiff also must show that the hostile conduct occurred because of a protected characteristic."  <u>Id</u>., at 18, <u>quoting</u>, <u>Tolbert v. Smith</u>, 790 F.3d 427, at 439 (2d Cir. 2015).  "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.  Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness."  <u>Smith</u>, at 439 (cleaned up).  "Complaints about work assignments are not generally sufficient to state a hostile work environment claim."  <u>Farsetta</u>, at 19.

Plaintiff's claims concerning the alleged Officer Crespo incident accrued on November 15, 2016.  That is the date the Plaintiff claims she was touched by Officer Crespo.  That is the same date on which Plaintiff claims she complained about this touch.  That is the same date that she was allegedly told that the remedy for her complaint would be to bring a male colleague to these two,

undated future meetings.  The Plaintiff does not allege any alleged discriminatory acts allegedly

contributing to the claim that took place after November 15, 2016.  The Plaintiff pleads that her

employer did the opposite, ten months after her complaint the BXDA removed all cases from

Plaintiff that involved Officer Crespo and reassigned them to another assistant district attorney.

See, Dkt. No 32 at ¶23.  Removing any cases that involved Officer Crespo cannot be deemed an

act in furtherance of a hostile work environment as it was the exact relief that Plaintiff sought.

See, Dkt. No 32 at ¶23.

Plaintiff's attempt to rely on an alleged failure to investigate as comprising an act in

furtherance of the hostile working environment would be misplaced.  "Indeed, although this Circuit

has not ruled on the question, in the analogous context of hostile work environment claims based

on allegations of sexual harassment, '[federal] courts (including district courts in this circuit)

appear to have uniformly rejected the notion that a failure adequately to remediate sexual

harassment itself constitutes an act that may contribute to a hostile working environment.'"

Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, at 724 (2d Cir., 2010); quoting, Chan

v. N.Y. City Transit Auth., 2004 U.S. Dist. LEXIS 16370, at 15 (EDNY 2004).  Additionally, a

failure to investigate a claim pursuant to an employer's own EEO policy is not an adverse action.

See, Day v. City of New York, 2015 U.S. Dist. LEXIS 161206, (SDNY 2015).

Plaintiff's Amended Complaint does not allege that any alleged deficient remedial steps

led to any further acts of sexual harassment.  The Plaintiff pleads that she met with Officer Crespo

on two dates after her complaint to her supervisor and does not allege that any sexual harassment

or improper touching occured.  See, Dkt. No 32 at ¶22.

Plaintiff's 300 day limitations period began running on November 15, 2016, when she alleges that she had knowledge of a discriminatory act and her supervisor's response to her allegation. 300 days after November 15, 2016, is September 11, 2017. Plaintiff did not file with the EEOC until May 29, 2020. Id. at ¶6. Plaintiff's Title VII claims are therefore barred by the applicable statute of limitations.

POINT II

**PLAINTIFF'S SHRL AND CHRL CAUSES OF
ACTION IS BARRED BY THE APPLICABLE
STATUTE OF LIMITATIONS**

Plaintiff's claims pursuant to the SHRL and CHRL are barred by the applicable statute of limitations. Plaintiff claims pursuant to the SHRL and CHRL are similar to Plaintiff's Title VII claims in that they are entirely based on the alleged Officer Crespo incident. See, Dkt. No. 32 at ¶¶65-72. Claims pursuant to the SHRL and CHRL are subject to a three-year statute of limitations. The standards for a continuing violation exception under the SHRL and CHRL are similar to the standard under a Title VII claim." Murdaugh v. City of New York, 2011 U.S. Dist. LEXIS 23333, at 10 (SDNY 2011) (internal citations omitted). "The continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances. Bright v. Coca Cola Refreshments USA, Inc., 2014 U.S. Dist. LEXIS 155565, at 8 (EDNY 2014). "Even for a hostile work environment claim, a plaintiff must show that both an incident of harassment occurred within the limitations period, and that this timely incident was 'part of the same actionable hostile work environment practice' as the untimely incidents." Bright, at 8; quoting, McGullam v. Cedar Graphics, 609 F.3d 70, 76 (2d Cir. 2010).

10

"New York courts have held that the pre-<u>Morgan</u>, more generous continuing violations doctrine continues to apply to discrete acts of employment discrimination under NYCHRL.  But although time barred discrete acts can be considered timely, a plaintiff must still show that specific and related instances of discrimination were permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice."  <u>Bright</u>, at 9 (cleaned up).

        Plaintiff's CHRL and SHRL claims both accrued on November 15, 2016.  As noted above, Plaintiff alleges no further instances of sexual harassment concerning Officer Crespo after that day.  She specifically states that she attended the two further meetings and does not allege any specific or related instances of discrimination.  <u>See</u>, Dkt. No 32 at ¶22.  As noted above, ten months after Plaintiff's complaint she had all other cases involving Officer Crespo reassigned.  <u>See</u>, Dkt. No 32 at ¶23.  Reassigning her cases is not an act in furtherance of a discriminatory policy as this is the exact relief the Plaintiff requested.  <u>Id</u>.

        Any attempt to argue that an alleged failure to investigate somehow extends her statute of limitations is fatally deficient due to no allegations of any acts in furtherance of the hostile working environment beyond November 15, 2016.   As noted above, an alleged failure to investigate is not an act that can contribute to a hostile working environment.  <u>Fincher</u>, at 724.  Additionally, a failure to investigate a claim pursuant to an employer's own EEO policy is not an adverse action.  <u>See</u>, <u>Day v. City of New York</u>, 2015 U.S. Dist. LEXIS 161206, (SDNY 2015).

        Even under the more forgiving CHRL standard, there still must be "specific and related instances of discrimination [that] were permitted by the employer," and Plaintiff has failed to allege any specific instances of discrimination concerning the Officer Crespo allegations beyond the allegations that took place on November 15, 2016.  <u>See</u>, <u>Bright</u>.

Since Plaintiff's SHRL and CHRL claims accrued on November 15, 2016, their three-year statute of limitations ran on November 15, 2019.  Plaintiff filed the original Complaint on October 8, 2020.  See, Dkt. No. 1.

POINT III

**PLAINTIFF'S § 1983 CLAIMS FAIL AS A MATTER OF LAW AND ARE PARTIALLY BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS**

Plaintiff's § 1983 claim is styled as a Monell claim based on the BXDA, District Attorney Darcel D. Clark, and Executive Assistant Odalys C. Alonso's alleged failure to adequately investigate Crespo and Pelaez's actions against Plaintiff, an alleged failure to punish or terminate the employment of former Officer Crespo a non-BXDA employee, and for having a "de facto custom, policy or usage of unconstitutional conduct sufficient for the imposition of municipal liability under Monell."  See, Dkt. No 32 at ¶83.

To withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Rule 12(b)(6) of the Federal Rules of Civil Procedure instructs that a complaint may be dismissed "for failure [of the pleading] to state a claim upon which relief can be granted."  At the pleading stage, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Providing mere "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

12

not show[n] – that the pleader is entitled to relief." Iqbal, 556 U.S. at 679 (citation and internal quotation marks omitted).

"Because municipalities may not be held vicariously liable for the actions of their employees, a claim against a municipality must be premised on the theory that the municipality maintained a policy, practice, or custom that caused the plaintiff's constitutional injury. See Monell v. N.Y. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). The plaintiff must allege a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." Abreu v. City of N.Y., 657 F. Supp. 2d 357, 360 (E.D.N.Y. 2009) (quoting City of Canton v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)). In the context of a motion to dismiss, "a plaintiff must make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality." Missel v. Cnty. of Monroe, 351 F. App'x 543, 545 (2d Cir. 2009). See also Twombly, 550 U.S. at 555." Walker v City of NY, 2013 US Dist LEXIS 35816, at *13-14 (EDNY 2013).

"Municipal liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official -- even a policymaking official -- has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." Pembaur v. City of Cincinnati, 475 U.S. 469, 481-482 (1986). "The critical characteristic of final policymakers when employment is at issue is whether the municipal official has authority to formulate the rules governing personnel decisions rather than authority to make decisions pursuant

13

to those rules -- e.g., the hiring and firing of subordinates." <u>Chin v. N.Y. City Hous. Auth.</u>, 575 F. Supp. 2d 554, 562 (SDNY 2008).

        The <u>Pembaur</u> Court offered an analogy to help explain the difference between a policymaker and a person carrying out a policymaker's directives.  <u>See</u> <u>Pembaur</u> at FN. 12. In that example, a County Sheriff had the authority to make hiring and firing decisions, but the Board of County Commissioners set the policy.  Thus, only the actions of the Board of County Commissioners could provide a basis for liability.  Therefore, even if the Sheriff exercised that discretion in an unconstitutional manner the decision to act would not be the Board's decision thus removing the decision from the scope of § 1983 liability. <u>See</u> id.

        A failure to investigate "claim is not redressable under federal law.  'The Second Circuit has yet to recognize a claim … for failure to investigate, and district courts in this circuit have consistently declined to recognize a claim of 'failure to investigate' as a violation … giving rise to a damages action." <u>Ash v. City of New York</u>, 2020 U.S. Dist. LEXIS 2340, at 23 (SDNY 2020); <u>quoting</u>, <u>Gill v. City of New York</u>, 2017 U.S. Dist. LEXIS 42383, at *6 (EDNY 2017) (<u>quoting</u> <u>Grega v. Pettengill</u>, 123 F. Supp. 3d 517, 536 (D. Vt. 2015)(collecting cases)); <u>see</u> <u>also</u> <u>McCaffrey v. City of New York</u>, 2013 U.S. Dist. LEXIS 18815, at *5 (SDNY 2013) ("[A] 'failure to investigate' claim is not independently cognizable as a stand-alone claim[.]"); <u>Newton v. City of New York</u>, 566 F. Supp. 2d 256, 278 (SDNY 2008) (observing that "there is no constitutional right to an adequate investigation") (citation omitted).

        "For statute of limitations purposes, claims under section 1983 are best characterized as personal injury actions.  In New York, the personal injury statute of limitations that applies to section 1983 actions is three years.  While state law supplies the statute of limitations

for claims under section 1983, federal law determines when a federal claim accrues.  A section 1983 claim accrues when the plaintiff knows or has reason to know of the harm." Quiles v. City of New York, 2003 U.S. Dist. LEXIS 14238, at 16 (internal citations omitted).

All of Plaintiff's allegations concerning the alleged incident with former Officer Crespo are time barred.  The Plaintiff knew, or had reason to know, of the harm when her leg was touched and she was told that her recourse was to bring males with her to two meetings.  That occurred on November 15, 2016.  Three years after November 15, 2016 is November 15, 2019.  Plaintiff filed the original Complaint on October 8, 2020. See, Dkt. No 1.

Even if Plaintiff's 1983 claims concerning former Officer Crespo were timely, they still fail to state a cause of action for which relief may be granted.  This defect in the Plaintiff's pleadings runs to both the Crespo and Pelaez allegations.  Plaintiff points to no official policy or custom of the City of New York that allegedly caused her depravation.  Plaintiff relies on what she has described as a "de facto policy" of not adequately investigating. See, Dkt. No 32 at ¶83.  However, the Plaintiff must plead more than just general and conclusory allegations that there was a policy of discrimination. See, Carter, at 50; citing Ruiz v. City of New York, 2015 U.S. Dist. LEXIS 117947, at 11-12 (SDNY 2015) (conclusory statement that defendant's engaged in a "pattern and practice" of discrimination insufficient to defeat defendants' motion to dismiss Monell claim."); citing Maynard v. City of New York, 2013 U.S. Dist. LEXIS 178433, at 6 (SDNY 2013) (dismissing Monell claim that was based on conclusory allegations that municipal defendants had a policy or custom of discriminating against African-Americans.)

Additionally, the Plaintiff has not plead any facts to plausibly show that any official policy maker made any decisions concerning her alleged incidents with Mr. Crespo or Mr. Pelaez.

15

Concerning Mr. Crespo, the Plaintiff argues that the highest person she spoke with was her own supervisor, Economic Crimes Bureau Chief William Zalenka to report the alleged assault.  Id. at ¶18. She does not plead any facts that would support that Economic Crimes Bureau Chief William Zalenka is the final policy maker with respect to BXDA equal employment opportunity policy. Thus, even if Mr. Zelanka was responsible for carrying out EEO policy, Plaintiff has pled no facts that he could formulate the EEO rules for the BXDA.  Plaintiff points to District Attorney Clark and Assistant District Attorney Alonso as the official policymakers in the 1983 section of her Amended Complaint, implicitly admitting that Mr. Zalenka is not a policy maker by omission. See, Dkt. No. 32 at ¶83.

DA Clark is not even mentioned in the Amended Complaint until paragraph 83 and nowhere else.  See, Dkt. No 32.  Plaintiff does not plead any facts alleging that DA Clark knew about her incidents or complaints. Plaintiff does not plead that DA Clark took any actions concerning her incidents or complaints.

The Plaintiff failed to plead that ADA Alonso had any factual connection to the Crespo allegations.  See, Dkt. No 32.  Regarding the Pelaez allegations, ADA Alonso was identified as the contact person for the BXDA investigation, received a video from Plaintiff, notified Plaintiff that Mr. Pelaez was placed on administrative leave, recommended Plaintiff fill out a Workplace Violence Accident Report, informed Plaintiff that the BXDA investigation would proceed after the criminal investigation ran its course, and told Plaintiff that Mr. Pelaez would remain on leave during the pendency of the BXDA's investigation. See, Dkt. No. 32 at ¶¶40, 44, 45, 47, 49, 53, 55.

16

None of these actions can be considered a "de facto" policy of not investigating complaints. Even if there were sufficient facts pled that Mr. Alonso was an official policy maker, none of his actions can be seen as anything other than supporting the investigation that did take place.  Plaintiff admits that not only was an investigation conducted, but that her complaint was substantiated. Id. at ¶60.

It should be noted that DA Clark and ADA Alonso do not make policy for the New York City Police Department and cannot be held liable for any alleged failure to investigate NYPD employees.  Plaintiff styled this claim as also against the NYPD, but does not plead sufficient facts to state a claim against the NYPD.  She cannot even plead that no NYPD investigation took place, as she has couched that pleading upon information and belief, also known as hearsay.  Id. at ¶30.

In any event, and as noted above, the federal courts do not recognize a 1983 claim for failure to investigate.  Considering that it is not even an adverse employment action there can be no argument that it represents a Constitutional violation.

Plaintiff's 1983 claims must be dismissed in their entirety.

POINT IV

**PLAINTIFF'S NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AND NEGLIGENCE CLAIMS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED AND ARE IN PART BARRED BY THE STATE COURT'S DECISION AND ORDER**

Plaintiff's negligent infliction of emotional distress and negligence claims concerning any of the Crespo allegations must be dismissed.  Plaintiff's request to file a late notice of claim concerning the Crespo allegations was denied by the Honorable Justice Ramsuer because it was filed more than one year and 90 days after the alleged claims accrued.  See, Defendant's

17

Exhibit "C;" see also, Estate of Branch v. NYC Health & Hosps. Corp., 2018 NY Slip Op
32966[U], at 5-6 (Sup. Ct. NY County 2018) (internal citation and quotations omitted) ("While a
court can grant a plaintiff leave to serve a late notice of claim a court cannot extend the statute of
limitations.  The failure to seek a court order excusing such lateness within one year and 90 days
after accrual of the claim requires dismissal of the action.")

Based on the decision from the state court, only the tort allegations concerning the
Pelaez allegations survive the statute of limitations.  Plaintiff's negligent infliction of emotional
distress and negligence causes of action against the City of New York fail to state a claim upon
which relief may be granted.  To the extent Plaintiff does state a claim, the action cannot be
maintained due to the reasoned judgment rule.

"Under New York law, the torts of intentional and negligent infliction of emotional
stress share three common elements: (1) extreme and outrageous conduct, (2) a causal connection
between the conduct and the injury, and (3) severe emotional distress."  Simpson v. Uniondale
Union Free Sch. Dist., 702 F.Supp. 2d 122, at 134 (EDNY 2010).  "Additionally, it is well settled
that the circumstances under which recovery may be had for purely emotional harm are extremely
limited and, thus, a cause of action seeking such recovery must generally be premised upon a
breach of duty owed directly to the plaintiff which either endangered the plaintiff's physical safety
or caused the plaintiff to fear for his or her own physical safety."  Id. at 135 (internal citations
omitted).

"A cause of action for either intentional or negligent infliction of emotional distress
must be supported by allegations of conduct by a defendant so outrageous in character, and so
extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious,

18

and utterly intolerable in a civilized community."  <u>Dillon v. City of New York</u>, 261 A.D.2d 34, at

42 (1st Dept., 1999).

        "To state a prima facie claim for negligence, the plaintiff must demonstrate that the

defendant owed the plaintiff a cognizable duty of care, that the defendant breached that duty, and

that the plaintiff suffered damages as a proximate result of that breach."  <u>Corazzini v. Litton Loan</u>

<u>Servicing LLP</u>, 2010 U.S.Dist. LEXIS 27398, at 14 (NDNY 2010) (internal citations omitted).

        Even if Plaintiff can properly plead a negligence cause of action, it is barred by the

reasoned judgment rule.  "As a result, a public employee's discretionary acts -- meaning conduct

involving the exercise of reasoned judgment -- may not result in the municipality's liability even

when the conduct is negligent.  In other words, even if a plaintiff establishes all elements of a

negligence claim, a state or municipal defendant engaging in a governmental function can avoid

liability if it timely raises the defense and proves that the alleged negligent act or omission involved

the exercise of discretionary authority."  <u>Valdez v. City of New York</u>, 18 N.Y.3d 69, at 76 (N.Y.

2011) (internal citations and quotations omitted).  The "rule that emerges is that government

action, if discretionary, may not be a basis for liability, while ministerial actions may be, but only

if they violate a special duty owed to the plaintiff, apart from any duty owed to the general public."

<u>Valdez</u>, at 76 (internal citations and quotations omitted).

        Plaintiff's negligent infliction of emotional distress claims fail to state a cause of

action.  The Plaintiff's boiler plate pleading is merely a recitation of the necessary elements.  <u>See</u>,

Dkt. No. 32 at ¶¶97-99.  Plaintiff fails to identify the duty, the breach, the causation, or the

damages.  This is equally applicable to Plaintiff's negligence claim.  <u>See</u>,  <u>Id</u>. at ¶¶100-103.

"Plaintiff never states what the duty of care was owed by each Defendant, how the Defendants

19

breached that duty and what damages Plaintiff suffered due to that breach.  Plaintiff's pleading truly does no more than append the language of tort to the sole factual allegation of [failure to investigate]; there are no allegations of what negligence might actually have been committed." Corazzini, at 15-16.

Additionally, Plaintiff fails to plead allegations of conduct that shock the conscience or go beyond all reasonable bounds of what one would expect in a civilized society. The allegations do not show atrocious conduct at all concerning the BXDA.  The same day Plaintiff reported the Pelaez allegations to the BXDA, they brought her to a clinical therapist.  See, Dkt. No. 32 at ⅂37.  She was then offered a meeting with the Chief of the Special Victims Unit.  Id. She was advised to make a report with the police, and she did.  Id.  Plaintiff was given paid time off.  Id. at 40.  The BXDA put the Plaintiff's alleged assailant on paid leave from the day she complained.  Id. at 47.  After the criminal investigation concluded that no charges were being brought against Mr. Pelaez, the BXDA began their investigation into the incident.  Id. at 53.  After the BXDA concluded their investigation, they determined that the Plaintiff's complaint was substantiated.  Id. at 59.  None of this conduct can be characterized as atrocious or beyond all bounds of civilized society.  Plaintiff's pleadings do not contain any allegations of negligence concerning this investigation.

To the extent Plaintiff's negligence or negligent infliction of emotional distress claims are premised on the belief that the investigation was not adequately or timely investigated she is barred by the Reasoned Judgment rule.  Clearly, when to investigate, whom to contact during the investigation, and the speed of the investigation all implicate the reasoned judgment of a government official.  These are clearly discretionary decisions that cannot be the basis of a

20

negligence action.  Government investigators have to balance a variety of competing interests especially when a criminal investigation is already underway.  For instance, if a government employer compels an employee to give a statement about such an incident, then the government employer may otherwise immunize the conduct from the criminal prosecution.  The Reasoned Judgment rule understands that where a situation is not ministerial and a government actor is allowed discretion, then a negligence claim will fail as a matter of law.  Plaintiff's pleadings clearly demonstrate that that in regards to the Pelaez allegations, the government actors making the investigatory decision were using their reasoned judgement and the causes of action sounding in negligence must be dismissed.

Accordingly, Plaintiff's negligence and negligent infliction of emotional distress claims must be dismissed.

<u>POINT V</u>

**PLAINTIFF'S    MOTION    TO    PROCEED ANONYMOUSLY MUST BE DENIED**

The requirement of naming all parties to a lawsuit holds firm resonance in both New York State and Federal Courts.  Rule 10(a) of the Federal Rules of Civil Procedure requires "that a complaint shall state the names of all the parties.  The intention of this rule is to apprise parties of who their opponents are and to protect the public's legitimate interest in knowing the facts at issue in court proceedings."  <u>Doe v. Shakur</u>, 164 F.R.D. 359, at 360 (SDNY 1996).

A party wishing to proceed pseudonymously must overcome the presumption of open court.  "The determination of whether to allow a plaintiff to proceed anonymously requires the court to use its discretion in balancing plaintiff's privacy interest against the presumption in favor of open trials and against any potential prejudice to defendant."  <u>Anonymous v. Lerner</u>, 124

21

A.D.3d 487, 487 (1st Dept. 2015). A "trial court should … exercise its discretion to limit the public

nature of judicial proceedings sparingly and then, only when unusual circumstances necessitate

it." Lerner, at 487 (internal citations omitted).  "Claims of public humiliation and embarrassment

… are not sufficient grounds for allowing a plaintiff … to proceed anonymously." Lerner, at 488

(collecting cases).

In Sealed Plaintiff v. Sealed Defendant #1, the Second Circuit put forth a test that

has been cited by courts within the First Department.  537 F.3d 185 (2d Circuit, 2008).  The Second

Circuit held that the in exhaustive factors to be considered are:

> (1) whether the litigation involves matters that are
> highly sensitive and [of a] personal nature; (2)
> "whether identification poses a risk of retaliatory
> physical or mental harm to the . . . party [seeking to
> proceed anonymously] or even more critically, to
> innocent non-parties;" (3) whether identification
> presents other harms and the likely severity of those
> harms, including whether the injury litigated against
> would be incurred as a result of the disclosure of the
> plaintiff's identity; (4) whether the plaintiff is
> particularly vulnerable to the possible harms of
> disclosure, particularly in light of his age; (5)
> whether the suit is challenging the actions of the
> government or that of private parties; (6) whether the
> defendant is prejudiced by allowing the plaintiff to
> press his claims anonymously, whether the nature of
> that prejudice (if any) differs at any particular stage
> of the litigation, and whether any prejudice can be
> mitigated by the district court; (7) whether the
> plaintiff's identity has thus far been kept confidential;
> (8) whether the public's interest in the litigation is
> furthered by requiring the plaintiff to disclose his
> identity; (9) "whether, because of the purely legal
> nature of the issues presented or otherwise, there is
> an atypically weak public interest in knowing the
> litigants' identities; and (10) whether there are any
> alternative mechanisms    for    protecting    the
> confidentiality of the plaintiff.

<u>Sealed Plaintiff</u>, at 190 (internal citations and quotation marks omitted).

Additionally, the plaintiff forfeited her right to anonymity when she publicly identified the names of her alleged assailants.  "If plaintiff were permitted to prosecute this case anonymously, Shakur would be placed at a serious disadvantage, for he would be required to defend himself publicly while plaintiff could make her accusations from behind a cloak of anonymity."  <u>Shakur</u>, at 361; <u>citing</u>, <u>Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe</u>, 599 F.2d 707, 713 (5th Cir. 1979)("Because the mere filing of a civil action against … private parties may cause damage to their good names and reputation, basic fairness dictates that plaintiffs who publicly accuse defendants in civil suits must sue under their real names.").

The Plaintiff only puts forth arguments concerning factors 1, 2, 3, 5, 6, 7, and 8 in her Memorandum of Law.  <u>See</u>, Dkt. No 3 at pgs. 9-14.  The Defendant concedes that the claims involved are of a highly sensitive and personal nature.  While this factor does support Plaintiff's request, "[i]mportantly, however, allegations of sexual assault, by themselves, are not sufficient to entitle a plaintiff to proceed under a pseudonym."  <u>Rapp v Fowler</u>, 2021 U.S. Dist. LEXIS 84214, at 10 (SDNY 2021).

Factors 2, 3, and 7 support the Defendant's position.  These should be viewed in conjunction as they were in the <u>Rapp</u> case.  <u>Rapp</u>, at 11. First, Plaintiff does not offer any expert report or expert affidavit.  Plaintiff merely offers her own conclusions that she will be harmed if her colleagues or members of the public can identify her as the Plaintiff in this action.  <u>See</u>, Dkt. No. 3 at pg 17.  Plaintiff offers no expert affidavits or expert reports concerning the alleged harms that she would face.  "With regards to allegations of mental harm, plaintiffs must base their allegations … on more than just mere speculation.  When a plaintiff claims that disclosing his or

her name would retrigger symptoms of PTSD, courts have required a link between public disclosure of plaintiffs name and the described psychological risk otherwise there is simply no way to conclude that granting … permission to proceed under a pseudonym will prevent plaintiff from having to revisit the traumatic events." Rapp, at 11 (cleaned up).

"Courts in this district have held that speculative claims of physical or mental harms are insufficient to bolster a request for anonymity." Doe v. Skyline Autos. Inc., 375 F. Supp. 3d 401, 406 (SDNY 2019).  "[T]he potential injury alleged must be more than mere embarrassment or social stigmatization." Doe v. Weinstein, 2020 U.S. Dist. LEXIS 161479, at 7 (SDNY 2020). "Indeed, a court in this district explained that, although a plaintiff specifically alleged that she suffered from post-traumatic stress disorder and that her condition would be exacerbated by disclosure of her identity, the plaintiff did not provide "any medical corroboration," and the court could not "speculate" about the nature and severity of any mental injury from disclosure." Weinstein, at 9; quoting, Doe v. Solera Capital LLC, 2019 U.S. Dist. LEXIS 55860, at 4 (SDNY 2019).  "In contrast to evidence of actual physical harm, courts have found that evidence of embarrassment, social stigmatization, and economic harm provides an insufficient basis for proceeding anonymously." Solera Capital LLC, at 12 (collecting cases).

Plaintiff's allegations of potential harm in this affidavit are, like the plaintiff in Rapp, undermined by her own conduct.  The Plaintiff alleges concerns that her Manhattan District Attorney colleagues may find out about her rape claim, that she will suffer irreparable harm if her colleagues learn her name, and that people on internet searching her name will cause her to relive the details of her assault.  First, the Plaintiff's colleagues at the Manhattan DA's office, or at least a subset, know of her claim based on Plaintiff's admissions that the Manhattan DA's office

investigated her rape allegation and ultimately decided not to bring charges.  See, Dkt. No. 32 at 52.  Thus any alleged harm of their knowledge is already unavoidable and should have no bearing on this matter.  Second, Plaintiff reached out to a co-worker via text message and identified herself as the Jane Doe plaintiff.  See, Exhibits "A" and "B."  Plaintiff's self-identification as Jane Doe to her colleagues seriously undermines her allegation that being identified will cause her to sustain irreparable harm.  Third, the Defendants are unsure of how persons searching for her name on the internet will cause her to relive graphic details of the assault.  There simply is no factual connection between a stranger's internet search history and how Plaintiff would become aware of such a search.  Fourth, the Plaintiff's attorneys exposure of the Plaintiff's name on a publicly available and searchable database voids any request for anonymity.  The horse is out of the barn and closing the door will not put the horse back in the barn.

Factor 4 supports the Defendant's arguments since the "plaintiff is not a child, this factor weights against a finding for anonymity."  Rapp, at 16 (internal citation omitted).

The fifth factor also weighs against a granting of anonymity.  Petitioner has filed, a complaint in Federal District Court in the Southern District of New York naming the two individuals identified as her assailants as defendants as well as the City of New York as a defendant.  See, Doe v. City of New York, 20 cv 8429 (SDNY).  Petitioner also prominently uses their names in her petition for a late notice of claim.  As opposed to suits against a governmental entity, "suits against private parties may cause damage to their good names and reputations, among other things.  Thus, courts are less inclined to allow Plaintiff's to proceed anonymously in private party cases."  Doe v. Skyline Autos. Inc., 375 F. Supp. 3d 401, 406 (SDNY 2019) (internal citation omitted).

Several courts have taken a stronger stance on this issue when a plaintiff publicly names the accused individuals prior to a determination on anonymity.  They have held that the public identification of your alleged assailant forfeits your claim of anonymity.  See, Shakur, at 361; citing, Southern Methodist Univ. Ass'n of Women Law Students, 599 F.2d 707, 713 (5th Cir. 1979)("Because the mere filing of a civil action against … private parties may cause damage to their good names and reputation, basic fairness dictates that plaintiffs who publicly accuse defendants in civil suits must sue under their real names.")

In any event, the Plaintiff misconstrues the nature of her claim against the government.  In EW v. New York Blood Ctr., the type of governmental claim at issue was "where a plaintiff attacks governmental activity, for example a governmental policy or statute, the plaintiff's interest in proceeding anonymously is considered particularly strong."  213 F.R.D. 108 (EDNY 2003).  This is not a Plaintiff challenging a governmental policy or statute.  This is a Plaintiff alleging Constitutional, statutory, and common law tort and human rights law claims against a municipality and individually named defendants.  The credibility of the Plaintiff will be paramount in such a claim where she will have to test her allegations against the denials of the defendants.  The "[u]se of a pseudonym by a plaintiff may also cause problems to defendants engaging in discovery and establishing their defenses, and in assigning the res judicata effects of judgments."  EW, at 110.  The type of action discussed in EW is about a person challenging a government policy or statute that is similarly situated to many others allegedly aggrieved and the challenge focuses mainly on the government's policy or statute.  Plaintiff's claim is different.

The sixth factor focuses on prejudice to the defendants.  "Information and allegations that are of a highly sensitive and of a personal nature can flow both ways."  Skyline

Autos. Inc., at 407.   The defendants in this matter have already been publicly identified by

petitioner and are thus subject to the very stigma that she seeks to avoid.   "Further, Courts have

identified prejudice against a defendant when a defendant is "is required to defend itself publicly

before a jury while plaintiff could make her accusations from being a cloak of anonymity.""   Id. at

407; quoting, Doe v. Delta Airlines, Inc., 310 F.R.D. 222, 225 (SDNY 2015).   "Allowing plaintiff

to proceed anonymously would disadvantage Defendants at all stages of litigation, including

settlement, discovery, and trial.   Plaintiff's anonymity would make it more difficult to obtain

witnesses and witness testimony, Defendants would have less leverage in settlement negotiations,

and Defendants would not be able to fully and adequately cross-examine the Plaintiff."   Skyline

Autos. Inc., at 407.   The sixth factor also weighs in favor of disclosure.

> The seventh factor also weighs in favor of disclosure.   "The first rule of fight club

is: You do not talk about Fight Club."   Fight Club (Fox 2000 Pictures, Regency Enterprises, Linson

Films 1999).   As noted above the Plaintiff and her attorneys have identified her as the Plaintiff in

this action.   The Plaintiff's disclosure was purposeful and specifically linked herself to the Jane

Doe pleadings in news articles.   See, Exhibits "A" and "B."   Plaintiff's attorneys disclosure was

inadvertent, but the result is the same.   Plaintiff and her attorneys, like the characters in Fight Club,

must abide by the first rule of anonymity, not to breach it themselves.

> The eighth and ninth factors have often been considered in conjunction.   See,

Weinstein, at 16; see also, Skyline Autos. Inc., at 408.   The issue of whether there is a public

interest has been looked at in concert with whether the issues in the matter involve abstract legal

issues or particular actions and incidents. "As a rule, "lawsuits are public events and the public has

a legitimate interest in knowing the facts involved in them.   Among those facts is the identity of

the parties.'"" <u>Weinstein</u>, at 17; <u>quoting</u>, <u>Shakur</u>, at 361.  "Where the litigation involves, not abstract challenges to public policies, but rather … particular actions and incidents, open proceedings nevertheless benefit the public as well as the parties and also serve the judicial interest in accurate fact-finding and fair adjudication."  <u>Skyline Autos. Inc.</u>, at 408 (internal citations omitted).  In the particular matter the petitioner is seeking compensation for particular actions and incidents that happened at work.  "Any analysis and litigation in this case will be factual in nature and the public interest in sexual assault and discrimination is very high."  Id. at 408.

The tenth factor focuses on whether there are alternative methods for protecting confidentiality.  "There are multiple other ways a plaintiff's interests can be protected, including the redaction of documents and sealing.  Further, Plaintiff could seek a protective order, or the parties could enter a confidentiality agreement."  <u>Id</u>. At 408.  Thus the tenth factor weighs in favor of disclosure.

In the balancing of the factors in this matter, the equities and case law clearly favor denying the Plaintiff's motion to proceed pseudonymously.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Defendants respectfully request that the Court grant Defendant's motion to dismiss the Complaint against the City of New York in its entirety with prejudice, together with such other and further relief as the Court deems just and proper.

Dated:          New York, New York
               August 16, 2021

                                        **GEORGIA PESTANA**
                                        Corporation Counsel of the
                                        City of New York
                                        Attorney for Defendants

28

100 Church Street, Room 2-172
New York, New York 10007
(212) 356-1181
wgrey@law.nyc.gov


By: /s/ _____
         William A. Grey
         Senior Counsel