UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE,

                    *Plaintiff*,

          -against-

CITY OF NEW YORK, EDWIN
CRESPO, and GINO PELAEZ,

                    *Defendants.*

Case No. 20-CV-7483

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Susan K. Crumiller
Julia Elmaleh-Sachs
Travis Pierre-Louis
Crumiller P.C.
16 Court St, Ste 2500
Brooklyn, NY 11241
(212) 390-8480
susan@crumiller.com
julia@crumiller.com
travis@crumiller.com
Attorneys for Plaintiff

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT                                                    1

LEGAL STANDARD                                                          2

ARGUMENT

I.   Plaintiff's *Monell* § 1983 Claim Is Timely And Sufficiently Pled     2

    A.  Defendant Conflates Pleading Standards with Liability Standards    3

    B.  The City Cannot Evade Liability By Demanding a
        Person-By-Person Accounting At This Juncture    4

II.  Plaintiff's NYCHRL and NYSHRL Claims Are Timely and Sufficiently Pled    8

    A.  Plaintiff States a Claim For Hostile Work Environment
        Under the NYCHRL and NYSHRL    8

    B.  Defendant's "Negligent Investigation" Forms Part of the
        Factual Basis of Plaintiffs' Claims. It Is Not Asserted as
        a Standalone Claim    11

III. Plaintiff's Tort Law Claims Against the City Are Sufficiently Pled
    and Relate Only to the Pelaez Allegations    13

    A.  Plaintiff Properly Pled her NIED Claim Against Defendant City    14

    B.  Plaintiff's Negligence Claim Relies on The Same Set of Facts
        and Is Similarly Properly Pled    15

IV.  Plaintiff is Entitled to Anonymity    17

    A.  Standard for Anonymity    17

    B.  Factor No. 1: Plaintiff's Allegations Involve Matters
        That Are Highly Sensitive and of a Personal Nature    18

    C.  Factor Nos. 2 & 3: Plaintiff Has Demonstrated a Risk
        of Severe Mental Harm    19

    D.  Factor No. 6: Defendant Does Not Demonstrate Any
        Prejudice At this Stage of Litigation    19

    E.  Factor No. 7: Plaintiff's Identity Has Been Kept Confidential    20

i

**F.**     Factor Nos. 8 & 9: Plaintiff's Continued Anonymity
Is in the Public Interest                                                22

**G.**     Factor No. 10: There are No Alternative Mechanisms for
Protecting the Plaintiff's Confidentiality                               23

CONCLUSION                                                               23

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*AMTRAK v. Morgan*,
  536 U.S. 101 (2002) ................................................................................................. 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................. 2

*Bell Atlantic v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................. 2

*Blackwell v. City of Bridgeport*,
  238 F. Supp. 3d 296 (D. Conn. 2017) ................................................................... 13

*Castro v. Yale Univ.*,
  No. 3:20 Civ. 330 (JBA), 2021 U.S. Dist. LEXIS 24376 (D. Conn. Feb. 9, 2021) ................ 13

*Cucchi v. N.Y.C. Off-Track Betting Corp.*,
  818 F. Supp. 647 (S.D.N.Y. 1993) ......................................................................... 15

*Doe No. 2 v. Kolko*,
  242 F.R.D. 193 (E.D.N.Y. 2006) ...................................................................... 18, 22

*Doe v. Blue Cross & Blue Shield United of Wisc.*,
  112 F.3d 869 (7th Cir. 1997) .................................................................................. 18

*Doe v. City of N.Y.*,
  2020 U.S. Dist. LEXIS 4655 (E.D.N.Y. Jan. 9, 2020) ........................................... 23

*Doe v. City of N.Y.*,
  No. 15 Civ. 117 (AJN), 2016 U.S. Dist. LEXIS 16344 (S.D.N.Y. 2016) ............... 20

*Doe v. Nygard*,
  No. 20 Civ 6501 (ER), 2020 U.S. Dist. LEXIS 151186 (S.D.N.Y. Aug. 20, 2020) ................ 22

*Doe v. Shakur*,
  164 F.R.D. 359 (S.D.N.Y. 1996) ...................................................................... 18, 20

*Doe v. Vassar Coll.*,
  2019 U.S. Dist. LEXIS 196933 ............................................................................... 23

*Doran v. N.Y. State Dep't of Health Office of the Medicaid Inspector Gen.*,
  164 F.R.D. 359 (S.D.N.Y. 1996) .............................................................................. 9

*Fincher v. Depository Trust & Clearing Corp.*,
  2017 U.S. Dist. LEXIS 29727 (S.D.N.Y. 2017) ................................................................. 12

*James v. Van Blarcum*,
  782 F. App'x 83 (2d Cir. 2019) .......................................................................................... 7

*Johnson v. City of New York*,
  942 N.E.2d 219 (N.Y. 2010) ............................................................................................ 15

*Gorokhovsky v. NY.C. Hous. Auth.*,
  552 F App'x 100 (2d Cir. 2014) ......................................................................................... 9

*Lucente v. Cty. of Suffolk*,
  980 F.3d 284 (2d Cir. 2020) ............................................................................................... 3

*Matusick v. Erie Cty. Water Auth.*,
  757 F.3d 31 (2d Cir. 2014) ................................................................................................. 3

*Maynard v. City of New York*,
  2013 U.S. Dist. LEXIS 178433 (S.D.N.Y. 2013) ........................................................... 3, 4

*Metz v. State of New York*,
  20 N.Y.3d 175 (2012) ....................................................................................................... 15

*Mihalik v. Credit Agricole Cheuvreux N. Am. Inc.*,
  715 F.3d 102 (2d Cir. 2013) ............................................................................................... 9

*Missel v. Cnty. of Monroe*,
  351 F. App'x 543 (2d Cir. 2009) ......................................................................................... 3

*Patterson v. County of Oneida*,
  375 F.3d 206, 226 (2d Cir. 2004) ....................................................................................... 2

*Pelaez v. Seide*,
  2 N.Y.3d 186 (2004) ......................................................................................................... 16

*Pembaur v. City of Cincinatti*,
  475 U.S. 469 (1986) ............................................................................................................ 5

*Rapp v. Fowler*,
  No. 20 Civ. 9586 (LAK), 2021 U.S. Dist. LEXIS 84214 (S.D.N.Y. May 3, 2021) ................. 21

iv

*Rocco v. Goldberg (In re Goldberg),*
    487 B.R. 112 (Bankr. E.D.N.Y. 2013) ....................................................................... 9

*Roe v. Aware Woman Ctr. for Choice, Inc.*,
    253 F.3d 678 (11th Cir. 2001) ................................................................................ 17

*Romero v. City of N.Y.,*
    839 F. Supp. 2d 588 (E.D.N.Y. 2012) ................................................................... 14

*Ruiz v. City of New York*,
    2015 U.S. Dist. LEXIS 117947 (S.D.N.Y. 2015) ............................................... 3, 4

*Sealed Plaintiff v. Sealed Defendant*,
    537 F.3d 185 (2d Cir. 2008) ...................................................................... 17, 18, 19

*Torres v. Pisano*,
    116 F.3d 625 (2d Cir. 1997) ................................................................................. 12

*Washington v. Rockland,*
    373 F. 3d 310 (2d. Cir. 2004) ................................................................................. 3

*Valdez v. City of New York*,
    18 N.Y.3d 69 (N.Y. 2011) ............................................................................. 15, 16

**Statutes**

42 U.S.C. § 1983 ........................................................................................................... 2

Plaintiff Jane Doe respectfully submits this memorandum of law in opposition to Defendant City's Motion to Dismiss.

## PRELIMINARY STATEMENT

Plaintiff was an Assistant District Attorney in the Bronx District Attorney's Office ("Bronx DA") from September 6, 2016 until she left on April 10, 2020. In 2016, in the course of her employment and on the premises, she was sexually assaulted by New York City Police Department ("NYPD") Officer Crespo. The assault was witnessed by a third party, and Plaintiff reported it immediately. Neither Bronx DA nor NYPD took any remedial actions whatsoever, although Crespo had a known history of violence and misconduct. Instead, Bronx DA not only forced Plaintiff to continue working with her assailant, but required her to seek out a male escort to attend meetings with Crespo with her (effectively requiring her to disclose the assault). This continued for nine full months, over her objections, until she insisted firmly enough that it was uncomfortable and retraumatizing for her, and Crespo was finally transferred off her cases.

In 2019, a Bronx DA colleague raped Plaintiff at an after-work party. Plaintiff immediately reported the assault, and came to learn, for the first time, that Bronx DA had failed to even report the 2016 assault to the Internal Affairs Bureau ("IAB"). Upon reporting the rape, Bronx DA forced Plaintiff to take administrative leave, which she did not want to do, and placed her assailant on paid leave, but refused to tell Plaintiff for how long. Bronx DA failed and refused for months to give Plaintiff any updates about the investigation whatsoever, including whether her rapist might stroll into her workplace on any given day, forcing her to relive her trauma daily as she went into work. Only when Plaintiff retained counsel, approximately 5 months later, did Bronx DA even begin interviewing witnesses and reviewing the documentary and audio evidence Plaintiff had provided to them.

1

Defendant City's motion to dismiss conflates pleading standards with liability standards by asking the Court to draw legal conclusions, based on yet-unknown facts, by shoehorning its arguments into statute of limitations arguments. Whether forcing an employee to interact with her assailant – and to fear contact with her rapist daily – constitutes a hostile work environment is a matter of first impression. Certainly, such an issue is not appropriate for summary disposition at the motion to dismiss stage. Defendant City's conduct might not shock Defendant's conscience; that is not a defense, but rather, the entire problem for which relief is sought.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). The plausibility requirement means that a complaint must contain enough facts to raise a "reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. *Id.* at 566. A complaint must be dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

## ARGUMENT

### I.    Plaintiff's *Monell* § 1983 Claim Is Timely And Sufficiently Pled

A municipality is liable for discrimination under 42 U.S.C. § 1983 where an employee suffered discriminatory acts which were performed pursuant to a "municipal policy or custom." *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). It is sufficient to show that "a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials." *Id.* (internal quotation marks and

2

citations omitted). Inaction and acquiescence may allow harassment to become custom and

practice. *See Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 63 (2d Cir. 2014). The continuing

violation doctrine applies to §1983 claims. *See Lucente v. Cty. of Suffolk,* 980 F.3d 284, 309-311

(2d Cir. 2020); *Washington v. Rockland,* 373 F. 3d 310, 317-318 (2d. Cir. 2004).[1]

### A.    Defendant Conflates Pleading Standards with Liability Standards

Defendant concedes that in the context of a motion to dismiss, a plaintiff need only make

factual allegations that "*support a plausible inference that* the constitutional violation took place

pursuant …. to …. the act of a person with policymaking authority for the municipality."

Defendant's Memorandum of Law, Dkt. No. 39 ("MOL") at p. 15; *Missel v. Cnty. of Monroe*,

351 F. App'x 543, 545 (2d Cir. 2009) (emphasis added). Defendant conflates pleading standards

with liability standards, seeking to impose an impossible pleading standard on Plaintiff, rather

than the "plausible inference" that is required.

Defendant cites to *Ruiz v. City of New York*, 2015 U.S. Dist. LEXIS 117947, at 11-12

(S.D.N.Y. 2015) and *Maynard v. City of New York*, 2013 U.S. Dist. LEXIS 178433, at 6

(S.D.N.Y. 2013) in support of its proposition that "[p]laintiff must plead more than just general

and conclusory allegations that there was a policy of discrimination." MOL at p. 15. Indeed, in

both those cases, unlike here, only conclusory statements were pled. Plaintiff does not dispute

that such a claim would be subject to dismissal. However, Plaintiff here has alleged a specific

and repeated pattern of conduct by Defendant City:

- Forcing her to continue working with her sexual assailant, even after she complained through multiple avenues and to various levels of supervisors. Dkt. No. 024, Am. Compl. ¶¶ 16-30, 62, 66, 70[2];

---

[1] Defendant's strawman argument that Plaintiff's claims are based on the November 15, 2016, incident, borders on frivolous. Plaintiff has made it repeatedly clear – not just in the Complaint itself, but also throughout repeated motion practice before this Court as well as extensive motion practice in the State Court – that Plaintiff's claims are based not on that incident but on the aftermath thereof.
[2] All paragraph citations herein, unless otherwise specified, are citations to the Amended Complaint.

- Requiring her in a humiliating manner to secure a male escort for meetings with Crespo, and thereby obliging her to recount her sexual assault to her colleagues. ¶¶ 20, 62, 66, and 70;

- Not only negligently failing to investigate her complaints, but allowing Crespo to remain employed in spite of a known history of violence, both before and after the assault. ¶¶ 21-30, 38, and 83;

- Subjecting Plaintiff to a hostile and disrespectful work environment as she continued to report to a supervisor – and organization – that failed to take any appropriate action in response to her reporting the sexual assault. ¶¶ 21-30, 38, 63, 67, and 71;

- Negligently failing and refusing to investigate her subsequent rape until she hired counsel. ¶¶ 39-59;

- Negligently failing to advise her of the status of the Pelaez rape investigation, despite almost-daily inquiries by Plaintiff as she frantically wondered every single day whether her rapist would show up to her workplace. ¶¶ 36-58.

Plaintiff's allegations are more than sufficient to plead her claims.[3]

### B.     The City Cannot Evade Liability By Demanding A Person-By-Person Accounting At This Juncture

Defendant's primary attempt to bootstrap liability standards into pleading standards

involves its argument that, because Plaintiff has not pled the specifics regarding who was

authorized to do what, she has somehow failed to establish 1983 liability. MOL at pp. 16-17.

Defendant argues that Plaintiff's lack of first-hand information about which individuals were

authorized to make which decisions somehow permits each of them and the municipality itself to

evade liability entirely. Defendant does not, and cannot, cite to any authority whatsoever in

---

[3] *Ruiz* is distinguishable from the case at hand because in *Ruiz,* "Plaintiffs' only allegations in support of their *Monell* claims are the conclusory statements that Defendants engaged in a 'pattern and practice' evidencing discrimination, hostile work environment and retaliation against the Plaintiffs, and that Defendants similarly engaged in a 'pattern and practice' of discrimination against other minority officers and women. Am. Compl. ¶¶ 25-26." *Id.* at 29. Defendant City also cites to *Maynard v. City of New York*, 2013 U.S. Dist. LEXIS 178433, at 6 (S.D.N.Y. Dec. 17, 2013) as a case where a *Monell* claim – which was based on conclusory allegations that municipal defendants had a policy or custom of discriminating against African-Americans – was dismissed. That case is inapposite because in *Maynard* the "Plaintiff allege[d] no facts that any of the alleged discriminatory action was pursuant to an official policy or custom. Plaintiff simply conclusorily states that the City and DOE have a policy or custom of discriminating against African-Americans."

support of its claim that Plaintiff must plead knowledge of which municipal actors made which decisions and who was authorized to do what, because it does not exist.

For example, Defendant cites *Pembaur v. City of Cincinatti*, 475 U.S. 469, 481-482 (1986) in support of its argument that *Monell* liability was insufficiently pled here because "[m]unicipal liability attaches only where the decision maker possess final authority to establish municipal policy with respect to the action ordered." MOL at p. 13. However, *Pembaur* was a post-trial decision based on extensive testimony regarding the scope of the various actors' authority. In that case, based on the testimony in the record before it, the United States Supreme Court held that it had "little difficult concluding" that the county was liable under § 1983 as the county prosecutor had acted as the final decision maker for the county when it ordered its employees to take a particular action. *Id.* at 485. *Pembaur* has nothing to do with pleading standards, and Defendant does not, and cannot, cite to any authority whatsoever that a *Monell* plaintiff must plead the precise scope of authority of each of the individual defendants who made the discriminatory decisions (or even their identities, or who within the municipality the decision makers were).

For example, Defendant argues that "Plaintiff does not plead any facts that would support that Economic Crimes Bureau Chief William Zalenka [sic] is the final policy maker with respect to BXDA equal employment opportunity policy." MOL at p. 16. However, Plaintiff does not allege that Zelenka was some rogue actor blithely misinterpreting the City's policies. Rather, this was a systemic matter – multiple systemic matters – of which countless individuals were aware.

Notably, Defendant's brief materially misstates the facts in this regard. Defendant claims that "Plaintiff argues that the highest person she spoke with [regarding Crespo] was her own supervisor, Economic Crimes Bureau Chief William Zalenka." MOL at p. 16. That is simply false. Paragraph one of the Complaint describes how "[a]fter complaining about the incident

repeatedly and to multiple supervisors, and following up regarding any repercussions over the course of a year, Plaintiff lost hope that her employer would take any remedial action against the officer" and that Crespo remained employed by NYPD at that time. ¶1. More specifically, Plaintiff describes that, after complaining to Zelenka to no avail, she then also complained to Bronx DA's then-EEO Officer Cicely Harris, who informed Plaintiff that she would notify IAB of the incident. ¶24. After Plaintiff continued to receive no response, she took the extraordinary step of going over Zelenka's head, to the then-Executive Chief of the Investigations Division, Jean Walsh. ¶25.

It's true that Plaintiff does not know, at this time, what if any internal communications transpired about her sexual assault or Crespo's continued employment, nor which individuals made what decisions. How could she? The pleading standards require only a showing of a "plausible inference" because it is understood that civilians are not privy to the inner workings of municipalities, nor employees privy to the inner workings of employers. Plaintiff has alleged that multiple NYPD officers commented to her that Crespo was known as a "bad cop" (¶28) and yet he still did not suffer disciplinary action for sexually assaulting Plaintiff. It will remain Plaintiff's burden to prove her case, after discovery. Dismissal at this juncture, despite her particularized claims, would be inappropriate and unprecedented.

The flimsiness of Defendant's argument against § 1983 liability is further encapsulated in its unsubstantiated assertion that "DA Clark and ADA Alonso do not make policy for the New York City Police Department and cannot be held liable for any alleged failure to investigate NYPD employees." MOL at p. 17. Defendant could well make similarly unsubstantiated allegations about any individual involved in the years-long nightmare that Plaintiff suffered, and according to Defendant, that means *nobody* is liable. That is an absurd and unjust proposal. The actions and harm that Plaintiff suffered were not conjured out of thin air, and Plaintiff suffered

real harm. Defendant cannot evade liability by presenting a circle of individuals all pointing fingers at each other.

NYPD's failure and refusal to take disciplinary action provides another excellent example of the absurdity of Defendant's argument. An NYPD officer sexually assaulted Plaintiff, she reported it, no action was taken, she was forced to continue working with him, and no disciplinary action was taken against him for years thereafter. At this stage in the litigation, Plaintiff does not have first-hand knowledge whether (1) Bronx DA negligently failed and refused to notify the NYPD of what Crespo had done, or (2) NYPD was informed and then negligently failed and refused to take disciplinary action against him. Either way, Plaintiff suffered harm for which Defendant City is responsible. Yet, by Defendant's logic, Plaintiff cannot establish liability as against either agency!

Finally, Defendant's strawman argument about "failure to investigate" is no more successful to absolve it of 1983 liability than of NYCHRL and NYSHRL liability. Indeed, in *James v. Van Blarcum*, 782 F. App'x 83, 86 (2d Cir. 2019), the District Court had declined to impose municipal liability after finding the plaintiffs' claims untimely and that they had "failed to adduce admissible evidence of severe and pervasive conduct required to maintain a hostile work environment cause of action" *Id.* at 84. The Second Circuit vacated that finding, holding that the municipality's awareness of certain discriminatory complaints, and its failure to investigate, was "sufficient to raise a question of material fact as to municipal liability." The Court confirmed, in no uncertain terms, that "awareness followed by a failure to act can result in a finding of liability." Here, material facts are clearly in dispute regarding what transpired, but in any event, Plaintiff has more than adequately set forth clear and specific underlying claims which form a pattern and practice of discrimination against, and in disregard for, sexual abuse victims.

**II.     Plaintiff's NYCHRL and NYSHRL Claims Are Timely and Sufficiently Pled[4]**

Defendant's statute of limitations arguments are a red herring, and fundamentally rest on their contention that Defendant's conduct after the Crespo assault does not rise to the level of a hostile work environment. Defendant's argument was rejected by the state court, and should be rejected here. Plaintiff has amply pled her discrimination claims under this theory, and the summary disposition that Defendant seeks at this juncture is neither appropriate nor warranted.

**A.     Plaintiff States a Claim For Hostile Work Environment Under the NYCHRL and NYSHRL**

The United States Supreme Court has held:

[h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct . . . The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.

*AMTRAK v. Morgan*, 536 U.S. 101, 115 (2002).

Plaintiff does not allege that Defendant is liable for the Crespo assault itself under the anti-discrimination statutes; such a claim would indeed be barred by the statute of limitations. However, Plaintiff has alleged that Defendant forced her to continue interacting with her assailant, and effectively demanded she notify her coworkers about her sexual assault, well within the statute of limitations. Nor does the reassignment of Crespo's cases to Plaintiff's officemate – which entirely failed to alleviate Plaintiff's fear, anxiety, and discomfort in her working environment – vitiate Plaintiff's discrimination claims. Plaintiff does not dispute that any claims arising on or before October 9, 2017, would be time-barred under the NYCHRL and NYSHRL. What is absurd and outrageous is Defendant's claim that no discriminatory acts occurred after that date.

---

[4] Plaintiff withdraws her Title VII claims and therefore does not address them herein.

New York City's Human Rights Law is more broad and more remedial than the more demanding standard of Title VII of the Civil Rights Act of 1964. "[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions 'broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible.'" *Doran v. N.Y. State Dep't of Health Office of the Medicaid Inspector Gen.*, 2017 U.S. Dist LEXIS 29727 (S.D.N.Y. 2017), quoting *Mihalik v. Credit Agricole Cheuvreux N. Am.*, Inc., 715 F3d 102, 109 (2d Cir. 2013). Plaintiffs who claim that they were subjected to discrimination under NYCHRL need only show differential treatment of any degree based on a discriminatory motive. *Gorokhovsky v. N.Y.C. Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014).

Additionally, in 2019, the New York State Legislature amended its own Human Rights Law specifically to eliminate Title VII's stringent requirement that sexual harassment be "severe or pervasive" to be actionable. Rather, "[p]laintiffs bringing discrimination claims under New York State Human Rights Law, alleging disparate impact, must only show that the employer's pattern or practice subjected them to an injurious discriminatory effect, regardless of the employer's intent." *Rocco v. Goldberg (In re Goldberg)*, 487 B.R. 112 (Bankr. E.D.N.Y. 2013).

Plaintiff filed her original complaint in this action on October 9, 2020. Three years earlier, on October 9, 2017, Plaintiff was living in daily fear of having to interact with the man who sexually assaulted her, at her workplace. At that time, she was under formal orders to seek out a male escort for meetings with him. Up to and including June 13, 2018, Plaintiff continued to live in fear on a daily basis regarding:

- The anxiety, discomfort, and trauma, of having to interact with a person who has sexually assaulted her;

- The fear, discomfort, and trauma, of having to recount her sexual assault to her colleagues – something most victims, including Plaintiff, prefer not to be forced to share on someone else's terms, especially with their colleagues;

- The feeling of hostility and disrespect suffered by having to continue reporting to a supervisor – and organization – that had so wholly failed to take any meaningful action whatsoever in response to her reporting of a sexual assault;

- The fear that Zelenka would retaliate against her further for complaining, having retaliated against her initially for reporting the assault by objectively worsening her working conditions by making her life more difficult than that of her colleagues who had not been assaulted. ¶24.

In this manner, Plaintiff was formally required both to continue working with her assailant and to notify her colleagues of the assault for purposes of seeking a male escort to join her at meetings, within the statute of limitations period. On November 8, 2017 (having survived the assault for one year at this point), Plaintiff met with the BXDA's then-EEO Officer, Cicely R. Harris, to report both the assault by Officer Crespo and the BXDA's horrific mishandling of the aftermath. ¶24. That day, Plaintiff requested a transfer to the Tax and Organizational Fraud Unit ("TOFU") so as to remove herself from the hostile work environment that Chief Zelenka had exacerbated by forcing Plaintiff to continue working with her assailant. ¶24. Plaintiff continued to feel extremely uncomfortable working in the same environment where she had been assaulted and where Crespo continued to work without repercussion. ¶25. Plaintiff's request was summarily ignored, and she continued to have to work directly with her assailant and to seek out a male escort. On June 12, 2018, having reported and escalated her sexual assault twice now without effect, and now having survived the assault for 12 months, Plaintiff requested to meet with the Executive Chief of the Investigations Division, Jean Walsh, to follow up on her request to transfer out of her bureau and into TOFU. ¶25.

Finally, on June 14, 2018, Walsh approved the transfer and Plaintiff was transferred to TOFU where she was directly supervised by TOFU Chief W. Dyer Halpern, which was an

improvement, but she remained under the general supervision of Chief Zelenka. ¶29. Thus, even the belated remedial measure was inadequate.[5]

Defendant now argues that effectively, "all's well that ends well" because Plaintiff was not sexually assaulted for a second time by her known perpetrator. This argument is ludicrous and offensive to survivors everywhere. It simply cannot be that a known assailant must literally commit assault repeatedly in order for his forced presence and interaction to rise to the level of a "hostile work environment" under the law. Defendant's failure to recognize the traumatic effects of its actions on Plaintiff is not a defense but rather further evidence that Defendant remains, to this day, blithely unaware of its responsibilities to its employees – not just morally, but under the laws. Perhaps, generously, the argument that forced exposure to your own assailant, so long as he does not physically assault you again, does not constitute a negative disparate impact, is one that passed muster pre-#MeToo. Today, it does not.

**B.      Defendant's "Negligent Investigation" Forms Part of the Factual Basis of Plaintiffs' Claims. It Is Not Asserted as a Standalone Claim**

Defendant argues, in yet another red herring, that because "negligent investigation" cannot form a standalone claim, that it cannot form the basis of any claim whatsoever. That is a complete misstatement of the law and an abject logical failure. There is no standalone cause of action for "forcing a sexual assault victim to interact with her assailant". There is no standalone cause of action for "negligent failure to instruct an employee to stop sexually harassing another employee." By Defendant's logic, these facts would be therefore somehow precluded from supporting the discrimination claims asserted herein. Defendant's argument is tantamount to the

---

[5] Defendant does not appear to dispute that it failed even to report the incident to IAB until August 15, 2019: almost two years after Plaintiff met with Officer Harris, and almost three years after the date of the incident.

notion that because there is no standalone claim for "hitting someone with your car," a car
accident thus cannot form the underlying basis for a tort claim. It defies common sense.

Moreover, caselaw squarely contradicts Defendant's claim that its repeated practice of
burying its head in the sand in this regard is somehow automatically beyond liability. As the
Second Circuit has explained:

> [w]hile employer liability can be established by showing that the employer failed
> to respond, it does not follow that an employer's lack of response may not also be
> part of the unlawful hostile environment itself. The law is clear that 'an employer
> may not stand by and allow an employee to be subjected to a course of . . .
> harassment by co-workers' or supervisors.

*Torres v. Pisano*, 116 F.3d 625, 636 (2d Cir. 1997) (internal citations omitted).

Defendant cites *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, at 724 (2d
Cir., 2010) for the proposition that "an alleged failure to investigate is not an act that can
contribute to a hostile working environment." MOL at p. 11. That conclusion misstates *Fincher*
and cannot be drawn from the case. *Fincher* concerned an African-American woman who
claimed she was subjected to unlawful retaliation, a hostile work environment and constructive
discharge. *Id.* at 715. On summary judgment, the *Fincher* plaintiff had shown that after receiving
a performance warning, she complained of race discrimination to a colleague and the company
failed to investigate her complaint. *Id.* at 717. "The evidence that she presented to the district
court was to the effect that on at least one occasion, two of her co-workers were invited, without
her, for unspecified training, and that on at least one occasion, one of her co-workers was
assigned to work with a supervisor who was better qualified than Fincher's supervisor." *Id.* at
724.

Clearly, the facts of *Fincher* are inapposite to the matter at hand, where Plaintiff is
alleging she was assaulted at work and then forced to continue meeting with and engaging with
her assaulter in her own office until she was approved to transfer out of her unit a year and half

later. Defendant's repeated decisions to ignore Plaintiff's complaints exacerbated the trauma she experienced as a result of the assault, thus fostering a very hostile work environment indeed. Surely such allegations are sufficient to raise a "reasonable expectation that discovery will reveal evidence" supporting Plaintiff's claims. *Twombly*, 550 U.S. at 566.

Furthermore, courts in this Circuit have held that "an employer's attitude, manifested through its actions and inactions, constitutes part of the work environment" and thus "[defendant's] *failure to investigate* . . . may be considered by a jury as contributing to the overall environment in which [Plaintiff] worked." *Blackwell v. City of Bridgeport*, 238 F. Supp. 3d 296, 309 (D. Conn. 2017); *see also Castro v. Yale Univ.*, No. 3:20 Civ. 330 (JBA), 2021 U.S. Dist. LEXIS 24376, at *31-32 (D. Conn. Feb. 9, 2021) (denying a motion to dismiss a hostile work environment claim on timeliness grounds after "examining 'the totality of the circumstances' . . . including management's 'failure to investigate or denounce' the harassment" even though the incident of physical harassment occurred far outside the statute of limitations).

The actions and inactions of Defendant City's agents – including those of Chief Zelenka and EEO Officer Harris – certainly give rise to a hostile work environment that served to re-traumatize Plaintiff for close to two years after Crespo initially assaulted her. Defendant City's motion should be denied.

III.   **Plaintiff's Tort Law Claims Against the City Are Sufficiently Pled and Relate Only to the Pelaez Allegations**

Defendant's argument regarding Plaintiff's negligent infliction of emotional distress ("NIED") and negligence claims as to the Crespo allegations is yet another red herring. Plaintiff sought leave to file a motion for late notice of claim regarding these claims. After it was denied, Plaintiff amended her complaint for the sole purpose of removing these allegations. Plaintiff's

NIED and negligence causes of action concerning the Pelaez allegations are sufficiently pled and must survive at this stage.

On August 15, 2019, Plaintiff reported to Bronx DA that she had been raped by a colleague. Defendant's response was to force her to take administrative leave she did not want to take (and not that she was merely "given paid time off" as Defendant conveniently claims). Defendant informed Plaintiff that her rapist was also on paid administrative leave, but failed and refused to tell her for how long, or when he would be returning. From the date she returned to work, until December 11, 2019, Plaintiff lived in daily fear of having to interact with her rapist. She followed up with her employer on November 4, November 6, November 18, November 25, and December 10, 2019. These pleas were callously ignored, forcing Plaintiff to continue living in fear and suffer the continuing traumatic effects of having to think about and fear her rapist every single day at work. Not until Plaintiff hired counsel and counsel appeared on her behalf, five months later, did Defendant even *begin* its investigation, let alone *agree to warn Plaintiff in advance if her rapist were to return*. ¶59.

### A.     Plaintiff Properly Pled her NIED Claim Against Defendant City

NIED requires a showing of (1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress. *See, e.g.*, *Romero v. City of N.Y.*, 839 F. Supp. 2d 588, 631 (E.D.N.Y. 2012). Here, the Defendant's utter refusal to do anything – other than to place Plaintiff's rapist on administrative leave – in response to Plaintiff's complaint of sexual assault was extreme and outrageous conduct; as a direct result of its refusals, Plaintiff suffered severe emotional distress from the constant fear that she would have to interact with her assailant at her workplace, which is comprehensively detailed in her Amended Complaint.

Furthermore, a cause of action for negligent infliction of emotional distress arises where "there is proof of a traumatic event that caused the plaintiff to fear for her own safety." *Cucchi v. N.Y.C. Off-Track Betting Corp.,* 818 F. Supp. 647, 656 (S.D.N.Y. 1993). There is no question here that Plaintiff's rape by her Bronx DA colleague was a "traumatic event that caused [her] to fear for her own safety." *Id.* As discussed herein, Defendant's refusal to keep Plaintiff abreast of the developing investigation, as well as the ensuing repeated errors and carelessness with which Defendant treated Plaintiff's disclosure of rape, certainly rise to the level of extreme and outrageous conduct in this situation.

**B.     Plaintiff's Negligence Claim Relies on The Same Set of Facts and Is Similarly Properly Pled**

Defendant argues Plaintiff's negligence cause of action is barred by the "reasoned judgment rule." MOL at pp. 18-19. At the outset, it should be noted that Defendant conflates the special duty rule with the rule of discretionary immunity. Under the latter doctrine, otherwise-discretionary actions of municipal employees do not result in discretionary immunity for the municipality unless the injury-producing act involved "the exercise of reasoned judgment which could typically produce different acceptable results." *Valdez v. City of New York*, 18 N.Y.3d 69 (N.Y. 2011). The act also must have complied with a municipality's own rules and policies. *See Johnson v. City of New York*, 942 N.E.2d 219, 222 (N.Y. 2010). Therefore, courts considering such a claim for discretionary governmental immunity must first determine whether the municipal defendant owed a special duty to the claimant. *Metz v. State of New York*, 20 N.Y.3d 175, 179 (2012). Such an inquiry is premature at this juncture where only discovery can shed light on: (1) the municipality's rules and policies, and (2) whether the municipal defendant owed a special duty to Plaintiff.

Nonetheless, Defendant cites to *Valdez*[6] for the proposition that "government action, if discretionary, may not be a basis for liability, while ministerial actions may be, but only if they violate a special duty owed to the plaintiff, apart from any duty owed to the general public." 18 N.Y.3d at 69 (N.Y. 2011). New York courts have determined that a special duty can be formed in three ways: "(1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) *when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation*." *Pelaez v. Seide*, 2 N.Y.3d 186, 199-200 (2004) (emphasis added).

As is clearly alleged in the Amended Complaint, Defendant City appeared to "assume control" of the Peleaz investigation when Plaintiff first summoned the courage to report her rape to Chief Halpern and ADA Tennell. *See* ¶¶ 36-52. Defendant City then appeared to retain control of this investigation – knowing that Plaintiff had been raped by one of its employees – throughout the ensuing months, though it flatly ignored her repeated inquiries as to the status of any investigation and/or whether her assailant was returning to work. *See* ¶¶ 51-59. As such, Defendant City clearly owed a special duty to Plaintiff once it represented to her that it was taking control of the Peleaz investigation. Without having engaged in an ounce of discovery at this juncture, Plaintiff's allegations that the City's various agents' actions – or lack thereof – render Defendant liable for negligence and NIED are more than sufficiently pled.

---

[6] The facts of *Valdez* are drastically different from the matter herein. In *Valdez* the Plaintiff was a civilian whose estranged boyfriend shot her after she told the local police precinct that he had threatened to kill her; she then sued the City of New York for failing to provide her with adequate police protection to prevent the attack. *Id.* at 72. Thus, the primary issue in that case is whether there was sufficient evidence in the record to establish the existence of a special relationship between Valdez and the police.

**IV.     Plaintiff is Entitled to Anonymity**

On November 17, 2020, this Court granted Plaintiff's motion to proceed anonymously

and ordered the Clerk to enter the caption of this action as "*Jane Doe v. City of New York, et al.*"

*See* Dkt. No. 6. The New York State Supreme Court made the same determination:

> "Here, petitioner alleges more than the possibility of embarrassment. Petitioner alleges
> ongoing trauma and treatment stemming from two assaults, the potential for
> stigmatization as a "rape victim" or "problem employee" at her new place of
> employment, and press coverage which could result in petitioner's online identity defined
> by these allegations."

Dkt. No. 30 at p. 5 (June 2, 2021 Order and Decision (100601/2020)). This Court should permit

Plaintiff to proceed anonymously to prevent further harm beyond what she has already suffered.

**A.     Standard for Anonymity**

Although Federal Rule of Civil Procedure 10 requires that a "complaint ... name all the

parties" to a lawsuit, courts have "carved out a limited number of exceptions to the general

requirement of disclosure [of the names of parties], which permit plaintiffs to proceed

anonymously." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008) (quoting

*Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 685 (11th Cir. 2001)). In determining

whether to grant such a request, the court must balance "the plaintiff's interest in anonymity"

against "both the public interest in disclosure and any prejudice to the defendant." *Id.* To guide

the court's exercise of discretion in balancing these interests, the Second Circuit has articulated a

non-exhaustive list of ten factors, which include:

> (1) whether the litigation involves matters that are highly sensitive and of a personal
> nature; (2) whether identification poses a risk of retaliatory physical or mental harm
> to the party seeking to proceed anonymously or even more critically, to innocent
> non-parties; (3) whether identification presents other harms and the likely severity
> of those harms; (4) whether the plaintiff is particularly vulnerable to the possible
> harms of disclosure, particularly in light of his age; (5) whether the suit is
> challenging the actions of the government or that of private parties; ( 6) whether
> the defendant is prejudiced by allowing the plaintiff to press his claims
> anonymously, whether the nature of that prejudice (if any) differs at any particular

stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential, (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 190 (citations, alterations, and internal quotation marks omitted).

Defendant provides only a cursory examination of these factors that need to be considered and weighed by this Court. Defendant falsely asserts that Plaintiff's sole claim for anonymity stems from the highly sensitive and personal nature of Plaintiff's allegations. MOL at p. 32. This is a simplistic and false categorization of Plaintiff's claim for anonymity. The above-cited factors, indeed, weigh heavily in Plaintiff's favor, and support Plaintiff's application for the use of a pseudonym in this case.

**B.      Factor No. 1: Plaintiff's Allegations Involve Matters That Are Highly Sensitive and of a Personal Nature**

Courts have repeatedly found that the intimate nature of sexual assault allegations justifies permitting a plaintiff to raise a claim for anonymity. *See Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006) (citing *Doe v. Blue Cross & Blue Shield United of Wisc.*, 112 F.3d 869, 872 (7th Cir. 1997)) ("[S]exual assault victims are a paradigmatic example of those entitled to a grant of anonymity."); *see also Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996) (plaintiff's "brutal sexual assault" raised "very legitimate privacy concerns").

Here, Plaintiff alleges multiple sexual assaults, including rape. The record indicates, and Defendant concedes, that the first *Sealed Plaintiff* factor, which looks to whether the case involves claims that are "highly sensitive and of a personal nature," weighs in favor of allowing Plaintiff to proceed anonymously.

### C. Factor Nos. 2 & 3: Plaintiff Has Demonstrated a Risk of Severe Mental Harm

Plaintiff was forced to resign her employment at BXDA due to the Post-Traumatic Stress Disorder ("PTSD") she was suffering after the assaults by Crespo and Pelaez. Decl. of Jane Doe, Dkt. No. 3, ¶2. She sees a therapist weekly, and a psychiatrist monthly, because of the attacks and the uncertainty she experienced in the aftermath. ¶4. Plaintiff now works in Manhattan, but constantly fears that her identity may be revealed and negatively affect her professional standing and also prevent her from forming connections with her colleagues. ¶¶3, 7. Plaintiff alleges:

> I am already suffering from PTSD and anxiety and I believe I will sustain irreparable and additional harm if my colleagues – many of whom are obviously attorneys – can easily come across my name in a court filing. I also worry that filing the instant proceedings will cause me to relive the graphic details of my assault every time someone searches my name on the internet. I continue to be concerned and lose sleep over the fact that I might be harassed, humiliated or even ridiculed if my identity is revealed through the instant proceedings.

¶¶8-10. It would be unconscionable to subject Plaintiff to that level of harm under the instant circumstances.

### D. Factor No. 6: Defendant Does Not Demonstrate Any Prejudice At this Stage of Litigation

*Sealed Plaintiff* instructs courts to consider "whether the defendant is prejudiced by allowing the plaintiff to press [her] claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court." 537 F.3d at 190. Defendant argues it would be prejudiced by being required to defend itself publicly before a jury while Plaintiff is allowed to make her accusations anonymously. MOL at p. 27. As an initial matter, Defendant City does not explain why anonymity would invite a jury to perceive Plaintiff's claim more credibly or favorably. More importantly, however, this factor is to be assessed with respect to the "particular stage of the litigation." *Sealed Plaintiff*, 537 F.3d at 190. Because the case is not yet proceeding to trial, there

is no such risk. *Doe v. City of N.Y.*, No. 15 Civ. 117 (AJN), 2016 U.S. Dist. LEXIS 16344, at *10 (S.D.N.Y. Feb. 4, 2016).

Next, Defendant argues broadly that anonymity results in prejudice for any defendant at any stage of litigation, seemingly to obfuscate the court's discretion. Defendant would suffer no prejudice from Plaintiff proceeding anonymously, as Defendant is already aware of Plaintiff's identity. Further, Plaintiff is willing to mitigate the risk of anonymity by disclosing her true name to any attorneys, experts, consultants, and any person otherwise retained to provide specialized advice to the Defendant in this action. Decl. ¶3. If a risk of prejudice to Defendant arises, the Court can revisit this issue, but at this stage in the proceedings, Defendant has failed to identify any actual risk. As such, the Court should find that this factor weighs in favor of permitting the Plaintiff to proceed anonymously at this "particular stage of the litigation" where there is no prejudice against Defendant.

### E.  Factor No. 7: Plaintiff's Identity Has Been Kept Confidential

Defendant's reliance on *Shakur* and *Fowler* in support of its argument that Plaintiff has compromised her confidentiality is misplaced, as neither are analogous to the case at bar. Indeed, the facts in this case demonstrate Plaintiff has maintained her confidentiality.

This case is fundamentally different and easily distinguishable from *Doe v. Shakur*, 164 F.R.D. 359 (S.D.N.Y. 1996), in two respects. First, *Shakur* was decided 25 years ago. As made evident by the more recent cases cited herein, courts now place more weight on the psychological trauma faced by victims of sexual assault, the easy public access of court records online, and the deterrent effect that "outing" a sexual assault victim may have on other victims. Second, in *Shakur*, the plaintiff alleged that Tupac Shakur, a famous singer, had sexually assaulted her. She filed criminal charges against Shakur in the New York County Supreme Court, under her actual name, and he was convicted after a jury trial of sexual abuse. *Id.* at 360.

Plaintiff, in then trying to obtain anonymity in the subsequent heavily publicized civil case, conceded that the press had "known her name for some time" and had also been aware "of both her residence and her place of employment." *Id.* at 362. Under these unique facts, where the plaintiff tried but failed to put the proverbial genie – her true identity – back into the bottle, this Court concluded her public identification in court filings was a moot issue.

Similarly, in *Rapp v. Fowler*, No. 20 Civ. 9586 (LAK), 2021 U.S. Dist. LEXIS 84214 (S.D.N.Y. May 3, 2021), the plaintiffs claimed that defendant Kevin Spacey Fowler, better known as Kevin Spacey, a famous actor, sexually assaulted them when they were children. *Id.* at 1. One of the plaintiffs, in then seeking anonymity in the subsequent heavily publicized civil case, conceded that since the 1990s he had spoken to an unknown number of people about his "relationship" with Spacey. *Id.* at 3. The plaintiff further admitted he approached a friend to facilitate the publication of his claims against Spacey in New York magazine website, Vulture. *Id.* at 12. He disclosed his identity to Vulture. *Id.* Vulture in turn conducted interviews with friends and acquaintances of plaintiff. *Id*. Under these unique facts, where the plaintiff disclosed his identity to an unknown number of individuals over a period of decades, and facilitated the story's release in the press, this Court concluded that further publication of the plaintiff's name would not cause additional harm. *Id.* at 21.

Here, Defendant claims Plaintiff has forfeited her claim for anonymity through a number of actions. First, by reporting her claims to her employer's human resource department, in her effort to follow department protocol and seek redress through a confidential investigation instead of litigation. Second, by sending a text message to one colleague, a communication sent in confidence, and to an individual who could have an impact on Plaintiff's prosecution of her claims. MOL at pp. 12-13. Lastly, Defendant points to Plaintiff's inadvertent and brief release of her name through the metadata of a document, an error which was quickly remedied with the

21

help of this Court. MOL at p. 12. Defendant does not explain how this brief publication notified the public at large to Plaintiff's identity; rather, Defendant simply states the "[h]orse is out of the barn." Taken together, Defendant City argues that any survivor of sexual violence in the workplace should not seek remedial action from their employer, or engage with relevant witnesses, without forfeiting their claim for anonymity. Not only is this contradicted by precedent, but if accepted, such a practice would have a chilling effect on all survivors seeking to bring these claims forward.

Plaintiff has chosen not to litigate this matter through the press. She has rejected several offers to talk to media entities on the record about the underlying facts of this case. Decl. ¶7. Plaintiff has expressed her intention to continue to refrain from communicating with media members about this case. Decl. ¶8. There are no genuine issues raised in the moving papers that would indicate that Plaintiff's identity is known to the greater public or the media. As a result, the Court should find that this factor weighs in favor of permitting Plaintiff to continue to proceed anonymously.

F.     **Factor Nos. 8 & 9: Plaintiff's Continued Anonymity Is in the Public Interest**

In general, "the public . . . has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes." *Doe v. Nygard*, No. 20 Civ 6501 (ER), 2020 U.S. Dist. LEXIS 151186, at *7 (S.D.N.Y. Aug. 20, 2020) (citing *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006)); *see also Shakur*, 164 F.R.D. at 361 (noting that anonymity in certain sexual assault cases could "encourage victims to testify to vindicate the public's interest"). As this Court stated in *Doe v. City of N.Y.*, "it is anonymizing the plaintiff that furthers the public interest, as '[c]ourts have recognized the important public interest in protecting the identities of sexual assault victims to ensure that other victims would

not be deterred from reporting similar crimes.'" 2020 U.S. Dist. LEXIS 4655, at *12 (E.D.N.Y.

Jan. 9, 2020) (citing *Doe v. Vassar Coll.*, 2019 U.S. Dist. LEXIS 196933, at *2).

G.     **Factor No. 10: There are No Alternative Mechanisms for Protecting the Plaintiff's Confidentiality**

At this juncture, there is no alternative mechanism to protecting Plaintiff's

confidentiality. Defendant's suggestions of alternatives would not protect Plaintiff's identity; it

would simply mitigate the inevitable harm which would result if her confidentiality is not

protected through anonymity. The emotional and reputational harm Plaintiff fears would derive

from her association with this case, and being labeled as a sexual assault victim and a problem

employee. These harms are inevitable if her identity is revealed. Revealing Plaintiff's identity

now would be a bell which cannot be unrung; allowing Plaintiff to proceed under a pseudonym

while the case develops imposes minimal burdens and zero prejudice to Defendant.

## CONCLUSION

Plaintiff respectfully requests that Defendant City's application be denied in its entirety.