UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE,

       **Plaintiff,**

  -against-

CITY OF NEW YORK, et al.,

       **Defendants.**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3/29/2022

20-cv-8429 (ALC)

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

  Plaintiff Jane Doe brings this lawsuit against Defendants City of New York (the "City"), Officer Edwin Crespo, and Gino Pelaez alleging hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").[1] Defendant City of New York now moves to dismiss Plaintiff's claims as against the City.[2]

## BACKGROUND[3]

  Plaintiff was an Assistant District Attorney at the Bronx District Attorney ("BXDA"). Plaintiff worked under the supervisions of William Zelenka, Chief of the Economic Crimes Bureau. In her role, Plaintiff would, at times, work with the officers from the NYPD.

### A. The Crespo Incident

  On November 15, 2016, Defendant Crespo sexually assaulted Plaintiff at the BXDA office. Plaintiff and Defendant Crespo were both seated at Plaintiff's cubicle working together on an assignment. Defendant Crespo ran his hands up and down Plaintiff's thigh. Plaintiff alerted a

---

[1] Plaintiff has since withdrawn her Title VII claims. *See* ECF No. 41.
[2] Defendant Pelaez filed an Answer to the original complaint on January 14, 2021. Defendant Crespo filed a motion to dismiss on December 20, 2021, which remains *sub judice*.
[3] The facts are taken from Plaintiff's Amended Complaint and assumed true for the purposes of this motion.

number of colleagues to the assault. Plaintiff alerted Zelenka to the assault. Plaintiff was concerned about future interactions she would have with Defendant Crespo. Both Crespo and Plaintiff were participating in an upcoming trial. In response to these concerns, Zelenka directed Plaintiff to seek out a male colleague when working with Crespo in the future. Plaintiff later requested to be transferred to TOFU, a different unit within the BXDA.

On November 8, 2017, Plaintiff reported the assault and the mishandling of the investigation to BXDA's Equal Opportunity Officer Cicely Harris. Officer Harris told plaintiff that she would notify NYPD Internal Affairs Bureau ("IAB") of the incident. Harris also told Plaintiff she would assign someone from the BXDA's Public Integrity Bureau to investigate Zelenka. After her meeting with Harris, Plaintiff requested a transfer to BXDA's Tax and Organizational Fraud Unit ("TOFU"). Plaintiff does not know the status of the investigation.

On June 12, 2018, Plaintiff requested a meeting with the Executive Chief of the Investigations Division, Jean Walsh. Plaintiff informed Walsh of the assault and other recent allegations against Crespo. Walsh had not heard of the assault before that meeting. Walsh approved Plaintiff's transfer to TOFU on June 14, 2018.

**B. The Pelaez Rape**

On August 3, 2019, Plaintiff attended a work event hosted by Halpern. Several of Plaintiff's colleagues attended the event, including Defendant Pelaez, then working as TOFU Senior Accountant Investigator. Plaintiff called a taxi to take her home from the party. When the car arrived, Pelaez followed Plaintiff into the car without her consent. Plaintiff alleges that Pelaez became aggressive in the car, including attempting to forcibly kiss her. Plaintiff attempted to fend off Pelaez' advances to no avail. While in the cab, Pelaez placed "his hands between Plaintiff's

legs and penetrated her vagina with his fingers." Am Compl. ¶ 32. When the car arrived at her home, Pelaez again attempted to follow Plaintiff, stating that he needed to walk her inside. Plaintiff paid the cab fare and told Pelaez to remain in the cab. He ignored the request, followed Plaintiff into her apartment, and forced his way inside the unit. Plaintiff stated that she woke up in the morning, knowing she had been raped. She alleges that "[h]er body was 'black and blue' and her vaginal area was injured to the point where she could not sit down or urinate comfortable for weeks." After the incident, Plaintiff was able to record a conversation with Pelaez in which he apologized for his behavior after Halpern's party.

**C. Investigations into the Pelaez Incident**

There were three separate investigations following the Pelaez Incident. The first, carried out by the Manhattan DA's office was led by Assistant District Attorney Mimi C. Mairs. The second, conducted by NYPD IAB, concerned the 2016 Crespo assault. And the third was conduct by the BXDA's EEO Office and overseen by BXDA's Chief of Staff ADA Odalys C. Alonso lead the investigation into the Pelaez incident.

1. *NYPD IAB Investigation*

On August 16, 2019, Plaintiff received a call from IAB Lieutenant Phillip Sena, in which Sena noted that he had only just received an IAB report on the Crespo assault. Plaintiff was told that Trotter wrote the report. She also gave a statement to IAB about the 2016 assault. She was told that Sergeant Kin would be assigned to investigate the Crespo incident. But Plaintiff was later informed that the statute of limitations had expired and the DA's office was unable to bring charges against Crespo.

2. *Manhattan DA's Investigation*

On August 15, 2019, Plaintiff reported the incident to Halpern and ADA Sonya Tennel. Following her report, she saw a clinical therapist at BXDA and met with ADA Joseph Muroff, Chief of the Special Victims Division. Muroff directed Plaintiff to file a police report with the NYPD Special Victims Unit ("SVU"). Plaintiff spoke with SVU Detective Timothy Trotter about the rape. Muroff worked in tandem BXDA's Chief of Staff ADA Odalys C. Alonso in her investigation of the Pelaez incident. Plaintiff was instructed to take administrative leave.

Between August 19 and August 27, 2019, Plaintiff repeatedly reached out to Alonso and Muroff to keep apprised of the investigation. She sent Alonso a "video containing her confrontation with Pelaez." Am. Compl. ¶ 44. Plaintiff returned to work on August 22, 2019 and was informed that Pelaez was placed on paid administrative leave for an indeterminate period. During their investigation, the DA's officer requested information from Plaintiff's colleagues regarding the Pelaez incident. ADA Mairs emailed several employees, without anonymizing the recipients, asking for information, and requesting the matter be treated as sensitive. Plaintiff also alleges that Mairs served a grand jury subpoena on the BXDA "demanding, among other items, therapy notes related to Plaintiff's disclosure of her sexual assault by Gino Pelaez." *Id.* ¶ 48. She alleges that "[a] copy of this confidential subpoena was also improperly forwarded to at least some of the witnesses." *Id.* On October 29, 2019, ADA Mairs contacted Plaintiff to inform her that the Manhattan DA's office would not be pressing charges against Pelaez.

3. *BXDA's EEO Investigation*

On August 27, 2019, Plaintiff submitted a Workplace Violence Accident Report to the DA's office. Plaintiff alleges that no one has responded to this accident report. On August 29, 2019, she submitted an EEO complaint.

On October 30, 2019, she informed Alonso of the Manhattan DA's decision and requested an update on the EEO's investigation. Alonso responded that the office would begin their investigation since the Manhattan DA's office had concluded its investigation.

Over the next month and a half, Plaintiff made several inquiries into the status of the BXDA investigation. She alleges she "was ignored, was told no one had been assigned to investigate yet, and/or was told that Pelaez remained on paid administrative leave without any indication as to when he was expected to return." *Id.* ¶ 47.

On December 11, 2019, Plaintiff met with Alonso and Muroff where she was given updates on the progress of the investigation into her Workplace Violation complaint. She alleges that no one was assigned to the investigation before this meeting. She also believes that she was "receiving a bureaucratic runaround." *Id.* ¶ 55. Over the following weeks, Plaintiff maintained contact with the investigating ADAs to keep apprised on the investigation. Plaintiff alleges she never received updates on the investigation.

On May 26, 2020, BXDA EEO Officer Ricardo Granderson told Plaintiff that the EEO investigation substantiated her claim. On May 29, 2020, Plaintiff filed this action with the EEOC. On October 6, 2020, she received a Notice of Right to Sue.

## LEGAL STANDARDS

Defendant brings this motion to dismiss pursuant to Rule 12(b)(6). To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable

5

inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* When ruling on a Rule (12)(b)(6) motion, a court must accept the factual allegations set forth in the complaint as true and "draw all reasonable inferences in [plaintiff's] favor." *See, e.g.*, *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

## DISCUSSION

### A. Plaintiff Does Not Have a Cognizable Section 1983 Claim Against Defendant New York City.

As set forth in *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690-91 (1978), a municipality can be held liable under § 1983 if the deprivation of rights under federal law is caused by a governmental custom, policy, or usage of the municipality. *See also Connick v. Thompson*, 563 U.S. 51, 60-61 (2011) (finding municipalities can be held liable for "practices so persistent and widespread as to practically have the force of law"). "[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)) (internal quotation marks omitted). "For purposes of th[is] requirement, '[a]ctions by an individual with final decision-making authority in a municipality constitute official policy.'" *McCray v. Cty. of Suffolk, N.Y.*, 598 F. App'x 48, 49 (2d Cir. 2015) (quoting *Anthony v. City of New York*, 339 F.3d 129, 139 (2d Cir. 2003)).

"To show a policy, custom, or practice, the plaintiff need not identify an express rule or regulation. It is sufficient to show . . . that a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law." *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004) (internal quotation marks and citations omitted). Plaintiff may also demonstrate "that a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials." *Id.*

Plaintiff's Section 1983 claim against the City is predicated on the conduct of the Office of The Bronx District Attorney, District Attorney Darcel D. Clark and Executive Assistant District Attorney Odalys C. Alonso. She alleges that BXDA and Alonso failed to adequately investigate the Crespo and Pelaez incidents and failed to take remedial action against Crespo. Plaintiff points to BXDA's failure to terminate Crespo. But BXDA had no power to terminate his employment because Crespo was employed by the NYPD. Plaintiff's allegations regarding the BXDA's investigation into the Pelaez incident stem from her dissatisfaction with not being kept informed on the progress of the inquiry. These actions do not permit an inference that the investigations were the result of a citywide policy.

Plaintiff's statements are conclusory and insufficient to support Plaintiff's *Monell* claim. In sum, Plaintiff has not pleaded the existence of a municipal policy—express or otherwise—that lead to a constitutional violation. Accordingly, Plaintiff's Section 1983 claim against the City of New York is **DISMISSED**.

**B. The Court Declines to Exercise Supplemental Jurisdiction Over the Remaining State Law Claims**

Under 28 U.S.C. § 1367(c)(3), the Court may exercise supplemental jurisdiction over Plaintiff's remaining state law claims after dismissing "all claims over which it has original jurisdiction." However, the Second Circuit encourages courts to avoid exercising supplemental jurisdiction. "[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004) (quoting *Castellano v. Bd. of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991)).

Having dismissed Plaintiff's Title VII claim and *Monell* claim and there being no other basis for federal jurisdiction over this case, the Court elects to not exercise its supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3); *Boustany v. Xylem Inc.*, 235 F. Supp. 3d 486, 496–97 (S.D.N.Y. 2017). Accordingly, all of Plaintiffs claims against Defendants Pelaez and Crespo as well as her state law claims against the City are **DISMISSED** without prejudice.

## CONCLUSION

Accordingly, Defendant City of New York motion to dismiss is **GRANTED**. As the Court declines to exercise supplemental jurisdiction over the remaining state law claims, these claims are dismissed without prejudice. The remaining motions pending before the Court are **DENIED** as moot. The Clerk of the Court is directed to terminate ECF Nos. 36, 37, 51 and close this case.

**SO ORDERED.**

Dated:   March 29, 2022
        New York, New York

*[signature]*
        **ANDREW L. CARTER, JR.**
        **United States District Judge**